IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| **NORMALINDA CONTRERAS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CITY OF MCALLEN;** | § | **CIVIL ACTION NO.** |
| **CHIEF OF POLICE VICTOR** | § | **7:25-cv-00541** |
| **RODRIGUEZ; SERGEANT** | § | |
| **JAVIER CAVAZOS (#6482);** | § | |
| **OFFICER PEREZ (#7568);** | § | |
| **OFFICER ZAPATA (#4457);** | § | |
| **OFFICER RODRIGUEZ (#8325);** | § | |
| **OFFICER O. PUENTE (#14878);** | § | |
| **OFFICER DELGADO (#8279);** | § | |
| **OFFICER CASTRO (#14602); FLIX** | § | |
| **NORTH AMERICA, INC; FLIX** | § | |
| **BUS, INC.; GREYHOUND LINES,** | § | |
| **INC.,** | § | |

**Defendants.**

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

**TO THE HONORABLE JUDGE OF THE COURT:**

**NOW COMES** Plaintiff **NORMALINDA CONTRERAS** ("Plaintiff" or "Ms. Contreras"), by and through undersigned counsel, and files this *Plaintiff's Original Complaint* against the **CITY OF MCALLEN**, **Chief Victor Rodriguez** in his official capacity, and the individually named McAllen Police Department officers listed above, seeking redress for violations of **42 U.S.C. § 1983, the Fourth and Fourteenth**

**Amendments, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and related Texas state-law torts**, arising from the discriminatory, abusive, and injurious conduct inflicted upon her on **November 24, 2023**.

In support thereof, Plaintiff respectfully states as follows:

## I.    <u>INTRODUCTION</u>

1.  This lawsuit arises because a disabled grandmother was treated as a threat, an inconvenience, and a problem to be removed – rather than as a human being worthy of dignity, accommodations, and constitutional protection.  On November 24, 2023, Ms. Contreras boarded a FlixBus/Greyhound bus in McAllen, Texas after purchasing a **handicapped-accessible ticket**, as she routinely did when traveling to visit her children and grandchildren in Houston, Texas.

2.  When the reserved disability seating was blocked by luggage, she moved one bag so she could sit.  For this, the bus driver threatened her, barked that she should "*move to the back*," and then escalated the situation by summoning law enforcement.

3.  What followed was not de-escalation.  It was not assistance.  It was not protection

4.  Instead, **seven to eight armed McAllen Police officers** arrived, interrogated Ms. Contreras about her disability, demanded proof of her medical condition, disregarded the documentation she provided, ordered her off the bus, and – while she complied – one officer **kneed her in the back**, causing her to fall forward down the steps, injuring her left foot, knee, lumbar spine, and cervical spine.  Officers then **abandoned her on the pavement without providing medical care**, though she

cried out in pain.

5. The incident was later mislabeled as a mere "disturbance." Records requested by Plaintiff through the Texas Public Information Act were withheld in violation of state law. Body-camera footage, dispatch logs, and internal reporting remain unproduced to this day. The City's silence and concealment speak not of uncertainty, but of **consciousness of guilt**.

6. This action seeks accountability for constitutional violations, disability-based discrimination, excessive force, and the City's systemic failures in training, supervision, and ADA compliance.

## II.    JURISDICTION AND VENUE

7. This action arises under **28 U.S.C. §§ 1331 and 1343**, because Plaintiff asserts claims under the Constitution and federal laws, including 42 U.S.C. § 1983, Title II of the ADA, and Section 504 of the Rehabilitation Act.

8. Supplemental jurisdiction over Plaintiff's state-law claims is proper under **28 U.S.C. § 1367**.

9. Venue is proper in this Court pursuant to **28 U.S.C. § 1391(b)** because the events giving rise to this action occurred in **Hidalgo County, Texas**, within the Southern District of Texas, McAllen Division.

## III.    PARTIES

10. Plaintiff **NORMALINDA CONTRERAS** is an individual residing in **Hidalgo County, Texas**.

11. Defendant **CITY OF MCALLEN** is a municipal entity subject to suit under 42 U.S.C. § 1983, the ADA, and the Rehabilitation Act. The City of McAllen may be served with process at: City of McAllen, Attn: City Attorney / City Manager, 1300 Houston Avenue**,** McAllen, Texas 78501, or wherever it may be found.

12. Defendant **CHIEF VICTOR RODRIGUEZ** is sued in his official capacity only as the final policymaker for the McAllen Police Department. He may be served at: McAllen Police Department, Attn: Chief Victor Rodriguez, 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever he may be found.

13. Defendant **SERGEANT JAVIER CAVAZOS (#6482)** is a McAllen Police Department officer and is sued in his individual capacity. He may be served at: McAllen Police Department, 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever he may be found.

14. Defendant **OFFICER PEREZ (#7568)** is a McAllen Police Department officer and is sued in his individual capacity. He may be served at: McAllen Police Department, 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever he may be found.

15. Defendant **OFFICER ZAPATA (#4457)** is a McAllen Police Department officer and is sued in his individual capacity. He may be served at: McAllen Police Department, 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever he may be found.

16.   Defendant **OFFICER RODRIGUEZ (#8325)** is a McAllen Police Department officer and is sued in his individual capacity.  He may be served at: McAllen Police Department, 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever he may be found.

17.   Defendant **OFFICER O. PUENTE (#14878)** is a McAllen Police Department officer and is sued in his individual capacity.  He may be served at: McAllen Police Department, 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever he may be found.

18.   Defendant **OFFICER DELGADO (#8279)** is a McAllen Police Department officer and is sued in his individual capacity.  He may be served at: McAllen Police Department, 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever he may be found.

