**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **NORMALINDA CONTRERAS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CITY OF MCALLEN;** | § | **CIVIL ACTION NO.** |
| **CHIEF OF POLICE VICTOR** | § | **7:25-cv-00541** |
| **RODRIGUEZ; SERGEANT** | § | |
| **JAVIER CAVAZOS (#6482);** | § | |
| **OFFICER PEREZ (#7568);** | § | |
| **OFFICER ZAPATA (#4457);** | § | |
| **OFFICER RODRIGUEZ (#8325);** | § | |
| **OFFICER O. PUENTE (#14878);** | § | |
| **OFFICER DELGADO (#8279);** | § | |
| **OFFICER CASTRO (#14602); FLIX** | § | |
| **NORTH AMERICA, INC; FLIX** | § | |
| **BUS, INC.; GREYHOUND LINES,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendants.** | § | |

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

**TO THE HONORABLE JUDGE OF THE COURT:**

**NOW COMES** Plaintiff **NORMALINDA CONTRERAS** ("Plaintiff" or "Ms. Contreras"), by and through undersigned counsel, and files this *Plaintiff's First Amended Complaint* against the **CITY OF MCALLEN**, **Chief Victor Rodriguez** in his official capacity, and the individually named McAllen Police Department officers listed above in the case styling, and Defendants Flix North America, Inc., FlixBus, Inc., and Greyhound Lines,

Inc. (collectively "Flix/Greyhound"), and respectfully shows the Court as follows. Ms. Contreras seeks redress for violations of **42 U.S.C. § 1983**, including her rights under the **Fourth Amendment** and the **Fourteenth Amendment's Equal Protection Clause**, as well as violations of **Title II of the Americans with Disabilities Act**, **Section 504 of the Rehabilitation Act**, and related **Texas state-law torts**, arising from the discriminatory, abusive, and injurious conduct inflicted upon her on **November 24, 2023**.

In support thereof, Plaintiff respectfully states as follows:

## I. INTRODUCTION

1. This lawsuit arises from the discriminatory, unconstitutional, and injurious treatment of a disabled grandmother who sought nothing more than to occupy the accessible seat she lawfully purchased. On November 24, 2023, Ms. Contreras boarded a FlixBus/Greyhound bus in McAllen, Texas using a handicapped-accessible ticket entitling her to reserved disability seating.

2. When the designated accessible seating area was obstructed by luggage, Plaintiff moved a single bag in order to access the seat she medically required and for which she had purchased a handicapped-accessible ticket. Rather than providing accommodation or assistance, the bus driver escalated the matter, threatened Plaintiff, and summoned law enforcement.

3. What followed was not de-escalation or assistance. Seven to eight armed McAllen Police Department officers arrived, interrogated Plaintiff about her disability, disregarded documentation she provided, ordered her off the bus, and – while she

was complying – used force that caused her to fall down the bus steps and onto the pavement.

4. Plaintiff was injured, humiliated, and abandoned without medical aid. The incident was later minimized and mischaracterized as a mere "disturbance," and the City has since failed to produce required public records, including body-camera footage and dispatch logs.

5. Plaintiff brings this action to vindicate her rights under the Fourth Amendment, the Americans with Disabilities Act, the Rehabilitation Act, and Texas law, and to hold Defendants accountable for systemic failures in training, supervision, ADA compliance, and the handling of disabled individuals.

## II. JURISDICTION AND VENUE

6. This action arises under 28 U.S.C. §§ 1331 and 1343**,** because Plaintiff asserts claims under the Constitution and federal laws, including 42 U.S.C. § 1983, Title II of the ADA, and Section 504 of the Rehabilitation Act.

7. Supplemental jurisdiction over Plaintiff's state-law claims is proper under 28 U.S.C. § 1367.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Hidalgo County, Texas, within the Southern District of Texas, McAllen Division.

## III. PARTIES

9. Plaintiff **NORMALINDA CONTRERAS** is an individual residing in Hidalgo County, Texas**.**

10. Defendant, the **CITY OF MCALLEN**, is a municipal entity subject to suit under 42 U.S.C. § 1983, Title II of the ADA, and Section 504 of the Rehabilitation Act. Final policymaking authority for the McAllen Police Department rests with the City of McAllen through its City Commission and City Manager, including authority over training, discipline, ADA compliance, and law-enforcement policies. The City of McAllen may be served with process at: City of McAllen, Attn: City Attorney / City Manager, 1300 Houston Avenue**,** McAllen, Texas 78501, or wherever it may be found.

11. Defendant **CHIEF VICTOR RODRIGUEZ** is sued in his official capacity only for purposes of prospective relief and for actions taken pursuant to policies, customs, practices, and delegated authority of the City of McAllen. He may be served at: McAllen Police Department, Attn: Chief Victor Rodriguez, 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever he may be found.

12. Defendant **SERGEANT JAVIER CAVAZOS (#6482)** is a McAllen Police Department officer and is sued in his individual capacity. He may be served at: McAllen Police Department, 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever he may be found.

13. Defendant **OFFICER PEREZ (#7568)** is a McAllen Police Department officer and is sued in his individual capacity. He may be served at: McAllen Police Department,

1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever he may be found.

14. Defendant **OFFICER ZAPATA (#4457)** is a McAllen Police Department officer and is sued in his individual capacity. He may be served at: McAllen Police Department, 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever he may be found.

15. Defendant **OFFICER RODRIGUEZ (#8325)** is a McAllen Police Department officer and is sued in his individual capacity. He may be served at: McAllen Police Department, 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever he may be found.

16. Defendant **OFFICER O. PUENTE (#14878)** is a McAllen Police Department officer and is sued in his individual capacity. He may be served at: McAllen Police Department, 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever he may be found.

17. Defendant **OFFICER DELGADO (#8279)** is a McAllen Police Department officer and is sued in his individual capacity. He may be served at: McAllen Police Department, 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever he may be found.

18. Defendant **OFFICER CASTRO (#14602)** is a McAllen Police Department officer and is sued in his individual capacity. He may each be served at: McAllen Police Department**,** 1601 North Bicentennial Boulevard, McAllen, Texas 78501, or wherever they may be found.

19. Additional defendants may be added as discovery proceeds, including policymakers, supervisors, or additional officers. Such defendants may be served at the above addresses or wherever they may be found.

20. The McAllen Police Department is not a jural entity capable of being sued under Texas law and is therefore not named as a defendant. However, the McAllen Police Department's headquarters address is included above solely for the purpose of effectuating service on the individual officer defendants.

21. Defendant **FLIX NORTH AMERICA, INC.** is a Delaware corporation with its principal place of business at 9773 Harry Hines Boulevard, Dallas, Texas 75220. Its registered agent for service of process is C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Flix North America Inc. owns and controls Greyhound Lines, Inc. and FlixBus, Inc. and operates intercity bus transportation in the United States under a unified corporate structure.

22. Defendant **FLIXBUS, INC.** is a Delaware corporation with its principal place of business at 315 Continental Avenue, Dallas, Texas 75207. Its registered agent is C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. FlixBus, Inc. conducts interstate bus passenger services under the FlixBus brand and is an agent, subsidiary, and alter ego of Flix North America Inc.

23. Defendant **GREYHOUND LINES, INC.** is a Delaware corporation with its principal place of business at 315 Continental Avenue, Dallas, Texas 75207. Its registered agent is C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Greyhound Lines, Inc. is a long-standing common carrier operating

nationwide bus transportation services and is now owned, operated, and controlled by Flix North America Inc. and FlixBus, Inc.

*Single Business Enterprise / Agency Allegations*

24. Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc. operate as a single business enterprise in the United States, sharing management, branding, operations, common control, and unified policies, including those governing disability accommodations, baggage rules, driver training, and law enforcement interactions.

25. At all relevant times, FlixBus, and Greyhound drivers, including the driver involved in the November 24, 2023 incident, were acting as agents, servants, and employees of Flix North America Inc., and each corporate defendant is liable for the acts and omissions of the driver under principles of respondeat superior, agency, and joint enterprise liability.

