**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**McALLEN DIVISION**

| | |
|---|---|
| **NORMALINDA CONTRERAS, Plaintiff,**<br><br>**v.**<br><br>**CITY OF McALLEN; CHIEF OF POLICE VICTOR RODRIGUEZ; SERGEANT JAVIER CAVAZOS (#6482); OFFICER PEREZ (#7568); OFFICER ZAPATA (#4457); OFFICER RODRIGUEZ (#8325); OFFICER O. PUENTE (#14878); OFFICER DELGADO (#8279); OFFICER CASTRO (#14602); FLIX NORTH AMERICA, INC.; FLIX BUS, INC.; GREYHOUND LINES, INC., Defendants.** | **CIVIL ACTION NO. 7:25-cv-00541** |

**RULE 12(B)(6) MOTION TO DISMISS**

NOW INTO COURT, through undersigned counsel, come Defendants, Greyhound Lines, Inc., Flix North America, Inc. and FlixBus, Inc. (collectively "Greyhound"), and move this Court to dismiss Plaintiff Normalinda Contreras's First Amended Complaint against them on the grounds that Plaintiff has failed to state a claim upon which relief can be granted as to any of the causes of action against Greyhound.

WHEREFORE, Greyhound Lines, Inc., Flix North America, Inc. and FlixBus, Inc. pray that this Honorable Court grant their motion dismiss to dismiss all claims asserted by Plaintiff Normalinda Contreras against them in her First Amended Complaint with prejudice.

[*Signature block on next page*]

Respectfully submitted,

*/s/ Doris T. Bobadilla*

DORIS T. BOBADILLA
**Attorney-in-Charge**
Texas Bar No. 24075695
ANDREW S. KRONE
Federal ID No. 2590236
Texas Bar No. 24086872
**GALLOWAY, JOHNSON, TOMPKINS BURR & SMITH**
1301 McKinney Street, Suite 1400
Houston, Texas 77010
Telephone: (713) 599-0700
Facsimile: (713) 599-0777
Email: DBobadilla@gallowaylawfirm.com
Email: AKrone@gallowaylawfirm.com
***Attorneys for Greyhound Lines, Inc., Flix North America, Inc. and Flix Bus, Inc.***

**NOTICE OF ELECTRONIC FILING**

I certify that I have electronically submitted for filing, a true and correct copy of the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, on the 9th day of February, 2026, using the CM/ECF System.

*/s/ Doris T. Bobadilla*
DORIS T. BOBADILLA

**Table of Authorities**

Page(s)

**Cases**

*Armstead v. Escobedo*,
488 F.2d 509 (5th Cir. 1974) .......... 8, 12
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5, 7, 9
*Aston Customs Homes & Design, Inc. v. Wilmington Sav. Fund Soc'y FSB*,
No. 3:22-CV-2505-X-BN, 2023 WL 3010527 (N.D. Tex. Mar. 23, 2023) .......... 12
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5, 7, 11, 13
*Bill Wyly Development, Inc. v. Smith*,
680 S.W.3d 679 (Tex. App. 2023) .......... 14
*Brookshire Bros., Ltd. v. Aldridge*,
438 S.W.3d 9 (Tex. 2014) .......... 8
*Bryan v. City of Dallas*,
188 F.Supp.3d 611 (N.D. Tex. 2016) .......... 10
*Carter v. William Sommerville & Son, Inc.*,
584 S.W.2d 274 (Tex. 1979) .......... 9, 10
*City of Dallas v. Sanchez*,
494 S.W.3d 722 (Tex. 2016) .......... 9
*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 16
*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) .......... 5, 6
*Doe v. Boys Clubs of Greater Dallas, Inc.*,
907 S.W.2d 472 (Tex. 1995) .......... 7, 8, 9
*EEOC v. Chevron Phillips Chem. Co.*,
570 F.3d 606 (5th Cir. 2009) .......... 15
*Endeavor Energy Res., L.P. v. Cuevas*,
593 S.W.3d 307 (Tex. 2019) .......... 10
*Estate of Lee v. Continental Trailways*,
564 S.W.2d 392 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.) .......... 11
*Hale v. King*,
642 F.3d 492 (5th Cir. 2011) .......... 15
*Hines v. Hash*,
843 S.W.2d 464 (Tex. 1992) .......... 13
*Hoffmann-La Roche Inc. v. Zeltwanger*,
144 S.W.3d 438 (Tex. 2004) .......... 14
*IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*,
143 S.W.3d 794 (Tex. 2004) .......... 7, 9
*Kamps v. Baylor Univ.*,
592 F. App'x 282 (5th Cir. 2014) .......... 6