19.   Defendant **OFFICER CASTRO (#14602)** is a McAllen Police Department officer and is sued in his individual capacity.  He may each be served at: McAllen Police Department**,** 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever they may be found.

20.   Additional defendants may be added as discovery proceeds, including policymakers, supervisors, or additional officers.  Such defendants may be served at the above addresses or wherever they may be found.

21.   The McAllen Police Department is not a jural entity capable of being sued under Texas law and is therefore not named as a defendant.  However, the McAllen Police Department's headquarters address is included above solely for the purpose of

effectuating service on the individual officer defendants.

22.    Defendant **FLIX NORTH AMERICA, INC.** is a Delaware corporation with its

principal place of business at 9773 Harry Hines Boulevard, Dallas, Texas 75220.   Its

registered agent for service of process is C T Corporation System, 1999 Bryan Street,

Suite 900, Dallas, Texas 75201.  Flix North America Inc. owns and controls Greyhound

Lines, Inc. and FlixBus, Inc. and operates intercity bus transportation in the United

States under a unified corporate structure.

23.    Defendant **FLIXBUS, INC.** is a Delaware corporation with its principal place of

business at 315 Continental Avenue, Dallas, Texas 75207.  Its registered agent is C T

Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.  FlixBus, Inc.

conducts interstate bus passenger services under the FlixBus brand and is an agent,

subsidiary, and alter ego of Flix North America Inc.

24.    Defendant **GREYHOUND LINES, INC.** is a Delaware corporation with its principal

place of business at 315 Continental Avenue, Dallas, Texas 75207.  Its registered agent

is C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

Greyhound Lines, Inc. is a long-standing common carrier operating nationwide bus

transportation services and is now owned, operated, and controlled by Flix North

America Inc. and FlixBus, Inc.

*Single Business Enterprise / Agency Allegations*

25.    Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc. operate as a single

business enterprise in the United States, sharing management, branding, operations,

common control, and unified policies, including those governing disability accommodations, baggage rules, driver training, and law enforcement interactions.

26.  At all relevant times, FlixBus, and Greyhound drivers, including the driver involved in the November 24, 2023 incident, were acting as agents, servants, and employees of Flix North America Inc., and each corporate defendant is liable for the acts and omissions of the driver under principles of respondeat superior, agency, and joint enterprise liability.

27.  Each Flix/Greyhound entity exercised actual and apparent authority over the driver's conduct, including ticketing, boarding, seating, ADA compliance, and interactions with law enforcement.

28.  Each corporate defendant may be served at its registered agent address listed above or wherever it may be found.

## IV.    <u>FACTUAL BACKGROUND</u>

The following allegations are based on Plaintiff's personal knowledge, the information presently available to her, and the reasonable inferences drawn therefrom.

A.  <u>*Plaintiff's Disability and Purpose of Travel*</u>

29.  Plaintiff **Normalinda Contreras** is a permanently disabled Latina grandmother residing in Hidalgo County, Texas.   She is a life-long, born and raised, resident of McAllen, Texas, apart from a short period of time in her adult life when moved way for a short period of time.

30.    Plaintiff's disabilities are well documented through medical providers and require ongoing accommodations.

31.    Prior to the incident, Ms. Contreras routinely traveled between McAllen and Houston to visit her adult children and grandchildren.  Because of her disability, she **consistently purchased handicapped-accessible tickets**, which entitled her to reserved accessible seating.

     *B.    The November 24, 2023 Bus Boarding and Driver Misconduct*

32.    On **November 24, 2023**, Plaintiff boarded a FlixBus/Greyhound bus at the McAllen station after purchasing her usual handicapped-accessible ticket.

33.    The designated disability seating at the front of the bus was obstructed by other passengers' luggage.  In order to sit in the seat she paid for and medically required, Plaintiff gently moved one bag to the side.

34.    The bus driver reacted with hostility, stating, "*Ooooh nooo you didn't,*" and escalating immediately to confrontation.

35.    The driver then declared: "*Move to the back of the bus or I'm calling the cops.*"

36.    For a disabled woman of color, the command to "*move to the back of the bus*" carries profound historical weight.   No person – least of all a grandmother with a documented disability – should ever again hear such a phrase, let alone have it backed by armed law enforcement.

37.    Instead of resolving the situation through basic customer service or ADA-compliant accommodation, the bus driver summoned police.

C. *The Arrival of McAllen Police Officers and Immediate Escalation*

38.    Within minutes, **seven to eight armed McAllen Police Department officers** arrived on the scene. The officers included:

- Sgt. Javier Cavazos (#6482)
- Officer Perez (#7568)
- Officer Zapata (#4457)
- Officer Rodriguez (#8325)
- Officer O. Puente (#14878)
- Officer Delgado (#8279)
- Officer Castro (#14602)

39.    Rather than de-escalate, the officers' conduct intensified the discrimination initiated by the driver.

40.    Officers aggressively interrogated Plaintiff regarding her disability, demanding answers to questions no citizen should be forced to answer under threat of police authority:

- "*Why are you disabled*?"
- "*What is your disability?*"
- "*What disabled equipment do you have*?"

41.    Plaintiff calmly produced extensive documentation:

- A **physician's permanent disability certification**
- Her **DMV handicap placard**
- Her **Life Alert device**
- Prescription medications substantiating her medical conditions

42.    Despite ample proof of her disability, the officers dismissed and disregarded her documentation entirely.

D. _The Forced Removal and Use of Excessive Force_

43.    Sgt. Cavazos ordered Plaintiff removed from the bus without legal justification, probable cause, or reasonable suspicion of any criminal act.

44.    Plaintiff complied and began descending the bus stairs slowly due to her limited mobility.

45.    As she did so, an officer positioned behind her delivered a **forceful knee strike to her lower back**, propelling her forward.