26. Each Flix/Greyhound entity exercised actual and apparent authority over the driver's conduct, including ticketing, boarding, seating, ADA compliance, and interactions with law enforcement.

27. Each corporate defendant may be served at its registered agent address listed above or wherever it may be found.

## IV. FACTUAL BACKGROUND

The following allegations are based on Plaintiff's personal knowledge, the information presently available to her, and the reasonable inferences drawn therefrom.

*A. Plaintiff's Disability and Purpose of Travel*

28. Plaintiff Normalinda Contreras is a permanently disabled Latina grandmother residing in Hidalgo County, Texas. She is a life-long, born and raised, resident of McAllen, Texas.

29. Plaintiff's disabilities are well documented through medical providers and require ongoing accommodations.

30. Prior to the incident, Ms. Contreras routinely traveled between McAllen and Houston to visit her adult children and grandchildren. Because of her disability, she consistently purchased handicapped-accessible tickets, which entitled her to reserved accessible seating.

*B. The November 24, 2023 Bus Boarding and Driver Misconduct*

31. On November 24, 2023, Plaintiff boarded a FlixBus/Greyhound bus at the McAllen station after purchasing her usual handicapped-accessible ticket.

32. The designated disability seating at the front of the bus was obstructed by other passengers' luggage. In order to sit in the seat she paid for and medically required, Plaintiff gently moved one bag to the side.

33. The bus driver reacted with hostility, stating, "*Ooooh nooo you didn't*," and escalating immediately to confrontation.

34. The driver then declared: "*Move to the back of the bus or I'm calling the cops.*"

35. For a disabled woman of color, the command to "*move to the back of the bus*" carries profound historical weight. No person – least of all a grandmother with a

documented disability – should ever again hear such a phrase, let alone have it backed by armed law enforcement.

36. Instead of resolving the situation through basic customer service or ADA-compliant accommodation, the bus driver summoned police.

*C. The Arrival of McAllen Police Officers and Immediate Escalation*

37. Within minutes, seven to eight armed McAllen Police Department officers arrived on the scene. The officers included:

- Sgt. Javier Cavazos (#6482)
- Officer Perez (#7568)
- Officer Zapata (#4457)
- Officer Rodriguez (#8325)
- Officer O. Puente (#14878)
- Officer Delgado (#8279)
- Officer Castro (#14602)

38. Rather than de-escalate the situation, the officers' conduct escalated the encounter and compounded the discriminatory treatment initiated by the driver.

39. Officers aggressively interrogated Plaintiff regarding her disability, demanding answers to questions regarding her disability under the authority and coercive presence of armed police officers, including:

- "*Why are you disabled*?"
- "*What is your disability?*"
- "*What disabled equipment do you have*?"

40. Plaintiff calmly produced extensive documentation:

- A physician's permanent disability certification
- Her DMV handicap placard
- Her Life Alert device
- Prescription medications substantiating her medical conditions

41. Despite ample proof of her disability, the officers dismissed and disregarded her documentation entirely.

42. Sgt. Javier Cavazos was the ranking officer on scene and exercised command authority over the encounter, including directing that Plaintiff be removed from the bus.

43. Plaintiff was ordered by McAllen Police officers to exit the bus under color of law and was not free to remain seated, refuse compliance, or otherwise terminate the encounter.

44. Officers positioned themselves around Plaintiff, controlled her movement, and directed her compliance.

45. At no point after officers arrived was Plaintiff free to disregard police commands, remain on the bus, or leave the scene except by complying with Sgt. Cavazos's order that she exit the bus.

*D. <u>The Forced Removal and Use of Excessive Force</u>*

46. Sgt. Cavazos ordered Plaintiff removed from the bus despite the absence of probable cause, reasonable suspicion, or any criminal violation.

47. Plaintiff specifically heard Sgt. Cavazos yelling at the officers on the bus to "Get her off!" and "Get her off, now!" – commanding the officers to extricate and eject

Plaintiff from the bus.

48. Plaintiff observed some passengers on the bus recording the situation with their phones. One of the officers barked at the passenger onlookers to stop recording. Meanwhile, some passengers were telling the officers to leave the Plaintiff alone.

49. Plaintiff complied and began descending the bus stairs slowly due to her visible disability and limited mobility.

50. Defendant Officer Francisco Zapata was present on the bus stairwell during Plaintiff's forced removal, positioned in close proximity to Plaintiff and the officer who applied force, observed the use of force and Plaintiff's resulting fall, and failed to intervene to prevent the use of force or render aid afterward.

51. While Plaintiff was descending the stairs, an officer positioned directly behind Plaintiff, and within arm's reach, used his knee to aggressively push or strike Plaintiff on her lower back. On information and belief, this officer is one of the named Defendants in this cause who was present at the scene. However, the identity of this particular officer will need to be determined through discovery. As described herein, Plaintiff attempted to determine the officer's identity through public information requests, but the City of McAllen refused to provide that information.

52. The force propelled Plaintiff forward, directly causing her to lose balance and fall down the bus steps, grab the handrail, severely twist her leg/ankle, and was thereby seriously and severely was injured.

53. The encounter unfolded over sufficient time for officers to position themselves, issue commands, escort Plaintiff toward the exit, and observe her descent, providing

ample opportunity to intervene before and after force was used.

54. Multiple officers were present, within close proximity to Plaintiff, observed the use of force as it occurred, had a reasonable opportunity to intervene to prevent or mitigate the harm, and nonetheless failed to take any action.

55. At the time force was used, Plaintiff was compliant, non-threatening, and descending the bus steps slowly due to her disability, and the encounter involved no emergency, flight, or safety threat requiring immediate force.

56. The force used was unnecessary and excessive and was inflicted upon a non-threatening, compliant, disabled grandmother who posed no danger to anyone.

57. After causing Plaintiff's visible injury, none of the officers rendered medical aid or assistance, summoned emergency services, or took steps to ensure her safety.

58. The officers left Plaintiff injured, despite her limping in severe pain and asking for help. Defendant officers departed the scene without calling an ambulance, offering assistance, or attempting to contact anyone on her behalf, fully abandoning a person whose injuries they themselves had caused.

*E. Injuries and Medical Treatment*

59. Following the incident, Plaintiff sought treatment from numerous medical providers, including American Family Care Urgent Care, Rio Grande Valley Orthopedics, Texas Health Care Imaging, South Texas Health System Clinics, and Chiropractic Center of McAllen.

60. Verified medical findings include:

- Grade 1 sprain of the left ankle with calcaneofibular ligament injury;
- Left knee effusion and degenerative narrowing;
- Lumbar strain and radiculopathy, with pre-existing degenerative changes aggravated by trauma;
- Cervical and thoracic strain with chronic muscle spasm radiating into the head and shoulders;
- Generalized Anxiety Disorder (F41.1)**,** formally diagnosed on March 29, 2024 and directly linked to the humiliation and trauma of the incident;
- Confirmation of permanent disability status by her treating physician in 2024.

61. Plaintiff continues to suffer pain, limited mobility, emotional distress, and exacerbation of her chronic conditions as a direct and proximate result of Defendants' actions.

*F. The City's False Characterization of the Incident*

62. Despite the severity of the encounter, the McAllen Police Department internally labeled the incident a "disturbance," which grossly misrepresents the nature and seriousness of the events.

63. This description minimizes both the discriminatory behavior and the unconstitutional force used against Plaintiff.

*G. The City's Ongoing Refusal to Produce Records*

64. In October 2025, Plaintiff, through counsel, submitted two Texas Public Information Act requests for all incident reports, body-camera footage, dash-camera recordings, dispatch logs, radio traffic, officer statements, and internal

communications.

65. Plaintiff paid the required fees.

66. To this day, the City and its Police Department have produced only a partially redacted "incident report," and nothing more from the records it is legally required to provide.

67. This failure violates Tex. Gov't Code § 552.221, which mandates timely production of public records.

68. The City's refusal to produce basic evidence supports a strong inference of concealment, alteration, or destruction of video and documentation favorable to Plaintiff's claims.