*Perry v. S.N.*,
973 S.W.2d 301 (Tex. 1998) ....................................................................................... 9
*Stevenson v. Toce*,
113 F.4th 494 (5th Cir. 2024) ....................................................................................... 6
*VIA Metro. Transit v. Meck*,
620 S.W.3d 356 (Tex. 2020) ....................................................................................... 8
*Walgreens v. McKenzie*,
713 S.W.3d 394 (Tex. 2025) ....................................................................................... 10
*Walker v. Beaumont Indep. School District*,
938 F.3d 724 (5th Cir. 2019) ....................................................................................... 6
*Wal-Mart Stores, Inc. v. Rodriguez*,
92 S.W.3d 502 (Tex. 2002) ....................................................................................... 12
*Werner Enters., Inc. v. Blake*,
719 S.W.3d 525 (Tex. 2025) ....................................................................................... 9

**Statutes**

29 U.S.C. § 705(20)(B) ....................................................................................... 15
42 U.S.C. § 12102(1) ....................................................................................... 15
Tex. Bus. & Com. Code § 17.505(a) ....................................................................................... 13
Tex. Civ. Prac. & Rem. Code § 16.002(a) ....................................................................................... 14
Tex. Civ. Prac. & Rem. Code § 41.001(11) ....................................................................................... 11
Tex. Lab. Code § 21.002(6) ....................................................................................... 15

**Rules**

F.R.C.P. Rule 12(b)(6) ....................................................................................... 1, 5, 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**McALLEN DIVISION**

| | |
|---|---|
| **NORMALINDA CONTRERAS,**<br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF McALLEN; CHIEF OF POLICE VICTOR RODRIGUEZ; SERGEANT JAVIER CAVAZOS (6482); OFFICER PEREZ (7568); OFFICER ZAPATA (4457); OFFICER RODRIGUEZ (8325); OFFICER O. PUENTE (14878); OFFICER DELGADO (8279); OFFICER CASTRO (14602); FLIX NORTH AMERICA, INC.; FLIX BUS, INC.; GREYHOUND LINES, INC.,**<br>**Defendants.** | **CIVIL ACTION NO. 7:25-cv-00541** |

**MEMORANDUM IN SUPPORT OF F.R.C.P. RULE 12(B)(6) MOTION TO DISMISS**

Defendants, Greyhound Lines, Inc., Flix North America, Inc. and FlixBus, Inc. (collectively "Greyhound" or the "Greyhound Defendants"), file this Memorandum in Support of their F.R.C.P. Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint ("FAC").

## I. INTRODUCTION

This case arises from a routine seating dispute on a commercial bus that escalated into a police-directed removal of a passenger. Plaintiff attempts to transform that encounter into a sweeping action for disability discrimination, negligence, and vicarious liability for alleged police misconduct. The well-pleaded facts—and the single document on which Plaintiff's claims depend—foreclose that effort.

Plaintiff's theory rests on her oft-repeated allegation that she purchased a "handicapped-

accessible ticket" entitling her to occupy designated disability seating. The boarding pass, which is integral to the FAC (Exhibit A), establishes the opposite—Plaintiff purchased a standard Adult ticket for Seat 4B.

Plaintiff's alleged injuries occurred only after McAllen police officers arrived, assumed command authority, ordered Plaintiff removed, and independently decided how to execute that removal. Texas law is clear: the independent, discretionary actions of law enforcement constitute a superseding cause that breaks the chain of causation. Conclusory allegations that Greyhound "procured" Plaintiff's removal cannot overcome Plaintiff's own allegations establishing that police controlled the encounter.