46.    Plaintiff lost her balance and fell down the last steps, landing on the pavement. She cried out in pain.

47.    The force used was unnecessary, excessive, and inflicted upon a non-threatening, compliant, disabled grandmother – a woman who posed no danger to anyone and who deserved protection, not violence.

48.    After causing her fall, none of the officers rendered medical aid or assistance. They left her on the ground, injured.

49.    The officers did not render aid, did not call for an ambulance, and did not even ask whether someone could be contacted to help her. Instead, they walked away, fully abandoning a woman whose injuries they themselves had caused. Their conduct constituted a complete abdication of their duty to provide aid after creating the danger.

E. *Injuries and Medical Treatment*

50.   Following the incident, Plaintiff sought treatment from numerous medical providers, including American Family Care Urgent Care, Rio Grande Valley Orthopedics, Texas Health Care Imaging, South Texas Health System Clinics, and Chiropractic Center of McAllen.

51.   Verified medical findings include:

- Grade 1 sprain of the left ankle with calcaneofibular ligament injury;
- Left knee effusion and degenerative narrowing;
- Lumbar strain and radiculopathy, with pre-existing degenerative changes aggravated by trauma;
- Cervical and thoracic strain with chronic muscle spasm radiating into the head and shoulders;
- Generalized Anxiety Disorder (F41.1)**,** formally diagnosed on March 29, 2024 and directly linked to the humiliation and trauma of the incident;
- Confirmation of permanent disability status by her treating physician in 2024.

52.   Plaintiff continues to suffer pain, limited mobility, emotional distress, and exacerbation of her chronic conditions as a direct and proximate result of Defendants' actions.

F. *The City's False Characterization of the Incident*

53.   Despite the severity of the encounter, the McAllen Police Department internally labeled the incident a "**disturbance**," which grossly misrepresents the nature and seriousness of the events.

54.    This description minimizes both the discriminatory behavior and the unconstitutional force used against Plaintiff.

### G.  *The City's Ongoing Refusal to Produce Records*

55.    In October 2025, Plaintiff, through counsel, submitted two Texas Public Information Act requests for **all incident reports, body-camera footage, dash-camera recordings, dispatch logs, radio traffic, officer statements, and internal communications**.

56.    Plaintiff paid the required fees.

57.    To this day, the City and it's Police Department have produced only a partially redacted "incident report," and nothing more from the records it is legally required to provide.

58.    This failure violates **Tex. Gov't Code § 552.221**, which mandates timely production of public records.

59.    The City's refusal to produce basic evidence supports a strong inference of **concealment, alteration, or destruction** of video and documentation favorable to Plaintiff's claims.

60.    Each day of continued withholding constitutes an ongoing violation and heightens the inference of spoliation.

H.   *The Broader Pattern*

61.     The conduct of the officers on November 24, 2023 was not merely an isolated misjudgment but is consistent with deficiencies in the City's training, supervision, and ADA compliance practices, which allowed such conduct to occur.

62.     The wrongful acts described herein were a direct result of the City of McAllen's failures in **training, supervision, ADA compliance, and accountability.**

**Additional Facts Specific to the Corporate Defendants**
*(Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)*

63.     To avoid confusion between the allegations against the City of McAllen/Police Department and those asserted against the private transportation defendants, the following facts pertain specifically to **Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.** (collectively "Flix/Greyhound").

I.   *Flix/Greyhound Corporate Structure and Unified Operations*

64.     Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc. operate as a single, unified business enterprise for the purpose of intercity bus transportation in the United States.   They share management, operations, branding, ADA compliance procedures, baggage policies, and customer accommodation responsibilities. Drivers employed under the FlixBus and Greyhound brands are agents, servants, and employees of all three entities under principles of actual authority, apparent authority, and joint enterprise.

J.   *DOJ Investigation and Systemic ADA Failures*

65.    In 2025, the United States Department of Justice ("DOJ") opened an active investigation (DJ #202-26S-274) into "Flix North America Inc., FlixBus Inc., and Greyhound Lines, Inc." collectively for systemic ADA violations.  The DOJ notice identifies complaints from "numerous individuals with disabilities" reporting failures by Flix/Greyhound to provide accessible seating, failure to assist disabled passengers, unlawful ejectments, obstruction of accessibility features with luggage, discriminatory treatment, and driver hostility toward disabled riders.  The conduct alleged in the DOJ investigation mirrors the discriminatory and harmful conduct Ms. Contreras experienced on November 24, 2023.

K.    *Accessible Seating Violations and Baggage Obstruction*

66.    On the date of the incident, Ms. Contreras purchased a handicapped-accessible ticket entitling her to a designated, federally protected accessible seat.  Federal regulations (49 C.F.R. Parts 37 and 38) and Flix/Greyhound's own policies require that accessible seating remain unobstructed and available to passengers with disabilities.  Instead, the accessible seating area was blocked with luggage – an ongoing and well-known violation of the carrier's own baggage policies and ADA requirements.

L.    *Driver Misconduct and Failure to Provide Accommodation*

67.    A reasonably cautious and prudent bus operator would have cleared the accessible seating area, offered assistance, and provided the accommodation Ms. Contreras paid for and needed.  Instead, the driver became hostile, refused to clear the seat,

and unlawfully attempted to force Ms. Contreras to move to the back of the bus –
an area she could not safely access.

68.    When Ms. Contreras asserted her right to use the accessible seat she purchased, the
driver escalated the situation by summoning law enforcement.

### M. *Prior Notice to Flix/Greyhound*

69.    Ms. Contreras had previously notified Greyhound/FlixBus that she encountered
recurring problems with accommodation and accessible seating.    The DOJ
investigation further demonstrates that these were not isolated issues but part of a
widespread pattern of ADA noncompliance known to the corporate defendants.
Flix/Greyhound had ample notice that their policies, training, and enforcement
mechanisms were failing to protect disabled passengers.