69. Each day of continued withholding constitutes an ongoing violation and heightens the inference of spoliation.

*H. The Broader Pattern*

70. The conduct of the officers on November 24, 2023 was not merely an isolated misjudgment but is consistent with deficiencies in the City's training, supervision, and ADA compliance practices, which allowed such conduct to occur.

71. The wrongful acts described herein were a direct result of the City of McAllen's failures in training, supervision, ADA compliance, and accountability.

**Additional Facts Specific to the Corporate Defendants**
*(Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)*

72. To avoid confusion between the allegations against the City of McAllen/Police

Department and those asserted against the private transportation defendants, the following facts pertain specifically to Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc. (collectively "Flix/Greyhound").

*I. Flix/Greyhound Corporate Structure and Unified Operations*

73. Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc. operate as a single, unified business enterprise for the purpose of intercity bus transportation in the United States. They share management, operations, branding, ADA compliance procedures, baggage policies, and customer accommodation responsibilities. Drivers employed under the FlixBus and Greyhound brands are agents, servants, and employees of all three entities under principles of actual authority, apparent authority, and joint enterprise.

*J. DOJ Investigation and Systemic ADA Failures*

74. Upon information and belief, and based on publicly available information, the United States Department of Justice has inquiries concerning accessibility practices involving Greyhound Lines, Inc. and affiliated Flix entities, including complaints by individuals with disabilities regarding accessible seating, accommodation failures, and passenger treatment.

75. Plaintiff does not rely on the ultimate findings of any such inquiry for liability purposes but alleges the investigation as evidence of notice, foreseeability, and systemic risks known or reasonably knowable to Defendants prior to and at the time of the events at issue.

K. *Accessible Seating Violations and Baggage Obstruction*

76. On the date of the incident, Ms. Contreras purchased a handicapped-accessible ticket entitling her to a designated, federally protected accessible seat. Federal regulations (49 C.F.R. Parts 37 and 38) and Flix/Greyhound's own policies require that accessible seating remain unobstructed and available to passengers with disabilities. Instead, the accessible seating area was blocked with luggage – an ongoing and well-known violation of the carrier's own baggage policies and ADA requirements.

L. *Driver Misconduct and Failure to Provide Accommodation*

77. A reasonably cautious and prudent bus operator would have cleared the accessible seating area, offered assistance, and provided the accommodation Ms. Contreras paid for and needed. Instead, the driver became hostile, refused to clear the seat, and unlawfully attempted to force Ms. Contreras to move to the back of the bus – an area she could not safely access.

78. When Ms. Contreras asserted her right to use the accessible seat she purchased, the driver escalated the situation by summoning law enforcement.

M. *Prior Notice to Flix/Greyhound*

79. Ms. Contreras had previously notified Greyhound/FlixBus that she encountered recurring problems with accommodation and accessible seating. The DOJ investigation further demonstrates that these were not isolated issues but part of a widespread pattern of ADA noncompliance known to the corporate defendants.

Flix/Greyhound had ample notice that their policies, training, and enforcement mechanisms were failing to protect disabled passengers.

*N. Corporate Training Failures*

80. Flix/Greyhound owed Ms. Contreras the heightened duty of care required of common carriers under Texas law. This duty includes proper training of drivers in ADA compliance, reasonable modifications, de-escalation, passenger assistance, accessible seating protocols, and safe handling of disabled passengers. The driver's conduct demonstrates a lack of fundamental training in each of these areas.

*O. Foreseeability of Police Misconduct*

81. The driver's decision to summon approximately eight armed officers and a sergeant to address a nonviolent seating accommodation dispute created a foreseeable and substantial risk of harm.

82. Under Texas law, the heightened duty of a common carrier expands foreseeability. A very cautious and prudent person – much less a trained common carrier operator – would foresee that calling such a large police presence to forcibly remove a disabled passenger could lead to physical harm, including falls, injuries on the narrow bus steps, and forceful handling.

*P. Concurring Proximate Cause*

83. The driver's actions were a substantial factor in bringing about the harm that occurred. "But for" the driver's wrongful refusal to provide the accessible seat and

"but for" her summoning of the police to physically remove Ms. Contreras, none of the injuries inflicted by law enforcement would have occurred.

84. The police were not a superseding cause but a concurring and foreseeable result of the driver's misconduct and the company's systemic ADA and training failures.

*Q. Corporate Policy Failures*

85. The entire chain of events began because Flix/Greyhound failed to enforce their own baggage policies and federal accessibility requirements, allowing luggage to block the accessible seating area. This systemic negligence created the conflict and was a direct and producing cause of Plaintiff's injuries.

## V. CAUSES OF ACTION

**CLAIM ONE – FOURTH AMENDMENT UNREASONABLE SEIZURE**
***(42 U.S.C. § 1983 – Against Individual Officers)***

86. Plaintiff realleges and incorporates all preceding paragraphs.

87. The Fourth Amendment guarantees the right to be free from unreasonable seizures. A seizure occurs when an officer, through physical force or a show of official authority, restrains the liberty of a person such that a reasonable person would not feel free to disregard police commands or terminate the encounter.

88. The individually named officers, acting under color of state law, arrived in response to a non-criminal customer-service dispute on a commercial bus. Plaintiff had committed no crime, posed no threat, and was lawfully seated in the disability-accessible section for which she had purchased a ticket.

89. Upon arrival, the officers – led by Sgt. Javier Cavazos – exercised police command authority by surrounding Plaintiff, controlling her movement, and ordering her to exit the bus, conduct that would lead any reasonable person to believe she was not free to remain seated, refuse compliance, or otherwise terminate the encounter.

90. At the time Plaintiff was ordered to exit the bus, the officers lacked reasonable suspicion or probable cause to detain, question, or remove her. No exigency, safety concern, or lawful basis justified the seizure.

91. By effecting a seizure through command authority and compelled removal from the bus – rather than through any consensual interaction – the individually named officers violated Plaintiff's rights under the Fourth Amendment to the United States Constitution.

92. As a direct and proximate result of this unlawful seizure, Plaintiff suffered physical injuries, emotional distress, humiliation, and the deprivation of her constitutional rights.

**CLAIM TWO – FOURTH AMENDMENT EXCESSIVE FORCE AND FAILURE TO INTERVENE**
***(42 U.S.C. § 1983 – Against Individual Officers)***

93. Plaintiff realleges and incorporates all preceding paragraphs.

94. The Fourth Amendment prohibits law enforcement officers from using force that is objectively unreasonable under the circumstances. Claims of excessive force during a seizure are governed by the standard set forth in *Graham v. Connor*, 490 U.S. 386 (1989).

95. Plaintiff was seized within the meaning of the Fourth Amendment through a show of authority and compelled removal from the bus. She was compliant, non-threatening, visibly disabled, and attempting to descend the bus steps only because officers ordered her to do so.

96. While Plaintiff was descending the stairs, an officer positioned directly behind her affirmatively applied force by striking her lower back with his knee, propelling her forward and causing her to fall onto the pavement below.

97. The force used against Plaintiff – applied during a non-emergency seizure against a compliant, non-threatening individual descending a stairwell – served no legitimate law-enforcement purpose and was objectively unreasonable under *Graham v. Connor*, 490 U.S. 386 (1989).

98. Other officers present observed Plaintiff's removal, were positioned in close proximity, and failed to intervene despite having a realistic and reasonable opportunity to prevent or mitigate the use of force and resulting injury.

99. At the time of the incident, it was clearly established that officers may not apply force against a compliant, non-threatening individual during a non-emergency seizure, particularly where such force creates a substantial risk of serious injury. Such force is facially unreasonable, and any reasonable officer would understand that kneeing a compliant elderly disabled woman in the back down a flight of bus steps constitutes excessive force. Further, any reasonable police bystander would understand such force to be excessive and intervene.

100. As a direct and proximate result of Defendants' actions and omissions, Plaintiff

suffered significant physical injuries, emotional distress, humiliation, and the exacerbation of permanent impairments.