Apart from the broad pleading deficiencies, multiple claims fail on independent legal grounds.

- Plaintiff's negligence per se claim relies on accessibility statutes that are not safety standards.
- Her IIED claim is barred by Texas's gap-filler doctrine.
- Her defamation-based claims are time-barred.
- Her DTPA claim fails for lack of mandatory pre-suit notice.
- Her disability-based statutory claims fail because the FAC alleges only a label—"permanently disabled"—without facts plausibly establishing a qualifying impairment.
- Finally, Plaintiff's reliance on a 2025 DOJ inquiry to establish notice or foreseeability of a 2023 incident is legally untenable. An investigation announced years later cannot retroactively establish what Greyhound knew or should have known at the time.

For these reasons, the FAC fails to state any plausible claim for relief against the

Greyhound Defendants and should be dismissed with prejudice.

## II. STATEMENT OF FACTS

On November 24, 2023, Plaintiff was a passenger on a Greyhound bus traveling from McAllen to Houston, Texas. R. Doc. 13, ¶ 1. Plaintiff alleges she is "permanently disabled" and routinely purchased "handicapped-accessible tickets." *Id.* at ¶¶ 29, 31. Her repeated and central claim that she purchased a "handicapped-accessible ticket" is contradicted by her boarding pass. See, e.g., *Id.* ¶¶ 1, 2, 30, 31, 76, 88, 155, 174, 180. Exhibit A—the boarding pass for the subject trip—identifies Plaintiff's fare as "Adult" and her assigned seat as 4B. It contains no designation for accessible, priority, or guaranteed disability seating.


Greyhound
BOOKING NUMBER
312 273 7509
BOARDING PASS
Valid in both print and digital form
Friday, Nov 24, 2023
03:30 PM Mcallen Bus Station
1501 US-83 Bus, 78501 Mcallen
Operated by Valley Transit
Bus US1126 Valley Transit
Direction Houston Bus Station (Greyhound)
11:00 PM Houston Bus Station (Greyhound)
7000 Harrisburg Blvd, 77011 Houston
The same QR code is used for your entire journey
Adult
Normalinda Contrerras
Seat
4B
1 × Carry-on bag(s)
25 lbs· 16.5×12×7 in
1 × Stored bag(s)
50 lbs · 31.5×20×12 in

Upon boarding, Plaintiff observed luggage placed in the "disability seating at the front of the bus." R. Doc. 13, ¶ 32. When she moved one of the bags to occupy that seating, a dispute ensued between Plaintiff and the bus operator. *Id.* at ¶¶ 32-33. The operator instructed Plaintiff to move and, when the dispute persisted, requested assistance from the McAllen Police Department. *Id.* at ¶¶ 34, 36.

**The police responded and Sgt. Cavazos, who "exercised command authority over the encounter,"** ***not the bus operator*****, "ordered Plaintiff removed from the bus."** *Id.* at ¶¶ 42-

43, 56 and 89. The alleged injuries occurred during this police-directed removal. *Id.* at ¶¶ 50-52. Plaintiff's theory against Greyhound rests on the legally flawed premise that the operator's request for police assistance foreseeably led to the officers' use of force. *Id.* at ¶¶ 81, 158.

Plaintiff asserts that the operator made "false and misleading statements" to the police (allegedly portraying Plaintiff as disruptive or noncompliant), but she fails to identify the substance of those statements or explain why they were false. *Id.* at ¶ 198. Such conclusory allegations do not satisfy the pleading standards of Rule 8. Moreover, Exhibit A shows that she was not "entitled" to the seat she sought to occupy.

Taking Plaintiff's allegations as true—except where they are directly and irrefutably contradicted by her boarding pass and her own claims—her Complaint fails to state a claim upon which relief can be granted as to Greyhound.