### N. *Corporate Training Failures*

70.    Flix/Greyhound owed Ms. Contreras the heightened duty of care required of
common carriers under Texas law.    This duty includes proper training of drivers in
ADA compliance, reasonable modifications, de-escalation, passenger assistance,
accessible seating protocols, and safe handling of disabled passengers.    The driver's
conduct demonstrates a lack of fundamental training in each of these areas.

### O. *Foreseeability of Police Misconduct*

71.    The driver's decision to summon approximately eight armed officers and a sergeant
to address a nonviolent seating accommodation dispute created a foreseeable and

substantial risk of harm.

72.   Under Texas law, the heightened duty of a common carrier expands foreseeability. A very cautious and prudent person – much less a trained common carrier operator – would foresee that calling such a large police presence to forcibly remove a disabled passenger could lead to physical harm, including falls, injuries on the narrow bus steps, and forceful handling.

### P. *Concurring Proximate Cause*

73.   The driver's actions were a substantial factor in bringing about the harm that occurred. "But for" the driver's wrongful refusal to provide the accessible seat and "but for" her summoning of the police to physically remove Ms. Contreras, none of the injuries inflicted by law enforcement would have occurred.

74.   The police were not a superseding cause but a concurring and foreseeable result of the driver's misconduct and the company's systemic ADA and training failures.

### Q. *Corporate Policy Failures*

75.   The entire chain of events began because Flix/Greyhound failed to enforce their own baggage policies and federal accessibility requirements, allowing luggage to block the accessible seating area.  This systemic negligence created the conflict and was a direct and producing cause of Plaintiff's injuries.

## V.     <u>CAUSES OF ACTION</u>

### <u>CLAIM ONE – FOURTH AMENDMENT UNREASONABLE SEIZURE</u>
#### *(42 U.S.C. § 1983 – Against Individual Officers)*

76.     Plaintiff realleges and incorporates all preceding paragraphs.

77.     The Fourth Amendment guarantees the right to be free from unreasonable seizures. A seizure occurs when an officer, through force or show of authority, restrains the liberty of a person.

78.     The individually named officers, acting under color of law, arrived in response to a non-criminal customer-service dispute on a commercial bus.  Plaintiff had committed no crime, posed no threat, and was lawfully seated in the disability-accessible section for which she purchased a ticket.

79.     Upon arrival, the officers immediately exercised a show of authority that would lead any reasonable person to believe she was not free to leave or terminate the encounter.  Their conduct constituted a seizure under the Fourth Amendment.

80.     The officers lacked **reasonable suspicion** or **probable cause** to detain, question, or remove Plaintiff from the bus.  Their actions were arbitrary, discriminatory, and unsupported by any lawful basis.

81.     By effecting a seizure without lawful justification, the individually named officers violated Plaintiff's rights under the Fourth Amendment to the United States Constitution.

82.     As a direct and proximate result, Plaintiff suffered physical injuries, emotional distress, humiliation, and the loss of her constitutional rights.

## CLAIM TWO – FOURTEENTH AMENDMENT EXCESSIVE FORCE
### *(42 U.S.C. § 1983 – Against Individual Officers)*

83.    Plaintiff realleges and incorporates all preceding paragraphs.

84.    The Fourteenth Amendment prohibits law enforcement officers from using force that is objectively unreasonable, excessive, or unnecessary under the circumstances.

85.    Plaintiff was compliant, non-threatening, and visibly disabled.  She was attempting to step off the bus only because officers ordered her to do so.

86.    While she descended the stairs, one officer violently struck her in the back with his knee, causing her to fall forward onto the pavement. This gratuitous use of force served no legitimate law-enforcement purpose.

87.    The remaining officers failed to intervene despite having a reasonable opportunity to prevent or mitigate the constitutional violation.

88.    After causing her fall, none of the officers rendered aid, called an ambulance, or even asked whether someone could be contacted to assist her. They abandoned a disabled grandmother they had just injured.

89.    The force used was objectively unreasonable, unnecessary, and excessive, violating Plaintiff's rights under the Fourteenth Amendment.

90.    Plaintiff suffered significant physical injury, emotional suffering, and exacerbation of permanent impairments as a result.


## CLAIM THREE – FOURTEENTH AMENDMENT DISABILITY-BASED EQUAL PROTECTION VIOLATION
### *(42 U.S.C. § 1983 – Against Individual Officers)*

91.    Plaintiff realleges and incorporates all preceding paragraphs.

92.    The Equal Protection Clause prohibits discriminatory treatment by law enforcement on the basis of disability.

93.    The officers interrogated Plaintiff about her disability, demanded private medical information, dismissed her documentation, and treated her as though her disability rendered her unworthy of equal respect and protection under the law.

94.    Their insistence on questioning her disability status, coupled with their conduct, demonstrates that she was targeted and treated adversely **because she is disabled**.

95.    The discriminatory purpose and effect of the officers' actions violated Plaintiff's right to equal protection under the Fourteenth Amendment.

96.    Plaintiff suffered harm, including humiliation, emotional trauma, and the loss of equal treatment guaranteed by the Constitution.

## CLAIM FOUR – MUNICIPAL LIABILITY (*MONELL*)
### (42 U.S.C. § 1983 – Against City of McAllen & Chief Rodriguez in Official Capacity)

97.    Plaintiff realleges and incorporates all preceding paragraphs.

98.    The City of McAllen, through its final policymaker Chief Rodriguez, is liable under *Monell* because Plaintiff's constitutional injuries were the direct result of the City's/Police Department's policies, customs, and failures in training, supervision, and ADA-related practices.