**CLAIM THREE – FOURTEENTH AMENDMENT DISABILITY-BASED EQUAL PROTECTION VIOLATION**
***(42 U.S.C. § 1983 – Against Individual Officers)***

101. Plaintiff realleges and incorporates all preceding paragraphs.

102. The Equal Protection Clause of the Fourteenth Amendment prohibits law enforcement officers from intentionally treating an individual differently from others similarly situated on the basis of disability, absent a rational and lawful basis.

103. Although Plaintiff was a passenger on a privately operated bus, the conduct challenged herein arose from the exercise of municipal police authority. McAllen Police Department officers boarded the bus, interrogated Plaintiff, directed her removal, and physically seized her. Once officers exercised control over Plaintiff and the scene, the interaction constituted a municipal law-enforcement activity subject to constitutional constraints. See *Frame v. City of Arlington*, 657 F.3d 215, 224–25 (5th Cir. 2011) (en banc).

104. During that police interaction, Defendants interrogated Plaintiff about her disability, demanded private medical information, dismissed and disregarded the documentation she provided, and subjected her to scrutiny, coercion, and removal based on her disability, rather than addressing the matter as a routine, non-criminal customer-service issue.

105. Rather than treating Plaintiff as an individual entitled to equal protection under the law, officers treated her disability as a basis for escalation, removal, and the application of police authority. This differential treatment was not rationally related to any legitimate law-enforcement objective, as Plaintiff posed no threat, committed no offense, and required no emergency intervention.

106. Defendants' actions – particularly their disability-focused interrogation, dismissal of documentation, and escalation of a routine customer-service matter – were motivated by discriminatory purpose and had the effect of denying Plaintiff equal protection of the laws on the basis of disability, in violation of the Fourteenth Amendment.

107. There was no rational basis for the officers' treatment of Plaintiff in this manner, and but for Plaintiff's disability, she would not have been subjected to such harsh and unwarranted treatment. Similarly-situated non-disabled individuals who are suspected of causing a minor disturbance on the bus are not treated the same way by City of McAllen authorities.

108. As a direct and proximate result of this discrimination, Plaintiff suffered humiliation, emotional distress, and the deprivation of the equal treatment guaranteed by the Constitution.

**CLAIM FOUR – MUNICIPAL LIABILITY (*MONELL*)**
***(42 U.S.C. § 1983 – Against City of McAllen & Chief Rodriguez in Official Capacity)***

109. Plaintiff realleges and incorporates all preceding paragraphs.

110. The City of McAllen is liable under *Monell v. Department of Social Services*, 436

U.S. 658 (1978), because Plaintiff's constitutional injuries were caused by the City's policies, customs, practices, and deliberate indifference to the rights of disabled individuals during police encounters.

111. Final policymaking authority for the McAllen Police Department rests with the City of McAllen through its City Commission and City Manager, including authority over officer training, supervision, discipline, and ADA compliance. Defendant Chief Victor Rodriguez, sued in his official capacity, is responsible for implementing and enforcing those policies and practices.

112. The City of McAllen failed to adequately train its officers in critical areas, including:

a. ADA-compliant policing and interactions with physically disabled individuals;

b. de-escalation during non-criminal encounters;

c. lawful seizure and investigative detention standards; and,

d. proportional use of force against compliant, non-threatening persons.

113. The need for such training was obvious. Armed officers routinely respond to non-criminal service calls involving vulnerable individuals, including persons with physical disabilities, and the absence of training in ADA compliance and de-escalation creates a highly predictable risk of constitutional injury. *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

114. The constitutional violations inflicted upon Plaintiff were the plainly foreseeable consequence of the City's failure to train. Even a single incident may establish

municipal liability where, as here, the risk of constitutional harm from the lack of training is so obvious that the City's failure reflects deliberate indifference. *See Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409–10 (1997). The fact that no officer among the seven or eight on the scene did the right thing is itself evidence of a cultural or training failure within the department.

115. Following the incident involving Plaintiff, the City of McAllen, upon information and belief, failed to implement timely and adequate investigative or corrective measures regarding the conduct of the officers involved, reflecting deliberate indifference to the rights of disabled individuals during non-criminal encounters.

116. In the alternative, the absence of adequate supervision, discipline, and corrective action following the incident involving Plaintiff reflects and reinforces the City's failure to train officers in ADA-compliant policing and de-escalation, creating a predictable risk that constitutional violations would occur.

117. Ratification is an alternative basis of municipal liability under *Monell*. See *Young v. Bd. of Supervisors of Humphreys Cnty.*, 927 F.3d 898, 903 (5th Cir. 2019) ("One way of establishing liability is to show that a policymaker ratified the acts of a subordinate."); see also *Covington v. City of Madisonville*, 812 F. App'x 219, 228-29 (5th Cir. 2020) (reversing the dismissal of a ratification claim under Monell where the policymakers had covered up the perpetrator's misconduct and failed to turn over recordings to investigators). Ratification can be demonstrated by lack of discipline. *Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

118. Following the incident involving Plaintiff, the City ratified the officers' misconduct by failing to discipline those involved, failing to correct known deficiencies in training and supervision, and by retaining exclusive control over body-camera footage and dispatch records that were not timely produced, thereby impeding transparency and accountability regarding the incident. The City of McAllen had full access to Plaintiff's report and all body-camera footage and knew the full extent of the incident, including the officers' discriminatory basis for Plaintiff's mistreatment and applying excessive force. The City of McAllen made an affirmative decision to retain the officers, not discipline or retrain them, and to protect them from liability. Such conduct constitutes ratification under prevailing Fifth Circuit authorities.

119. In addition to being its own basis for liability, ratification is also evidence of municipal policy. See *Milam*, 113 F. App'x at 628 (5th Cir. 2004); see also *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (suggesting that failure of officials to admit the employees' conduct was in error could be interpreted as a municipal policy.)

120. These policies, customs, practices, and acts of deliberate indifference were the moving force behind the violations of Plaintiff's Fourth and Fourteenth Amendment rights. The officers relied on their training and supervision, which was knowingly deficient, in handling the Plaintiff in this situation. Absent the City's failures in training, supervision, and ADA-compliant policing, the constitutional violations Plaintiff suffered would not have occurred.

## CLAIM FIVE – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (TITLE II)

***(Against City of McAllen)***

121. Plaintiff realleges and incorporates all preceding paragraphs.

122. Title II of the Americans with Disabilities Act prohibits public entities from excluding qualified individuals with disabilities from participation in, or denying them the benefits of, public services, programs, or activities, or otherwise subjecting them to discrimination by reason of disability.

123. At all relevant times, McAllen Police Department officers were acting as agents of the City of McAllen, a public entity, while exercising municipal police authority over Plaintiff. Law-enforcement encounters constitute services, programs, or activities of a public entity within the meaning of Title II, even where the individual did not voluntarily seek the interaction and the underlying setting was privately operated. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Frame v. City of Arlington*, 657 F.3d 215, 224–25 (5th Cir. 2011) (en banc).

124. Plaintiff is a qualified individual with a disability as defined by the ADA.

125. The City discriminated against Plaintiff on the basis of disability by denying her the benefits of nondiscriminatory police services and by failing to make reasonable modifications to policies, practices, and procedures during the encounter, including but not limited to:

    a. Interrogating Plaintiff regarding her disability rather than accepting readily available documentation;

    b. Disregarding clear indicators of Plaintiff's physical limitations and mobility

impairments;

c. Escalating a routine, non-criminal passenger-service issue through coercive police action instead of employing disability-appropriate, non-forceful methods;

d. Employing physical force without first modifying police procedures to accommodate Plaintiff's disability-related limitations; and,

e. Failing to modify police procedures to account for Plaintiff's known disability during a non-emergency encounter.

126. The City acted with deliberate indifference to Plaintiff's federally protected rights by failing to train officers in ADA-compliant policing, de-escalation, and reasonable modification obligations, despite the obvious and foreseeable risk that disabled individuals would be subjected to discriminatory treatment during police encounters.