## III. SUMMARY OF ARGUMENT

Greyhound is entitled to dismissal of all claims because Plaintiff's First Amended Complaint suffers from several fundamental flaws:

**1. The Boarding Pass Disproves Plaintiff's Core Narrative**

The boarding pass, Exhibit A—which is integral to her claims—conclusively establishes that Plaintiff purchased a standard Adult seat (Seat 4B), not a guaranteed accessible seat. Because Plaintiff had no right to occupy the seating at issue, the driver/operator's request that she move and his call for police assistance were lawful and neither discriminatory nor negligent. Her seating assignment likewise forecloses her claims for wrongful ejection, breach of contract, and deceptive trade practices.

**2. Independent Police Action Is a Superseding Cause**

Plaintiff alleges that law enforcement—not Greyhound—ordered and executed her

removal. Under Texas law, the independent discretionary actions of police break the chain of causation as a matter of law.

**3. A 2025 DOJ Inquiry Cannot Establish Notice in 2023**

Plaintiff's reliance on a post-incident DOJ inquiry to establish notice or foreseeability is legally and logically flawed.

**4. Accessibility Statutes Are Not Safety Standards**

Plaintiff's negligence per se claim fails because the ADA, its regulations, DOT regulations, and Texas accessibility statutes that she relies on are anti-discrimination provisions, not safety statutes designed to prevent physical injury caused by third parties.

**5. These Claims Fail on Other Independent Legal Grounds.**

a. Claim 15: Her DTPA claim fails for lack of mandatory pre-suit notice.

b. Claim 16: Her IIED claim is barred by Texas's gap-filler doctrine.

c. Claim 17: Plaintiff's defamation-based claims are time-barred.

d. Claims 18-20: Her disability-based statutory claims fail for lack of sufficient factual allegations.

## IV. ARGUMENT AND AUTHORITIES

### A. Legal Standard

To survive a Rule 12(b)(6) motion, a complaint must plead sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts are not required to accept legal conclusions or allegations contradicted by documents incorporated into the pleadings. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Legal conclusions must be supported by factual allegations; "threadbare recitals" do not suffice. *Iqbal*, 556 U.S. at 663.

## B. Foundational Legal Principles

### 1. The Boarding Pass (Exhibit A) Controls and Refutes the Narrative

In adjudicating a Rule 12(b)(6) motion to dismiss, the court may properly consider documents that are referred to in the complaint and are central to the plaintiff's claims. *Walker v. Beaumont Indep. School District*, 938 F.3d 724, 735 (5th Cir. 2019). By providing the court with such documents, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499.

Plaintiff repeatedly states she purchased a "handicapped-accessible ticket" entitling her to occupy disability seating. Exhibit A refutes that claim. The boarding pass identifies Plaintiff's fare as "Adult" and her assigned seat as 4B, with no indication of accessible or priority seating. When a plaintiff's allegations are contradicted by an exhibit that is central to her claims and incorporated into the pleadings, the exhibit controls. *Id.*; see *Stevenson v. Toce*, 113 F.4th 494, 502–03 (5th Cir. 2024); *Kamps v. Baylor Univ.*, 592 F. App'x 282, 284–85 (5th Cir. 2014). Because the boarding pass controls, all of Plaintiff's claims predicated on her alleged right to accessible seating—including but not limited to Counts 14 (Wrongful Ejection), 15 (Breach of Contract), 19 (Texas Human Rights Code), 20 (Rehabilitation Act), and 21 (ADA)—fail as a matter of law.

Because Plaintiff was not assigned to accessible seating, her admitted act of moving another passenger's luggage to occupy a different seat was unauthorized. The operator's request that she move was a lawful exercise of discretion to maintain order. Against that backdrop, Plaintiff alleges that the operator made "false and misleading statements" to police, allegedly portraying her as disruptive or noncompliant, but she does not plead the substance of any

statement, when it was made, or why it was false. R. Doc. 13 ¶ 198. Such conclusory allegations—unsupported by factual content—do not satisfy Rule 8 as interpreted by *Twombly* and *Iqbal*. Moreover, Exhibit A confirms that Plaintiff was not entitled to the seat she sought to occupy, rendering her accusation implausible on its face.