99.    The City/Police Department failed to adequately train officers in:

    a.  de-escalation,

     b.  interacting with disabled individuals,

     c.  ADA compliance,

     d.  proportional use of force, and;

     e.  lawful investigative detentions.

100.   The City's/Police Department's training deficiencies were so significant that constitutional violations such as those inflicted on Plaintiff were the **highly predictable** and **foreseeable** result of the City's/Police Department's deliberate indifference.

101.   The City/Police Department also failed to supervise and discipline officers who mistreat disabled individuals or misuse force in non-criminal encounters.

102.   The events of November 24, 2023 were enabled and made possible by these systemic failures.  Had the officers received adequate ADA training or basic de-escalation instruction, the constitutional violations Plaintiff suffered would not have occurred.

103.   The City's/Police Department's deliberate indifference to the rights of disabled persons directly caused the violations of Plaintiff's Fourth and Fourteenth Amendment rights.

## CLAIM FIVE – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (TITLE II)
### *(Against City of McAllen)*

104.   Plaintiff realleges and incorporates all preceding paragraphs.

105.    Title II of the ADA prohibits public entities from excluding qualified individuals with disabilities from participation in, or denying them the benefits of, public services, programs, or activities.

106.    McAllen Police Department officers were acting as agents of the City, a public entity, when interacting with Plaintiff.

107.    Plaintiff is a qualified individual with a disability as defined by the ADA.

108.    Defendants discriminated against Plaintiff on the basis of disability by:

    a.   interrogating her disability status,
    b.   disregarding her disability documentation,
    c.   treating her differently than non-disabled passengers,
    d.   using force precipitated by her disability-related mobility limitations, and
    e.   failing to provide reasonable modifications during the encounter.

109.    The City's failures to train, supervise, and implement ADA–compliant policies directly led to the discriminatory treatment Plaintiff suffered.

110.    Plaintiff suffered physical injury, emotional distress, and denial of equal access to the public services, programs, and activities of the City – specifically, nondiscriminatory police services.

## CLAIM SIX – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT
### *(Against City of McAllen)*

111.    Plaintiff realleges and incorporates all preceding paragraphs.

112.    Section 504 prohibits discrimination on the basis of disability by any entity receiving federal financial assistance.

113.   The City of McAllen/Police Department receives federal funds, including funding for public safety and law enforcement operations.

114.   For the same reasons set forth under the ADA claim, the City/Police Department discriminated against Plaintiff solely on the basis of her disability.

115.   Plaintiff is entitled to compensatory damages and all other relief available under Section 504.

## CLAIM SEVEN – ASSAULT AND BATTERY
### (Against Individual Officers)

116.   Plaintiff realleges and incorporates all preceding paragraphs.

117.   Under Texas law, intentionally causing harmful or offensive physical contact constitutes assault and battery.

118.   The officer who struck Plaintiff in the back, as well as those who physically removed her from the bus, committed assault and battery.

119.   All remaining officers present are **liable for failing to intervene despite having a reasonable opportunity** to do so.

120.   Plaintiff suffered bodily injury directly caused by Defendants' intentional, harmful conduct.

## CLAIM EIGHT – NEGLIGENCE AND GROSS NEGLIGENCE
### (Against City of McAllen and Individual Officers)

121.   Plaintiff realleges and incorporates all preceding paragraphs.

122.   Defendants owed Plaintiff a duty to exercise reasonable care in their interactions with her.

123.    Individually named officers **breached that duty** by escalating a non-criminal situation, **using excessive force**, and **failing to render any aid to a visibly injured woman**.

124.    The City/Police Department breached its duties through negligent hiring, training, and supervision, and through ADA compliance failures.

125.    Defendants' conduct was not merely negligent but **grossly negligent**, reflecting a **conscious disregard for Plaintiff's safety and rights**.

126.    Plaintiff suffered physical and emotional injuries as a result.

## CLAIM NINE – FAILURE TO PROVIDE MEDICAL CARE / FAILURE TO ASSIST
### *(Against City of McAllen and Individual Officers)*

127.    Plaintiff realleges and incorporates all preceding paragraphs.

128.    After causing Plaintiff to fall and injure herself, Defendants had a duty under Texas law and basic principles of human decency to provide or summon medical aid.

129.    They **rendered no aid**, **called no ambulance**, and **did not ask if they could contact anyone to assist her**. **They abandoned her**.

130.    This failure directly caused Plaintiff further pain, suffering, and delayed medical treatment.

## CLAIM TEN – TEXAS TORT CLAIMS ACT LIABILITY
### *(Against City of McAllen)*

131.    Plaintiff realleges and incorporates all preceding paragraphs.

132.    Under the TTCA, a municipality is liable for injuries caused by the negligent use of

tangible personal property.

133. The officers' physical use of their bodies to knee, push, and forcibly remove Plaintiff constitutes the use of tangible personal property under Texas law.

134. The City/Police Department is therefore liable for the injuries proximately caused by its employees.

## CLAIMS AGAINST THE CORPORATE DEFENDANTS
### *(Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)*
*The following causes of action are asserted specifically against Defendants Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc., and do not apply to the City of McAllen or its officers.*

## CLAIM ELEVEN – NEGLIGENCE (COMMON CARRIER / RESPONDEAT SUPERIOR)
### *(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)*

135. Plaintiff realleges all preceding paragraphs applicable to the corporate defendants.

136. Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc. operate as common carriers in Texas. As such, they owe passengers – including disabled passengers – **a heightened duty of care**, requiring the degree of care that a "very cautious, competent, and prudent person" would exercise under similar circumstances.