127. As a direct and proximate result of the City's ADA violations, Plaintiff suffered physical injury, emotional distress, humiliation, and denial of equal access to the public services, programs, and activities of the City, including nondiscriminatory law-enforcement services.

**CLAIM SIX – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**
***(Against City of McAllen)***

128. Plaintiff realleges and incorporates all preceding paragraphs.

129. Section 504 of the Rehabilitation Act prohibits discrimination on the basis of disability under any program or activity receiving federal financial assistance.

130. The City of McAllen receives federal financial assistance, including funding for public safety and law-enforcement operations, and is therefore subject to Section 504.

131. Through the same conduct described in Claim Five, including the denial of nondiscriminatory police services and the failure to make reasonable modifications during a non-emergency encounter, the City discriminated against Plaintiff solely by reason of her disability, in violation of Section 504.

132. The City acted with deliberate indifference to Plaintiff's rights under Section 504 by failing to train officers in disability-compliant policing and reasonable modification obligations, despite obvious notice of Plaintiff's disability and the foreseeable risk of harm, entitling Plaintiff to compensatory damages and all other relief available under the Rehabilitation Act.

**CLAIM SEVEN – ASSAULT AND BATTERY**
***(Against Individual Officers – Pleaded in the Alternative)***

133. Plaintiff realleges and incorporates all preceding paragraphs.

134. Under Texas law, an assault and battery occurs when a person intentionally, knowingly, or recklessly causes harmful or offensive physical contact with another without consent. *See Tex. Penal Code §§ 22.01(a)(1), (3); City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014).

135. While acting under color of law, one or more individually named officers intentionally applied force against Plaintiff by striking her in the lower back with his knee and forcibly causing her to fall down the bus steps and onto the pavement.

136. Such force was applied against a compliant, non-threatening, visibly disabled individual during a non-criminal encounter and constituted harmful and offensive contact not justified by any lawful police purpose.

137. In addition, the other officers who were present at the scene who observed the use of force and positioned themselves to facilitate Plaintiff's removal, yet failed to take any action to stop or mitigate the application of force while jointly participating in the encounter, are liable for assault and battery under Texas law based on their concerted action and participation in the unlawful use of force.

138. Plaintiff suffered bodily injury, physical pain, emotional distress, and aggravation of her preexisting disabilities as a direct and proximate result of Defendants' intentional and harmful conduct.

139. This claim is pleaded in the alternative to Plaintiff's federal constitutional claims and is asserted only to the extent not barred by official immunity or other defenses under Texas law. Specifically, Plaintiff has elected to proceed only against the individual officers regarding her state law negligence and intentional tort claims, and is not proceeding against the City of McAllen under the TTCA.

## <u>CLAIM EIGHT – NEGLIGENCE AND GROSS NEGLIGENCE</u>
***(Against Individual Officers – Pleaded in the Alternative)***

140. Plaintiff realleges and incorporates all preceding paragraphs.

141. Defendants owed Plaintiff a duty to exercise reasonable care in their interactions with her, including duties to avoid unnecessary escalation of a non-criminal encounter, to accommodate known physical disabilities, and to refrain from creating

an unreasonable risk of harm.

142. Independently of any intentional use of force, the individually named officers breached those duties by, among other acts and omissions:

a. Escalating a routine, non-criminal customer-service issue into a police confrontation;

b. Disregarding Plaintiff's visible physical disability and mobility limitations;

c. Ordering Plaintiff to exit the bus in a manner unsafe for a disabled individual;

d. Positioning officers in a manner that foreseeably increased the risk of a fall; and,

e. Failing to render or summon medical assistance after Plaintiff was injured.

143. These breaches proximately caused Plaintiff's physical injuries, emotional distress, and aggravation of her preexisting disabilities, including harms that would have occurred even in the absence of any intentional use of force.

144. Defendants' conduct constituted gross negligence in that, viewed objectively, it involved an extreme degree of risk of serious harm to a visibly disabled individual, and Defendants nevertheless proceeded with conscious indifference to Plaintiff's safety, rights, and well-being.

145. This negligence and gross-negligence claim is pleaded in the alternative and is based on Defendants' acts and omissions independent of any intentional use of force, to the extent such claims are not barred by official or governmental immunity. Specifically, Plaintiff has elected to proceed only against the individual officers regarding her state law negligence and intentional tort claims, and is not proceeding

against the City of McAllen under the TTCA.

**<u>CLAIM NINE – FAILURE TO PROVIDE MEDICAL CARE / FAILURE TO ASSIST</u>**
***(Against Individual Officers – Pleaded in the Alternative)***

146. Plaintiff realleges and incorporates all preceding paragraphs.

147. After causing Plaintiff to fall down the bus steps and sustain visible injuries, Defendants owed Plaintiff a duty to take reasonable steps to provide or summon medical assistance.

148. That duty arose once Defendants created a foreseeable risk of harm to Plaintiff and observed that she had fallen, cried out in pain, and was visibly injured.

149. Despite Plaintiff's obvious injuries and distress, Defendants failed to render any assistance, failed to summon emergency medical services, and failed to inquire whether anyone could be contacted to assist her.

150. Instead, Defendants abandoned Plaintiff at the scene and departed without aid or support without taking reasonable steps to ensure her safety or medical well-being.

151. Defendants' failure to provide or summon medical care caused Plaintiff additional pain, suffering, emotional distress, and delay in receiving necessary medical treatment, separate and apart from the injuries caused by the initial fall.

152. This claim is pleaded in the alternative and is based on Defendants' acts and omissions independent of any discretionary law-enforcement decision or intentional use of force, to the extent not barred by official or governmental immunity. Specifically, Plaintiff has elected to proceed only against the individual officers

regarding her state law negligence and intentional tort claims, and is not proceeding against the City of McAllen under the TTCA.

## CLAIMS AGAINST THE CORPORATE DEFENDANTS

***(Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)***

*The following causes of action are asserted specifically against Defendants Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc., and do not apply to the City of McAllen or its officers.*

### CLAIM TEN – NEGLIGENCE (COMMON CARRIER / RESPONDEAT SUPERIOR)

***(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)***

153. Plaintiff realleges all preceding paragraphs applicable to the corporate defendants.

154. Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc. operate as common carriers in Texas. As such, they owe passengers – including disabled passengers – a heightened duty of care, requiring the exercise of the high degree of care that a very cautious, competent, and prudent carrier would use under the same or similar circumstances.

155. Plaintiff was a ticketed passenger entitled to the use of the disability-accessible seating she purchased and required.

156. The bus driver, acting within the course and scope of employment, breached the heightened duty owed to Plaintiff by, among other acts and omissions:

a. Allowing the disability-accessible seating area to be obstructed with luggage;

b. Failing and refusing to clear that seating area upon Plaintiff's request;

c. Denying Plaintiff the accessible accommodation she paid for and medically required;

d. Escalating a routine, non-criminal seating issue into a hostile confrontation rather than resolving it through ordinary customer-service measures;

f. Attempting to force Plaintiff to relocate to the back of the bus despite her disability-related limitations; and,

g. Summoning multiple armed police officers to forcibly remove Plaintiff from the bus for a dispute the driver created and could have resolved without law-enforcement involvement.

157. These acts and omissions constituted clear deviations from the heightened standard of care imposed on common carriers and exposed Plaintiff to an unreasonable and foreseeable risk of physical injury, humiliation, and emotional harm.

158. The driver's conduct was a substantial factor in causing Plaintiff's injuries, and the resulting harm was a foreseeable consequence of escalating a minor accommodation dispute into a police confrontation involving a very disabled passenger. The involvement of law enforcement was a foreseeable result of the driver's actions and did not constitute a superseding or intervening cause sufficient to break the chain of causation.

159. Defendants Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc. are liable under the doctrine of respondeat superior for all damages proximately caused by the negligent acts and omissions of their employee.