**2. Independent Police Action is a Superseding Cause**

Plaintiff attempts to impose liability on Greyhound for injuries allegedly inflicted by McAllen police officers. The FAC's own allegations defeat that theory. Plaintiff affirmatively alleges that Sergeant Cavazos exercised command authority and ordered her removal, and that police officers executed that order. R. Doc. 13, ¶¶ 42-43, 89. The FAC does not allege that any Greyhound employee directed, encouraged, or controlled the officers' actions.

Under Texas law, a private party who merely requests police assistance is not liable for injuries resulting from the officers' independent discretionary decisions, as such injuries are too "attenuated" from the initial request to constitute a cause in fact. See *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799–801 (Tex. 2004). Such a request, at most, furnishes the condition for police presence and is not a substantial factor in the subsequent use of force. *Id.* The officers' independent actions break the chain of causation as a matter of law. See *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Having affirmatively pleaded police control of the encounter, Plaintiff cannot resurrect liability through conclusory allegations that Greyhound procured her removal—legal conclusions that contradict her own factual allegations and are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678–79

**3. The 2025 DOJ Inquiry is Irrelevant to 2023 Notice**

Plaintiff relies on a DOJ inquiry announced in 2025 to allege notice and foreseeability for

an incident that occurred in 2023. *Id.* at ¶¶ 74-75; see also R. Doc. 1, ¶¶ 65, 147 (identifying 2025 as the year of the DOJ investigation). Plaintiff's attempt to use the inquiry for notice and foreseeability (as opposed to liability) is misplaced. An investigation initiated in 2025 cannot establish what Greyhound knew or should have known in 2023, because notice and foreseeability are evaluated at the time of the incident, not based on post-event developments. See *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 21 (Tex. 2014).

### C. Claim-by-Claim Analysis

#### *a. Claim Ten: Negligence (Common Carrier / Respondeat Superior)*

The elements of a negligence claim are duty, breach, and damages proximately caused by that breach. *Doe*, 907 S.W.2d at 477. Plaintiff's claim fails because she cannot establish either a breach of duty or proximate cause.

#### 1. Summoning Police Assistance is Not a Breach of Duty

While a common carrier owes a high duty of care, this duty is not absolute. *VIA Metro. Transit v. Meck*, 620 S.W.3d 356, 359 (Tex. 2020). A driver does not breach this duty by summoning law enforcement to resolve a passenger dispute, provided the driver does not direct the officers' subsequent actions. See *Armstead v. Escobedo*, 488 F.2d 509, 510–11 (5th Cir. 1974) (holding a driver was not negligent in summoning police to handle a disruptive passenger). Where, as here, the driver does not direct or control the officers' actions, summoning law enforcement is a proper exercise of the carrier's discretion to maintain order and does not amount to a breach of duty. Having affirmatively pleaded that law enforcement exercised command authority over the encounter, Plaintiff cannot avoid dismissal by recasting that same conduct as Greyhound's "procurement" of her removal. Such labels contradict her own factual

allegations and are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

**2. The Driver's Call was Not the Proximate Cause of Plaintiff's Injuries**

Even if Plaintiff could establish a breach (she cannot), her claim independently fails on proximate cause. To establish proximate cause, a plaintiff must show "cause in fact"—meaning the defendant's conduct was a "substantial factor" in bringing about the injury. See *Doe*, 907 S.W.2d at 477; *Werner Enters., Inc. v. Blake*, 719 S.W.3d 525, 535 (Tex. 2025).

Conduct that merely *furnishes the condition* making an injury possible—such as summoning law enforcement to resolve a dispute—does not satisfy this standard. *IHS Cedars*, 143 S.W.3d at 799. The FAC affirmatively alleges that Sgt. Cavazos exercised command over the encounter, ordered Plaintiff removed, and that Plaintiff's injuries resulted from a police knee strike. R. Doc. 13, ¶¶ 89, 96. Because the driver's call did not dictate the officers' independent tactical decisions or subsequent use of force, those discretionary actions constitute a superseding cause that breaks the causal chain as a matter of law. See *City of Dallas v. Sanchez*, 494 S.W.3d 722, 726-27 (Tex. 2016).