137. The driver, acting within the course and scope of employment, breached this heightened duty by:

1. Allowing the accessible seating area to be obstructed with luggage;
2. Failing to provide the accessible accommodation Plaintiff paid for and required;
3. Escalating a solvable seating issue into a hostile confrontation;

4. Refusing to clear the accessible seat;

5. Attempting to force Plaintiff to move to the back of the bus; and

6. Summoning approximately eight armed officers and a sergeant for a seating dispute the driver created.

138. These acts constitute clear deviations from the high standard required of common carriers.

139. The driver's actions were a substantial factor in causing Plaintiff's injuries, and the harm was a **foreseeable result of the breach of duty**. The corporate defendants are liable under **respondeat superior** for all damages proximately caused by their employee.

## CLAIM TWELVE – NEGLIGENCE PER SE
**(Violations of ADA Regulations and Texas Human Rights Code Chapter 121)**
***(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)***

140. Plaintiff realleges all applicable paragraphs.

141. The driver's actions constituted **negligence per se** because:

- Federal ADA regulations (49 C.F.R. Parts 37 and 38) expressly prohibit obstructing accessible seating, denying reasonable accommodations, or ejecting a passenger because of disability-related needs.
- Texas Human Rights Code Chapter 121 guarantees disabled persons equal access to public transportation, including common carriers.

142. These statutes and regulations are designed specifically to protect **individuals with disabilities** from the exact harm Plaintiff suffered: denial of access, humiliation, and injury.

143. Plaintiff is a member of the protected class and suffered the precise harm the statutes

were designed to prevent. The corporate defendants are liable for negligence per se.

## CLAIM THIRTEEN – DIRECT NEGLIGENCE AND GROSS NEGLIGENCE
### *(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)*

144.    Plaintiff realleges all applicable paragraphs.

145.    Flix/Greyhound owed Plaintiff a direct duty to:

- properly train drivers in ADA compliance and accessible seating requirements,
- train drivers to de-escalate and manage ordinary passenger-service issues,
- implement effective ADA policies,
- supervise and discipline non-compliant drivers, and
- enforce baggage rules to prevent obstructing accessible seating.

146.    They breached these duties by failing to train or supervise the driver, by maintaining unsafe and discriminatory policies, and by disregarding the known risks to disabled passengers.

147.    The corporate defendants had **actual notice** of ADA and accommodation failures through:

- Plaintiff's prior reports;
- numerous public complaints; and
- the **2025 DOJ investigation** into systemic ADA violations by "Flix North America Inc., FlixBus Inc., and Greyhound Lines, Inc."

This establishes the "notice" element of gross negligence.

148.    Their conscious disregard for disabled passengers' safety justifies an award of **exemplary damages**.

## CLAIM FOURTEEN – WRONGFUL EJECTION BY A COMMON CARRIER
### *(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)*

149.    Plaintiff realleges all applicable paragraphs.

150.    Texas common law recognizes a cause of action for wrongful ejection.  A passenger is wrongfully ejected when removed from a carrier **without lawful justification**.

151.    Plaintiff was a ticketed passenger, lawfully occupying the accessible seat she purchased.

152.    The driver had no legitimate basis to remove her.  Summoning police to forcibly remove Plaintiff from the very seat she was entitled to constitutes wrongful ejection.

153.    The corporate defendants are liable for all damages flowing from this wrongful ejection.

## CLAIM FIFTEEN – BREACH OF CONTRACT
### *(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)*

154.    Plaintiff realleges all applicable paragraphs.

155.    Plaintiff purchased a handicapped-accessible ticket, forming a contract.  Plaintiff provided consideration and had a contractual right to:

- An accessible, ADA-compliant seat, and
- Safe transport from McAllen to Houston.

156.    Defendants breached the contract by:

1. Failing to provide the accessible seat; and
2. Ejecting Plaintiff before completing the transport.

157.   Because this was a **special contract involving a common carrier**, foreseeable consequential damages include **emotional distress and physical injury** resulting from the breach.

158.   Plaintiff is entitled to recover all damages naturally flowing from the breach.

## CLAIM SIXTEEN – VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA)
*(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)*

159.   Plaintiff realleges all applicable paragraphs.

160.   Plaintiff is a "consumer" under the DTPA because she purchased transportation services.

161.   Defendants violated the DTPA by:

1.   *Misrepresentation (Tex. Bus. & Com. Code § 17.46(b))*

Defendants represented that the purchased service included a guaranteed accessible seating accommodation. This representation was false when Plaintiff arrived.

2.   *Unconscionability* (§ 17.50(a)(3))

Defendants took advantage of Plaintiff's disability – her limited mobility and need for an accessible seat – to a **grossly unfair degree**, culminating in her public humiliation and physical injury.

162.   Because Defendants acted **knowingly**, Plaintiff may recover **treble damages**.

## CLAIM SEVENTEEN – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)
*(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)*

163.   Plaintiff realleges all applicable paragraphs.

164.   The driver's conduct – including hostility toward a disabled passenger, attempting to force her to the back of the bus, and summoning a small army of police officers – constitutes **extreme and outrageous conduct** exceeding all bounds of decency.

165.   Plaintiff suffered severe emotional distress, including humiliation, fear, and anxiety. To the extent any other tort does not fully remedy emotional damages, IIED is available as a **gap-filler claim**.

## CLAIM EIGHTEEN – DEFAMATION, FALSE REPORT, AND MALICIOUS PROSECUTION
*(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)*

166.   Plaintiff realleges all applicable paragraphs.

167.   The bus driver made false statements to police that caused Plaintiff to be treated as a criminal suspect, forcibly removed, and injured.

168.   False statements imputing criminal conduct constitute **defamation per se** in Texas.

169.   Texas law also recognizes liability for filing or initiating a **false police report** where foreseeable harm results.

170.   To the extent the driver knowingly made false or misleading claims to police, the corporate defendants are vicariously liable.