**<u>CLAIM ELEVEN – NEGLIGENCE PER SE</u>**
**(Violations of ADA Regulations and Texas Human Rights Code Chapter 121)**
***(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)***

160. Plaintiff realleges and incorporates all preceding/applicable paragraphs.

161. Defendants, through their employee acting within the course and scope of employment, violated statutes and regulations that impose specific duties designed to protect disabled passengers, including:

   a. Federal ADA transportation regulations**,** including 49 C.F.R. Parts 37 and 38, which require common carriers to maintain disability-accessible seating, prohibit obstructing such seating with luggage, mandate reasonable accommodations for disabled passengers, and prohibit removal or exclusion of passengers based on disability-related needs; and

   b. Texas Human Resources Code Chapter 121, which guarantees persons with disabilities the same right as others to full use and enjoyment of public transportation services, including buses operated by common carriers.

162. These statutes and regulations were enacted specifically to protect individuals with disabilities from the precise types of harm Plaintiff suffered, including denial of access to required accommodations, humiliation, physical injury, and wrongful removal from transportation services.

163. Plaintiff is a member of the protected class of persons these statutes and regulations were designed to protect, and Defendants' statutory and regulatory violations were a proximate cause of Plaintiff's injuries and damages.

164. Defendants' violations of these statutory and regulatory duties constitute negligence per se under Texas law, independent of any separate statutory remedies available under the ADA or Texas Human Resources Code.

**<u>CLAIM TWELVE – DIRECT NEGLIGENCE AND GROSS NEGLIGENCE</u>**
***(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)***

165. Plaintiff realleges and incorporates all preceding/applicable paragraphs.

166. Defendants Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc. owed Plaintiff a direct duty to exercise reasonable care in the operation of their transportation services, consistent with their heightened obligations as common carriers and their statutory duties under disability-access, including duties to:

a. Properly train drivers in ADA compliance and accessible seating requirements;
b. Train drivers to de-escalate and manage routine passenger-service issues without resorting to confrontation or removal;
c. Implement and enforce effective ADA-compliant policies and procedures;
d. Ensure drivers understand and comply with disability-accommodation obligations; and,
e. Enforce baggage and seating rules to prevent obstruction of disability-accessible seating.

167. Defendants breached these duties by failing to ensure that their driver was adequately trained and prepared to comply with ADA requirements, de-escalate a routine seating issue, or manage the situation without creating an unreasonable risk

of harm to a disabled passenger.

168. Defendants further breached their duties by maintaining and enforcing policies, practices, or procedures that permitted or failed to prevent disability-accessible seating from being obstructed and allowed routine accommodation issues to escalate into passenger removal rather than being resolved through ordinary customer-service measures.

169. Defendants' acts and omissions created an extreme degree of risk of serious harm to disabled passengers, including Plaintiff, and Defendants proceeded with conscious indifference to that risk by failing to implement basic and readily available safeguards ensuring ADA-compliant seating, reasonable accommodation, and de-escalation during non-criminal passenger disputes.

170. As a direct and proximate result of Defendants' negligence and gross negligence, Plaintiff suffered physical injury, emotional distress, humiliation, and aggravation of her preexisting disabilities.

171. Defendants' conduct supports the imposition of exemplary damages to punish and deter conscious disregard for the safety and rights of disabled passengers.

## CLAIM THIRTEEN – WRONGFUL EJECTION BY A COMMON CARRIER
***(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)***

172. Plaintiff realleges and incorporates all preceding/applicable paragraphs.

173. Texas common law recognizes a cause of action for wrongful ejection by a common carrier. A passenger is wrongfully ejected when removed from a carrier without lawful or reasonable justification.

174. Plaintiff was a ticketed passenger entitled to transportation and lawfully occupying the disability-accessible seat she purchased and was medically entitled to use.

175. Plaintiff had committed no misconduct, posed no safety threat, and violated no rule or policy that would justify removal from the bus.

176. Despite the absence of any lawful basis for removal, the driver, acting within the course and scope of employment, procured and caused Plaintiff's removal by summoning law enforcement to forcibly eject her for insisting on the disability-accessible accommodation she was entitled to receive.

177. The use of law enforcement to effect Plaintiff's removal does not supply lawful justification and does not break the chain of causation where, as here, the carrier initiated, directed, or procured the removal.

178. The corporate defendants are liable for all damages proximately caused by Plaintiff's wrongful ejection, including physical injury, emotional distress, humiliation, and consequential losses.

**<u>CLAIM FOURTEEN – BREACH OF CONTRACT</u>**

***(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)***

179. Plaintiff realleges and incorporates all preceding/applicable paragraphs.

180. Plaintiff purchased a disability-accessible ticket from Defendants for interstate bus transportation, forming a valid and enforceable contract supported by consideration.

181. Under the terms of the contract, including representations made at the time of purchase and Defendants' published policies governing accessible transportation,

Plaintiff was contractually entitled to:

a. A disability-accessible, ADA-compliant seat; and,

b. Safe, non-discriminatory transportation from McAllen to Houston.

182. Defendants breached the contract by:

a. Failing to provide the disability-accessible seat Plaintiff purchased and required; and,

b. Ejecting Plaintiff from the bus before completing the contracted transportation.

183. Defendants' breach deprived Plaintiff of the essential benefit of the bargain and foreseeably resulted in physical injury, emotional distress, humiliation, and out-of-pocket losses.

184. Because the contract involved a common carrier providing transportation services to a disabled passenger, Defendants knew or should have known at the time of contracting that failure to provide accessible seating or completion of transport would likely expose Plaintiff to physical harm, emotional distress, and indignity.

185. Plaintiff is entitled to recover all damages naturally proximately flowing from Defendants' breach, including consequential damages resulting from the failure to provide accessible transportation and the wrongful termination of the transportation contract.

## CLAIM FIFTEEN – VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA)
***(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)***

186. Plaintiff realleges and incorporates all preceding/applicable paragraphs.

187. Plaintiff is a "consumer" under the *Texas Deceptive Trade Practices Act* because she purchased transportation services from Defendants.

188. Defendants engaged in false, misleading, or deceptive acts or practices in the conduct of trade or commerce, including but not limited to:

   a. **Misrepresentation (Tex. Bus. & Com. Code § 17.46(b)).** Defendants represented, at the time of sale and through their accessible-ticketing system and related policies, that Plaintiff's purchased ticket included a disability-accessible seating accommodation. This representation was false, misleading, or deceptive because Defendants failed to provide the accessible seating promised and instead subjected Plaintiff to removal from the bus when she attempted to access that accommodation.

   b. **Unconscionable Course of Action (§ 17.50(a)(3)).** Defendants took advantage of Plaintiff's known disability, limited mobility, and reliance on accessible transportation by selling her a disability-accessible ticket and then denying her the benefit of that purchase, escalating a routine seating issue, and subjecting her to public humiliation and physical injury. This conduct constituted a grossly unfair course of action to a disabled consumer.

189. Defendants' acts and omissions were a producing cause of Plaintiff's damages, including physical injury, emotional distress, humiliation, and economic losses.

190. Defendants acted knowingly, in that they were aware of the nature of the services sold, the accessibility representations made to disabled passengers, and the foreseeable consequences of denying accessible seating to a passenger with obvious mobility limitations.

191. Plaintiff is therefore entitled to all relief available under the DTPA, including economic damages, damages for mental anguish, and treble damages as permitted by law. Plaintiff did not provide pre-suit notice under *Tex. Bus. & Com. Code § 17.505* because compliance was impracticable under the circumstances. Plaintiff was forcibly removed from the bus, injured, and left without assistance, and Defendants' conduct necessitated immediate legal action to protect Plaintiff's rights. In the event the Court determines that pre-suit notice is required, Plaintiff requests abatement of this claim rather than dismissal, as expressly authorized by statute.

**CLAIM SIXTEEN – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)**
***(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)***

192. Plaintiff realleges and incorporates all preceding/applicable paragraphs.

193. The driver's conduct – including exhibiting hostility toward a visibly disabled passenger, attempting to force Plaintiff from the disability-accessible seating she purchased and medically required, and summoning law enforcement to remove her for insisting on that accommodation – constituted extreme and outrageous conduct that exceeded all bounds of decency tolerated in a civilized society.