*b. Claim Eleven: Negligence Per Se*

**1. The ADA and THRC Do Not Support a Claim for Negligence Per Se**

In Texas, the threshold for applying negligence per se is whether the statute was designed to prevent the specific type of injury alleged. *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998). The ADA and the Texas Human Rights Code are accessibility and anti-discrimination statutes; they are not safety codes designed to protect individuals from the use of force by law enforcement. See *Carter v. William Sommerville & Son, Inc*., 584 S.W.2d 274, 278 (Tex. 1979). Because the harm alleged—physical injury from a "knee strike"—is not the type of injury these

statutes were designed to prevent, the doctrine of negligence per se is inapplicable as a matter of law.

**2. Plaintiff Fails to Establish She is in the Class of Persons the Statutes Protect**

A plaintiff must also show she belongs to the class of persons the statute was intended to protect. *Id.* Plaintiff offers only a *threadbare recital* of her status—relying on the conclusory label of "permanently disabled" without identifying a specific impairment—she has failed to plead the threshold facts necessary to establish herself as a member of a protected class. Consequently, these statutes cannot serve as a predicate for her negligence per se claim.

*c. Claim Twelve: Direct and Gross Negligence*

Plaintiff alleges Greyhound was directly negligent for failing to properly train and supervise the bus operator. R. Doc. 13, ¶¶ 166. This claim fails as a matter of law.

**1. A Negligent Training Claim Requires an Underlying Tort**

Under Texas law, claims for negligent hiring, training, or supervision are derivative; they require that the employee commit an actionable tort that causes the injury. *Walgreens v. McKenzie*, 713 S.W.3d 394, 402 (Tex. 2025); *Endeavor Energy Res., L.P. v. Cuevas*, 593 S.W.3d 307, 311 (Tex. 2019). Put differently, an employer cannot be held liable for negligent training if the employee's conduct was not legally tortious.

As established above, the operator's act of summoning law enforcement was a lawful exercise of discretion. Because the operator committed no tort, there is no legal basis for a negligent training or supervision claim. *Walgreens*, 713. S.W. 3d. at 402.

**2. The Complaint Fails to Plead Specific Training Deficiencies**

To survive dismissal, a plaintiff must identify a specific training deficiency and show how that failure caused the alleged injury. See *Bryan v. City of Dallas*, 188 F.Supp.3d 611, 621

(N.D. Tex. 2016). Here, Plaintiff relies on "statutory duties under disability-access" rather than specific facts regarding this operator's training or how it was inadequate. R. Doc. 13, ¶ 166. Because Plaintiff offers only labels and conclusions without a factual link between Greyhound's protocols and this specific encounter, her direct and gross negligence claims must be dismissed. *Twombly*, 550 U.S. at 555.

**3. Plaintiff Fails to Plead the Threshold Elements of Gross Negligence**

To state a claim for gross negligence under Texas law, a plaintiff must plead facts showing that: (1) the defendant's act involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the defendant had actual awareness of the risk but proceeded with conscious indifference to the rights, safety, or welfare of others. Tex. Civ. Prac. & Rem. Code § 41.001(11). The Complaint is devoid of facts satisfying either element. Consequently, the gross negligence claim must be dismissed.

*d. Claim Thirteen: Wrongful Ejection*

Plaintiff's claim for wrongful ejection fails for two independent reasons.

**1. A Common Carrier has the Right to Eject Disruptive Passengers**

Under Texas law, a bus driver has the inherent authority to remove a passenger who causes a disturbance or refuses to comply with reasonable instructions. See *Estate of Lee v. Continental Trailways*, 564 S.W.2d 392, 394 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.). Because the boarding pass (Exhibit A) confirms Plaintiff was not in her assigned seat, her refusal to move created a disturbance that justified the operator's decision to seek police assistance to maintain order.

**2. Greyhound Did Not Eject the Plaintiff**

Plaintiff admits that the operator did not physically remove her; instead, she alleges Sgt. Cavazos "ordered Plaintiff removed." R. Doc. 13, ¶ 46. A private entity cannot be held liable for an ejection carried out by law enforcement where the officers—not the defendant—controlled the timing and manner of the removal. See *Armstead*, 488 F.2d at 510-11 (holding a bus driver not liable for an officer's independent actions after the driver requested assistance). Because the police exercised independent discretion and sole control over the physical encounter, Plaintiff cannot maintain a claim for wrongful ejection against the Greyhound Defendants. See *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 507 (Tex. 2002).