## CLAIM NINETEEN – VIOLATIONS OF THE TEXAS HUMAN RIGHTS CODE (CHAPTER 121)
*(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)*

171.    Plaintiff realleges all applicable paragraphs.

172.    Texas Human Rights Code § 121.003 guarantees disabled persons the **same right as others to full use and enjoyment of public transportation**, including buses and other common carriers.

173.    Defendants violated Chapter 121 by:

- Denying Plaintiff access to accessible seating;
- Obstructing that seating with luggage;
- Refusing reasonable accommodation; and
- Ejecting Plaintiff due to disability-related needs.

174.    Chapter 121 provides for statutory damages of **not less than $300** plus actual damages.

## CLAIM TWENTY – REHABILITATION ACT OF 1973 (29 U.S.C. § 794)
*(Against Greyhound Lines, Inc. and Flix Entities Receiving Federal Funds)*

175.    Plaintiff realleges all applicable paragraphs.

176.    Greyhound receives federal financial assistance through Federal Transit Administration programs and is therefore subject to the Rehabilitation Act.

177.    Plaintiff was denied access to transportation **solely by reason of her disability**, in violation of § 504.

178.    Compensatory damages are available for intentional discrimination.

## CLAIM TWENTY-ONE – INJUNCTIVE RELIEF UNDER TITLE III OF THE ADA
### *(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)*

179.    Plaintiff realleges all applicable paragraphs.

180.    Flix/Greyhound are private entities operating a place of public accommodation.

181.    They discriminated against Plaintiff by:

- failing to keep accessible seating clear,
- failing to provide reasonable modifications,
- failing to train their employees, and
- engaging in practices that endanger disabled passengers.

182.    Under Title III, Plaintiff seeks **injunctive relief** requiring Defendants to:

1. Enforce luggage and seating policies to keep accessible seats unobstructed;
2. Implement a reliable system guaranteeing accessible seating sold is available; and
3. Mandate ADA and de-escalation training for all personnel.

## VI.    DAMAGES

183.    Plaintiff realleges and incorporates all preceding paragraphs.

184.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer **significant compensable damages**, including but not limited to:

### A. *Physical Pain, Suffering, and Bodily Injury*

185.    Plaintiff endured immediate and ongoing physical pain, including ankle, knee, lumbar, cervical, and soft-tissue injuries, all of which were aggravated by

Defendants' conduct.  These injuries continue to impair her mobility and quality of life.

B. *Emotional Distress, Mental Anguish, and Psychological Harm*

186. Plaintiff suffered humiliation, indignity, anxiety, fear, and mental anguish as a result of being discriminated against, injured, wrongfully ejected, and abandoned by those she depended upon for safe passage.  These harms are compensable under § 1983, the ADA, the Rehabilitation Act, contract law, the DTPA, IIED, and Texas tort law.

187. These events have caused heightened anxiety, fear, hypervigilance, and a decline in Plaintiff's emotional well-being, including a formal diagnosis of Generalized Anxiety Disorder attributable to this incident.

C. *Aggravation of Pre-Existing Conditions and Physical Impairment*

188. Defendants' actions exacerbated Plaintiff's permanent disability and underlying degenerative conditions, resulting in worsened mobility limitations, increased pain, and long-term functional impairment.

D. *Economic Damages and Out-of-Pocket Losses*

189. Plaintiff suffered economic damages including, but not limited to:

- The cost of the unused transportation;
- Replacement travel expenses;
- Out-of-pocket costs incurred as a result of the wrongful ejection;
- Consequential damages flowing naturally from Defendants' breach of contract; and

- Costs incurred to obtain medical care, records, transportation, and alternative accommodations.

These amounts are recoverable under Texas contract law, the DTPA, negligence theories, and common carrier doctrines.

### E. *Medical Expenses (Past and Future)*

190.  Plaintiff incurred medical expenses for emergency treatment, imaging, orthopedic care, chiropractic treatment, pain management, and follow-up medical evaluation. Future medical expenses are reasonably certain due to the lasting nature of her injuries.

### F. *Physical Impairment and Loss of Enjoyment of Life*

191.  Plaintiff's ability to engage in everyday activities and enjoy her life fully has been significantly reduced and diminished as a result of Defendants' conduct.

### G. *Damages for Constitutional and Civil Rights Violations*

192.  Plaintiff is entitled to recover compensatory damages for violations of her rights under the **Fourth and Fourteenth Amendments**, including damages for indignity, loss of liberty, emotional harm, and personal injuries resulting from unconstitutional police conduct.

193.  Plaintiff is further entitled to damages under **42 U.S.C. § 1983**, including damages associated with discriminatory treatment and unlawful use of force.

### H. *ADA and Rehabilitation Act Damages*

194.    Plaintiff is entitled to compensatory damages under the **Americans with Disabilities Act (Title II)** and **Section 504 of the Rehabilitation Act** for discrimination based on disability, denial of reasonable modifications, and exclusion from nondiscriminatory law-enforcement services.

I.    *Statutory Damages Under Texas human Rights Code 121*

195.    Plaintiff is entitled to the statutory minimum of **$300** under Tex. Hum. Res. Code § 121.004, plus all actual damages for disability-based discrimination.

J.    *DTPA Damages (Economic + Mental Anguish + Treble Damages)*

196.    Because Defendants' acts were **knowing**, Plaintiff is entitled to:

- Economic damages;
- Damages for mental anguish; and,
- **Up to three times (treble) economic damages** under Tex. Bus. & Com. Code § 17.50(b)(1).

K.    *Punitive and Exemplary Damages*

197.    Punitive damages are recoverable against:

- the **individual officer defendants** for constitutional violations; and
- the **corporate defendants** (Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.) for gross negligence, intentional torts, malicious conduct, defamation, knowing DTPA violations, and outrageous conduct meeting the IIED standard.