194. This conduct was directed at a particularly vulnerable individual – a disabled passenger with limited mobility – whom Defendants knew or should have known would be especially susceptible to emotional harm from intimidation, humiliation, and public removal.

195. As a direct and proximate result of this conduct, Plaintiff suffered severe emotional distress, including profound humiliation, fear, anxiety, and lasting psychological harm that extended beyond mere transient upset or embarrassment.

196. Plaintiff pleads this claim in the alternative and solely to the extent that the severe emotional injuries inflicted by Defendants' conduct are not fully remedied by Plaintiff's other causes of action. Where Defendants' conduct falls outside the scope of traditional tort or statutory remedies, IIED remains available as a narrow gap-filler to address the extreme emotional harm inflicted.

## CLAIM SEVENTEEN – DEFAMATION, DEFAMATION PER SE, AND FALSE REPORT

***(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)***

197. Plaintiff realleges and incorporates all preceding/applicable paragraphs.

198. The bus driver knowingly made false and misleading statements to McAllen police officers concerning Plaintiff's conduct, falsely portraying her as disruptive, noncompliant, or engaged in behavior warranting law-enforcement intervention, when in fact Plaintiff had committed no misconduct, violated no rule or policy, and posed no safety threat.

199. These false statements constituted assertions of fact, not opinion, and were material in that they falsely implied that Plaintiff had engaged in disorderly or wrongful conduct justifying police involvement and removal.

200. The false statements were made for the purpose of inducing police action against Plaintiff, and it was foreseeable that officers would rely on those statements in deciding to remove her from the bus.

201. As a direct and proximate result of the driver's false statements, Plaintiff was treated as a criminal suspect, forcibly removed from the bus, and subjected to physical injury, humiliation, and emotional distress.

202. False statements that impute criminal, disorderly, or wrongful conduct constitute defamation per se under Texas law.

203. Although reports to law enforcement may be subject to a conditional privilege, that privilege does not apply where, as here, the statements were knowingly false or made with reckless disregard for the truth.

204. Texas law further recognizes civil liability for knowingly making or initiating a false police report where foreseeable harm results, including unlawful detention, use of force, or physical injury.

205. The bus driver acted within the course and scope of employment, and the corporate defendants are vicariously liable for all damages proximately caused by the driver's false statements and initiation of police action against Plaintiff.

## <u>CLAIM EIGHTEEN – VIOLATIONS OF THE TEXAS HUMAN RIGHTS CODE (CHAPTER 121)</u>

***(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)***

206. Plaintiff realleges and incorporates all preceding/applicable paragraphs.

207. Texas Human Resources Code § 121.003 guarantees persons with disabilities the same right as others to the full use and enjoyment of public transportation services, including buses and other common carriers.

208. Plaintiff is a person with a disability within the meaning of Chapter 121 and was entitled to equal access to Defendants' transportation services and accommodations.

209. Defendants violated Chapter 121 by, among other things:

- Denying Plaintiff access to the disability-accessible seating she purchased and required;
- Allowing the accessible seating area to be obstructed with luggage;
- Refusing to provide reasonable accommodation for Plaintiff's disability-related needs; and,
- Ejecting Plaintiff from the bus because of those disability-related needs.

210. As a direct result of Defendants' violations of Chapter 121, Plaintiff suffered humiliation, physical injury, emotional distress, and denial of her statutory right to equal access to public transportation.

211. Chapter 121 provides for statutory damages of not less than $300, in addition to actual damages and other relief authorized by law, all of which Plaintiff seeks.

**CLAIM NINETEEN – REHABILITATION ACT OF 1973 (29 U.S.C. § 794)**
***(Against Greyhound Lines, Inc. and Flix Entities Receiving Federal Funds)***

212. Plaintiff realleges and incorporates all preceding/applicable paragraphs.

213. Upon information and belief, Greyhound Lines, Inc., and one or more Flix-affiliated entities involved in the operation of the bus service at issue receive federal financial assistance, directly or indirectly, including through programs administered by the Federal Transit Administration and other federal transportation funding mechanisms, and are therefore subject to § 504 of the Rehabilitation Act.

214. Plaintiff is a qualified individual with a disability within the meaning of the Rehabilitation Act.

215. Defendants denied Plaintiff the benefits of, and excluded her from participation in, federally funded transportation services by denying her access to disability-accessible seating, refusing reasonable accommodation, and ejecting her from the bus.

216. Defendants' discriminatory conduct occurred solely by reason of Plaintiff's disability.

217. Defendants acted with deliberate indifference to Plaintiff's federally protected rights by failing to provide accessible seating and reasonable accommodation despite obvious notice of Plaintiff's disability and mobility limitations.

218. As a direct and proximate result of Defendants' violations of § 504, Plaintiff suffered physical injury, emotional distress, humiliation, and denial of equal access to federally funded transportation services.

219. Compensatory damages and all other relief authorized by law are available for Defendants' intentional discrimination under the Rehabilitation Act, all of which Plaintiff seeks.

**CLAIM TWENTY – INJUNCTIVE RELIEF UNDER TITLE III OF THE ADA**
***(Against Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.)***

220. Plaintiff realleges and incorporates all preceding/applicable paragraphs.

221. Defendants Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc. are private entities that own, lease, operate, and control places of public accommodation within the meaning of Title III of the ADA, including intercity bus transportation services open to the public.

222. Defendants discriminated against Plaintiff on the basis of disability by, among other things:

a. Failing to keep disability-accessible seating unobstructed;

b. Failing to provide reasonable modifications to policies and practices; failing to adequately train employees in ADA compliance and de-escalation; and,

c. Engaging in policies and practices that subject disabled passengers to denial of access and heightened risk of harm.

223. Prior to the incident giving rise to this action, Plaintiff regularly and routinely utilized intercity bus transportation services, including Defendants' services, for interstate travel and reasonably expects to do so again in the ordinary course of her life.

224. Plaintiff would continue to utilize Defendants' transportation services but for Defendants' ongoing ADA-noncompliant policies and practices, including the failure to ensure that disability-accessible seating sold to passengers is actually available and the practice of escalating routine accommodation requests into passenger removal.

225. As a result of Defendants' continuing conduct, Plaintiff is presently deterred from using Defendants' services and faces a real and immediate threat of repeated discrimination absent injunctive relief.

## VI. DAMAGES

226. Plaintiff realleges and incorporates all preceding/applicable paragraphs.

227. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer significant compensable damages, including but not limited to:

### *A. Physical Pain, Suffering, and Bodily Injury*

228. Plaintiff endured immediate and ongoing physical pain, including ankle, knee, lumbar, cervical, and soft-tissue injuries, all of which were aggravated by Defendants' conduct. These injuries continue to impair her mobility and quality of life. Plaintiff's injuries and treatment are documented in contemporaneous medical records and treating-provider evaluations.

B. *Emotional Distress, Mental Anguish, and Psychological Harm*

229. Plaintiff suffered humiliation, indignity, anxiety, fear, and mental anguish as a result of being discriminated against, injured, wrongfully ejected, and abandoned by those she depended upon for safe passage. These harms are compensable under § 1983, applicable disability statutes where intentional discrimination is shown, and Texas law.

230. These events have caused heightened anxiety, fear, hypervigilance, and a decline in Plaintiff's emotional well-being, including a formal diagnosis of Generalized Anxiety Disorder attributable to this incident.

C. *Aggravation of Pre-Existing Conditions and Physical Impairment*

231. Defendants' actions exacerbated Plaintiff's permanent disability and underlying degenerative conditions, resulting in worsened mobility limitations, increased pain, and long-term functional impairment.

D. *Economic Damages and Out-of-Pocket Losses*

232. Plaintiff suffered economic damages including, but not limited to:

- The cost of the unused transportation;
- Replacement travel expenses;
- Out-of-pocket costs incurred as a result of the wrongful ejection;
- Consequential damages flowing naturally from Defendants' breach of contract; and,
- Costs incurred to obtain medical care, records, transportation, and

alternative accommodations.