*e. Claim Fourteen: Breach of Contract*

To state a claim for breach of contract, a plaintiff must identify a specific contractual obligation that the defendant failed to perform. *Aston Customs Homes & Design, Inc. v. Wilmington Sav. Fund Soc'y FSB*, No. 3:22-CV-2505-X-BN, 2023 WL 3010527, at 4 (N.D. Tex. Mar. 23, 2023). Here, the boarding pass (Exhibit A) confirms the only obligation was to provide a standard Adult Seat. Because Plaintiff fails to allege that such a seat was unavailable—and instead relies on the breach of an uncontracted guarantee for a specific accessible seat—she has failed to state a plausible claim for relief.

Plaintiff alleges—without identifying any specific contractual provision—that "under the terms of the contract," unspecified "representations made at the time of purchase" and Defendants' "published policies" entitled her to accessible seating. R. Doc. 13, ¶ 181. The FAC does not quote, attach, or describe any policy or representation that guarantees a particular seat or overrides the assigned seat reflected on Plaintiff's boarding pass. Such conclusory references

to unidentified "policies" and "representations" are insufficient under *Twombly* to state a claim for breach of contract or deceptive trade practices.

Where, as here, a written boarding pass defines the terms of the transaction, a plaintiff cannot plausibly allege a contrary, unwritten entitlement without pleading the source and substance of that alleged promise.

*f. Claim Fifteen: Violations of the DTPA*

Plaintiff failed to provide the mandatory 60-day pre-suit notice under Tex. Bus. & Com. Code § 17.505(a). See *Hines v. Hash*, 843 S.W.2d 464, 469 (Tex. 1992). She has not provided a legally sufficient excuse as to why she was unable to give proper notice. Therefore, her DTPA claim fails as a matter of law. Moreover, this claim suffers from the same pleading infirmities as her breach of contract claim—a lack of facts that would make her claim plausible.

Furthermore, Plaintiff's DTPA claim is built upon a logical contradiction that mischaracterizes the transaction. In the FAC, ¶ 188(a), Plaintiff alleges a misrepresentation theory, claiming Defendants falsely represented that her ticket included an accessible seat. Yet, in the very next subparagraph 188(b), she pivots to an unconscionability theory, alleging Defendants took advantage of her by selling her a "disability-accessible ticket" and then denying her the benefit of that specific purchase.

Requiring a passenger to occupy her assigned seat, as reflected on the boarding pass, is not "grossly unfair" as a matter of law. Absent any misrepresentation or failure to deliver the service purchased, dissatisfaction with an assigned seat does not transform a routine transaction into a DTPA claim.

*g. Claim Sixteen: Intentional Infliction of Emotional Distress*

**1. The "Gap-Filler" Doctrine**

Under Texas law, IIED is a *gap-filler* tort intended only to provide a remedy where no other cause of action exists. If the gravamen of a plaintiff's complaint is covered by another statutory or common-law remedy—such as the negligence, defamation, or malicious-prosecution claims asserted here—the plaintiff may not also assert IIED based on the same conduct. This is true whether she succeeds on, or even makes, a statutory claim. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 448 (Tex. 2004). Because Plaintiff seeks recovery for her emotional distress through her claims for negligence, defamation, and malicious prosecution—all based on the exact same encounter—her IIED claim is barred as a matter of law.

**2. Lack of Extreme and Outrageous Conduct**

Even if the claim were not barred, the conduct alleged does not meet the stringent legal threshold for IIED in Texas. A defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bill Wyly Development, Inc. v. Smith*, 680 S.W.3d 679, 684–85 (Tex. App. 2023). That is, the conduct must go as far as to border on a serious criminal act. *Id.* Rude behavior does not constitute extreme or outrageous conduct. *Id.* Summoning law enforcement to address a passenger dispute does not meet the "extreme and outrageous" threshold.