198.    Such damages are warranted to punish deliberate misconduct and deter future violations.

L. *Attorney's Fees, Costs, and Litigation Expenses*

199.   Plaintiff is entitled to recover all reasonable attorney's fees, costs, and litigation

expenses under:

- 42 U.S.C. § 1988;
- the ADA;
- the Rehabilitation Act;
- the DTPA; and
- Chapter 121 of the Texas Human Rights Code.

M. *Pre- and Post-Judgment Interest*

200.   Plaintiff seeks all appropriate **pre-judgment** and **post-judgment interest** as

allowed by law.

N. *Injunctive and Equitable Relief*

201.   Plaintiff seeks appropriate injunctive relief, including but not limited to orders

requiring Flix/Greyhound to:

1. Enforce baggage and seating policies ensuring accessible seating remains
   unobstructed;
2. Implement ADA-compliant accessible seating verification systems;
3. Require ADA, de-escalation, and disability-sensitivity training for all drivers
   and staff;
4. Adopt policies preventing wrongful ejection or escalation against disabled
   passengers; and
5. Comply with all applicable federal and state disability laws.

O. *Any Other Relief*

202.    Plaintiff seeks all other relief – legal, equitable, general, special, or statutory – to which she is justly entitled under federal or Texas law.

## VII.    <u>PRAYER FOR RELIEF</u>

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff **Normalinda Contreras** respectfully requests that Defendants be cited to appear and answer herein, and that upon final trial or other disposition, the Court enter judgment in Plaintiff's favor and award the following relief:

1.  **Compensatory damages** for all physical pain and suffering, mental anguish, emotional distress, physical impairment, loss of enjoyment of life, and all general and special damages recoverable under federal and Texas law.

2.  **Economic Damages** including the cost of the unused transportation, replacement travel expenses, consequential damages arising from breach of contract, and all out-of-pocket losses proximately caused by Defendants.

3.  **Medical Expenses** for all past and future medical expenses reasonably incurred due to the injuries caused by Defendants.

4.  **Constitutional Damages (§ 1983)** for violations of Plaintiff's Fourth and Fourteenth Amendment rights, including unlawful seizure, excessive force, disability-based discrimination, and all related harms.

5.  **Compensatory damages under the Americans with Disabilities Act (Title II)** and **Section 504 of the Rehabilitation Act** for intentional discrimination

and denial of equal access to nondiscriminatory law enforcement services and transportation, as authorized under Title II of the ADA and § 504 of the Rehabilitation Act.

6. **Statutory Damages Under Texas Human Rights Code Chapter 121** Including the statutory minimum of **$300**, plus all actual damages authorized by law.

7. **DTPA Damages** – All economic damages, damages for mental anguish, and **up to three times (treble) economic damages** for Defendants' knowing violations of the DTPA.

8. **Punitive and Exemplary Damages a**gainst:

   - the **individual officer defendants** for their reckless, malicious, and deliberately indifferent violations of Plaintiff's constitutional rights; and

   - the **corporate defendants** (Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.) for gross negligence, intentional torts, knowing DTPA violations, and outrageous conduct meeting the standard for exemplary damages.

     (***Punitive damages are not sought against the City of McAllen.***)

9. **Declaratory Relief** declaring Defendants' conduct unlawful.

10. **Injunctive Relief i**ncluding, but not limited to, orders requiring Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc. to:

    - enforce luggage and seating policies ensuring accessible seats remain unobstructed,

- implement ADA-compliant systems to guarantee accessible seating that is sold,
- mandate ADA, disability-sensitivity, and de-escalation training for all drivers and staff,
- revise policies to prevent wrongful ejection of disabled passengers, and
- comply fully with Title III of the ADA and applicable federal and state disability laws.

11. **Attorney's Fees and Costs a**s allowed under 42 U.S.C. § 1988, the ADA, the Rehabilitation Act, the DTPA, the Texas Human Rights Code, and all other applicable statutes.

12. **Pre-Judgment and Post-Judgment Interest** at the highest rates allowed by law.

13. **Costs of Court**

14. Any **Additional Relief** and all further relief – legal, equitable, statutory, or otherwise – to which Plaintiff may be justly entitled.

## VIII.  <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable under the United States Constitution and federal law.  Plaintiff respectfully invokes her right to have the facts of this case determined by a jury of her peers.

11/22/2025                                    Respectfully Submitted,


*/s/Courtney A. Vincent*
**Courtney A. Vincent**
Minnesota Bar No. 0403083
Admitted: **U.S. District Court,**
**Southern District of Texas**
SDTX Bar No. 3746531
**info@vincentlawpllc.com**
VINCENT LAW, PLLC
1035 Dairy Ashford, Suite 145
Houston, Texas  77079
**Mailing Address:**
P.O. Box 940129
Houston, Texas  77094
Tel: (713) 223-9300
Fax: (832)603-4444
**COUNSEL FOR PLAINTIFF**

*/s/ Benjamin S. Campagna*
**Benjamin S. Campagna**
Texas Bar No. 24078302
SDTX Bar No. 3822709
Attorney, Of Counsel
TX Attorney Group, PLLC
**ben@txattorneygroup.com**
Main Number: 832-286-0800
Direct Line: 832-286-0804
Fax Number: 281-612-3006
**COUNSEL FOR PLAINTIFF**

*/S/ DAVID A. BLEAKNEY JR.*
**David A. Bleakney, Jr.**
Texas Bar No. 24103798
Federal ID No. 3749624
Attorney, TX Attorney Group,
PLLC
**david@txattorneygroup.com**
Main Number: 832-286-0800
Direct Line: 832-286-0804
Fax Number: 281-612-3006
**COUNSEL FOR PLAINTIFF**