These amounts are recoverable under Texas contract law, the DTPA, negligence theories, and common carrier doctrines.

*E. Medical Expenses (Past and Future)*

233. Plaintiff incurred medical expenses for emergency treatment, imaging, orthopedic care, chiropractic treatment, pain management, and follow-up medical evaluation. Future medical expenses are reasonably certain due to the lasting nature of her injuries.

*F. Physical Impairment and Loss of Enjoyment of Life*

234. Plaintiff's ability to engage in everyday activities and enjoy her life fully has been significantly reduced and diminished as a result of Defendants' conduct.

*G. Damages for Constitutional and Civil Rights Violations*

235. Plaintiff is entitled to recover compensatory damages for violations of her rights under the Fourth and Fourteenth Amendments, including damages for indignity, loss of liberty, emotional harm, and personal injuries resulting from unconstitutional police conduct.

236. Plaintiff is further entitled to damages under 42 U.S.C. § 1983, including damages associated with discriminatory treatment and unlawful use of force.

*H. ADA and Rehabilitation Act Damages*

237. Plaintiff is entitled to compensatory damages under the Americans with Disabilities Act

(Title II) and Section 504 of the Rehabilitation Act for intentional discrimination and deliberate indifference to her federally protected rights.

*I. <u>Statutory Damages Under Texas human Rights Code 121</u>*

238. Plaintiff is entitled to the statutory minimum of $300 under Tex. Hum. Res. Code § 121.004, plus all actual damages for disability-based discrimination.

*J. <u>DTPA Damages (Economic + Mental Anguish + Treble Damages)</u>*

239. Because Defendants' acts were knowing, Plaintiff is entitled to:

- Economic damages;
- Damages for mental anguish; and,
- Up to three times (treble) economic damages under Tex. Bus. & Com. Code § 17.50(b)(1).

*K. <u>Punitive and Exemplary Damages</u>*

240. Punitive damages are recoverable against:

- the individual officer defendants for constitutional violations; and,
- the corporate defendants (Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.) for gross negligence, intentional torts, malicious conduct, defamation, knowing DTPA violations, and outrageous conduct meeting the IIED standard.

241. Such damages are warranted to punish deliberate misconduct and deter future violations.

242. Plaintiff does not seek punitive or exemplary damages against the City of McAllen

or any defendant sued in an official capacity.

*L. Attorney's Fees, Costs, and Litigation Expenses*

243. Plaintiff is entitled to recover all reasonable attorney's fees, costs, and litigation expenses under:

- 42 U.S.C. § 1988;
- the ADA;
- the Rehabilitation Act;
- the DTPA; and
- Chapter 121 of the Texas Human Rights Code.

*M. Pre- and Post-Judgment Interest*

244. Plaintiff seeks all appropriate pre-judgment and post-judgment interest as allowed by law.

*N. Injunctive and Equitable Relief*

245. Plaintiff seeks appropriate injunctive relief against the corporate defendants only, including but not limited to orders requiring Flix/Greyhound to:

a. Enforce baggage and seating policies ensuring accessible seating remains unobstructed;

b. Implement ADA-compliant accessible seating verification systems;

c. Require ADA, de-escalation, and disability-sensitivity training for all drivers and staff;

d. Adopt policies preventing wrongful ejection or escalation against disabled passengers; and,

e. Comply with all applicable federal and state disability laws.

*O. Any Other Relief*

246. Plaintiff seeks all other relief – legal, equitable, general, special, or statutory – to which she is justly entitled under federal or Texas law.

## VII. PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Normalinda Contreras respectfully requests that Defendants be cited to appear and answer herein, and that upon final trial or other disposition, the Court enter judgment in Plaintiff's favor and award the following relief:

1. **Compensatory damages** for all physical pain and suffering, mental anguish, emotional distress, physical impairment, loss of enjoyment of life, and all general and special damages recoverable under federal and Texas law.
2. **Economic Damages** including the cost of the unused transportation, replacement travel expenses, consequential damages arising from breach of contract, and all out-of-pocket losses proximately caused by Defendants.
3. **Medical Expenses** for all past and future medical expenses reasonably incurred due to the injuries caused by Defendants.
4. **Constitutional Damages (§ 1983)** for violations of Plaintiff's Fourth Amendment rights and related constitutional protections, including unlawful

seizure, excessive force, and disability-based discrimination.

5. **Compensatory damages under the Americans with Disabilities Act (Title II)** and **Section 504 of the Rehabilitation Act** for intentional discrimination and deliberate indifference resulting in denial of equal access to nondiscriminatory law enforcement services and transportation, as authorized under Title II of the ADA and § 504 of the Rehabilitation Act.

6. **Statutory Damages Under Texas Human Rights Code Chapter 121** Including the statutory minimum of $300, plus all actual damages authorized by law.

7. **DTPA Damages** – All economic damages, damages for mental anguish, and up to three times (treble) economic damages for Defendants' knowing violations of the DTPA.

8. **Punitive and Exemplary Damages a**gainst:

   - the **individual officer defendants** for their reckless, malicious, and deliberately indifferent violations of Plaintiff's constitutional rights; and
   - the **corporate defendants** (Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc.) for gross negligence, intentional torts, knowing DTPA violations, and outrageous conduct meeting the standard for exemplary damages.

   (***Punitive damages are not sought against the City of McAllen.***)

9. **Declaratory Relief** Declaratory relief declaring Defendants' conduct unlawful as alleged herein.

10. **Injunctive Relief i**ncluding, but not limited to, orders requiring Flix North America Inc., FlixBus, Inc., and Greyhound Lines, Inc. to:
    - enforce luggage and seating policies ensuring accessible seats remain unobstructed;
    - implement ADA-compliant systems to guarantee accessible seating that is sold;
    - mandate ADA, disability-sensitivity, and de-escalation training for all drivers and staff
    - revise policies to prevent wrongful ejection of disabled passengers; and,
    - comply fully with Title III of the ADA and applicable federal and state disability laws. Plaintiff does not seek injunctive relief against the City of McAllen or the individual officer defendants.
11. **Attorney's Fees and Costs a**s allowed under 42 U.S.C. § 1988, the ADA, the Rehabilitation Act, the DTPA, the Texas Human Rights Code, and all other applicable statutes.
12. **Pre-Judgment and Post-Judgment Interest** at the highest rates allowed by law.
13. **Costs of Court**
14. Any additional Relief and all further relief – legal, equitable, statutory, or otherwise – to which Plaintiff may be justly entitled.

## VIII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable under the United States Constitution and federal law. Plaintiff respectfully invokes her right to have the facts of this case determined by a jury of her peers.

01/27/2025 Respectfully Submitted,

*/s/Courtney A. Vincent*
**Courtney A. Vincent**
Minnesota Bar No. 0403083
Admitted: **U.S. District Court, Southern District of Texas**
SDTX Bar No. 3746531
**info@vincentlawpllc.com**
VINCENT LAW, PLLC
1035 Dairy Ashford, Suite 145
Houston, Texas 77079
**Mailing Address:**
P.O. Box 940129
Houston, Texas 77094
Tel: (713)223-9300
Fax: (832)603-4444
**COUNSEL FOR PLAINTIFF**

*/s/ Benjamin S. Campagna*
**Benjamin S. Campagna**
Texas Bar No. 24078302
SDTX Bar No. 3822709
Attorney, Of Counsel
TX Attorney Group, PLLC
**ben@txattorneygroup.com**
Main Number: 832-286-0800
Direct Line: 832-286-0804
Fax Number: 281-612-3006
**COUNSEL FOR PLAINTIFF**

*/S/ DAVID A. BLEAKNEY JR.*
**David A. Bleakney, Jr.**
Texas Bar No. 24103798
Federal ID No. 3749624
Attorney, TX Attorney Group, PLLC
**david@txattorneygroup.com**
Main Number: 832-286-0800
Direct Line: 832-286-0804
Fax Number: 281-612-3006
**COUNSEL FOR PLAINTIFF**