*h. Claim Seventeen: Defamation and False Report*

In Texas, a one-year statute of limitations applies to claims for libel and slander. Tex. Civ. Prac. & Rem. Code § 16.002(a). The incident occurred on November 24, 2023 (R. Doc. 13, ¶ 1). To be timely, Plaintiff had to file by November 24, 2024. She filed her original Complaint on

November 22, 2025 (R. Doc. 1), nearly two years later. The defamation claims are therefore time-barred.

*i. Claims Eighteen–Twenty: Threshold Disability Failure*

To state a claim under the ADA, the Rehabilitation Act, or the Texas Human Rights Code, a plaintiff must plausibly allege a qualifying disability—i.e., a physical or mental impairment that substantially limits a major life activity. 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B); Tex. Lab. Code § 21.002(6). Allegations must establish a qualifying impairment existed at the time of the November 2023 incident. Plaintiff alleges only that she is "permanently disabled," without pleading facts describing an impairment that substantially limits one or more major life activities. R. Doc. 13, ¶¶ 28-29.[1] While Plaintiff lists medical conditions she claims as a result of the incident, she fails to plead facts showing how those conditions substantially limited a major life activity at the time of the incident.

Courts routinely dismiss disability-based claims where, as here, the complaint offers only conclusory assertions of disability without factual allegations describing the nature of the impairment or how it substantially limits a major life activity. See, e.g., *Hale v. King*, 642 F.3d 492, 500–01 (5th Cir. 2011); *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 (5th Cir. 2009). Plaintiff's conclusory allegation of "permanent disability" therefore fails as a matter of law. Accordingly, Claims 18-20 should be dismissed.

*j. Claim Nineteen: Rehabilitation Act § 504*

Plaintiff's own allegations establish an alternative, non-discriminatory basis for the encounter—a seating dispute—which precludes the "sole causation" element required under §

[1] The FAC alleges that Plaintiff received "[c]onfirmation of permanent disability status by her treating physician in 2024." R. Doc. 13, ¶ 60. This post-incident confirmation does not support the proposition that Plaintiff suffered from a qualifying legal disability at the time of the November 2023 incident, which is the relevant inquiry for her statutory claims.

504. Her narrative attributes her removal and injuries to the independent tactical decisions of law enforcement following a seating dispute—not a disability-based animus by Greyhound.

*k. Claim Twenty: Title III ADA*

In addition to the failure to properly plead a disability, Plaintiff lacks standing to seek injunctive relief because her FAC does not describe a "real and immediate threat" of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). A single past incident in 2023 is insufficient to establish that Plaintiff is likely to suffer a future injury traceable to current Greyhound policies.

## V. CONCLUSION

Plaintiff's First Amended Complaint fails to state any plausible claim for relief against the Greyhound Defendants. The boarding pass refutes the basis for Plaintiff's claims, independent police conduct breaks the chain of causation, and multiple claims fail on independent legal grounds. Dismissal with prejudice is warranted.

Respectfully submitted,

*/s/ Doris T. Bobadilla*
DORIS T. BOBADILLA
**Attorney-in-Charge**
Texas Bar No. 24075695
ANDREW S. KRONE
Federal ID No. 2590236
Texas Bar No. 24086872
**GALLOWAY, JOHNSON, TOMPKINS BURR & SMITH**
1301 McKinney Street, Suite 1400
Houston, Texas 77010
Telephone: (713) 599-0700
Facsimile: (713) 599-0777
Email: DBobadilla@gallowaylawfirm.com
Email: AKrone@gallowaylawfirm.com
***Attorneys for Greyhound Lines, Inc., Flix North America, Inc. and Flix Bus, Inc.***

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(D), a certificate of conference is not required for this Motion to Dismiss.

*/s/ Doris T. Bobadilla*________________________
DORIS T. BOBADILLA

**NOTICE OF ELECTRONIC FILING**

I certify that I have electronically submitted for filing, a true and correct copy of the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, on the 9th day of February, 2026, using the CM/ECF System.

*/s/ Doris T. Bobadilla*________________________
DORIS T. BOBADILLA