**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**McALLEN DIVISION**

| | | |
|---|---|---|
| **NORMALINDA CONTRERAS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CITY OF MCALLEN;** | § | **CIVIL ACTION NO.** |
| **CHIEF OF POLICE VICTOR** | § | |
| **RODRIGUEZ; SERGEANT** | § | **M – 25 – 541** |
| **JAVIER CAVAZOS (#6482);** | § | |
| **OFFICER PEREZ (#7568);** | § | |
| **OFFICER ZAPATA (#4457);** | § | |
| **OFFICER RODRIGUEZ (#8325);** | § | |
| **OFFICER O. PUENTE (#14878);** | § | |
| **OFFICER DELGADO (#8279);** | § | |
| **OFFICER CASTRO (#14602); FLIX** | § | |
| **NORTH AMERICA, INC; FLIX** | § | |
| **BUS, INC.; GREYHOUND LINES,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendants.** | § | **JURY REQUESTED** |

# CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Defendants **CITY OF McALLEN, TEXAS, VICTOR RODRIGUEZ IN HIS OFFICIAL CAPACITY, ARTURO PEREZ, ENRIQUE CASTRO, ROGELIO DELGADO, ALDO RODRIGUEZ, OSBALDO PUENTE, JAVIER CAVAZOS** and **FRANCISCO ZAPATA** submit this Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

# I.

# SUMMARY OF THE ARGUMENT

## A. Factual allegations

Plaintiff Contreras alleges claims against the City Defendants, City of McAllen, Police Chief Rodriguez in his official capacity, and Officers Perez, Castro, Delgado, Rodriguez, Puente, Cavazos, and Zapata individually (Officers) arising out of Sgt. Cavazos' instruction to Cisneros that she leave a Greyhound bus after she insisted on sitting in a designated disability seat, rather than in the assigned seat for which she had purchased a ticket. She does not contend that any officer physically removed her. She only claims that a single, unidentified officer used his knee to push or strike her lower back, causing her to either lose her balance, grab a handrail, and twist her leg/ankle and/or fall to her knees on the pavement, and that the other Officers failed to intervene to prevent that incident and did not render medical aid or summon EMS.

## B. Federal claims against the City and Chief Rodriguez

Contreras similarly claims the City is liable under the *Monell* doctrine for failing to adequately train and supervise City officers in de-escalation, interacting with disabled individuals, ADA compliance, use of force, and investigative detentions, though she does not identify any facts to identify the training or supervision provided to the officers, to establish that such training or supervision was constitutionally inadequate, or that it was the result of the City Commission's adoption of a deliberately indifferent custom or policy. Because she alleges only that her treatment was evidence of a policy (and the only evidence of a policy), rather than *the result of a* policy, her *Monell* claim should be dismissed.

Contreras also alleges the City violated Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act by asking about her disability status, treating her differently, using an unspecified degree of force, failing to provide reasonable modifications, and failing to train and supervise its officers, but she fails to identify any specific actions of any specific officer or the City that would establish a violation of either the ADA or § 504 of the Rehabilitation Act. She fails to identify any facts to establish that she is a qualified individual with a disability, including identifying her alleged disability and how she was qualified, how she was denied participation or benefits of any particular services, the specific accommodation she requested from the City or its officers, or how she suffered any discrimination by the City *because of her disability*. Her claims under the ADA and the Rehabilitation Act should be dismissed as well.

Contreras similarly sues Police Chief Rodriguez only in his official capacity "for purposes of prospective relief and for actions taken pursuant to [City] policies," though she identifies no actions allegedly taken by Chief Rodriguez or any prospective, equitable, or injunctive relief she is requesting from him. Her claims against Chief Rodriguez should likewise be dismissed.

**C. Federal claims against the Officers**

Contreras alleges she was unreasonably seized in violation of the Fourth Amendment when the Officers detained, questioned, or ordered her to leave the bus, though she does not identify the actions of any specific officer or any basis to establish any officer did not have the authority to temporarily detain her to investigate the incident. Police officers may temporarily detain suspects while investigating a complaint, and Contreras

does not allege she was ever actually arrested. Because she was free to leave during her encounter with the Officers, and she never identified any action by any Officer to restrict her liberty, Contreras was not seized in violation of the Fourth Amendment and her "unreasonable seizure" claim should be dismissed.

Likewise, Contreras alleges Fourth Amendment claims against a single Officer for his use of excessive force when he struck her back, and against the remaining Officers for failing to intervene to prevent that action. Although Defendants deny that any officer touched her, much less that any officer struck her, that she twisted her leg/ankle, or that she fell to the ground, she does not identify the Officer that struck her or how any other Officer had the requisite prior knowledge to intervene or prevent that action. Because she failed to identify facts to establish a specific Officer violated her constitutional rights, that one or more Officers had a reasonable opportunity to intervene and stop particular conduct, that they acquiesced in any other Officer's allegedly unconstitutional actions, or any subsequent injury that any Officer failed to prevent, her excessive force and failure to intervene claims should be dismissed as well.

Contreras' Fourteenth Amendment disability-based equal protection claim for the Officers' interrogation during their investigation of the incident similarly identifies no differential treatment on the basis of a disability. Contreras failed to identify *what* process she believes was due, what policies the Officers failed to follow, or what acts or omissions established a violation. Because disability is not a protected class and the Officers had a rational basis for their interrogation, *i.e.*, Contreras' attempt to take a different seat because she alleged she was disabled, her equal protection claim should be dismissed.

Furthermore, to overcome the Officers' presumed entitlement to qualified immunity, Contreras was required to identify facts to establish *each Officer* violated a clearly established constitutional right, with reference to existing precedent or caselaw that squarely governed the specific facts at issue and that placed the statutory or constitutional question beyond debate. Her failure to identify sufficient facts and authority entitle each Officer to qualified immunity.

**D. State law claims against the Officers**

Contreras alleges "alternative" state law claims of assault and battery, negligence, gross negligence, and failure to provide medical care / failure to assist. By filing suit against the City of McAllen and its Officers for acts taken in the general scope of the Officers' employment with the City, however, Contreras made the *irrevocable election* to pursue those claims *solely against the City*. Because she did not amend her Complaint to pursue those claims solely against the City, the election of remedies provisions of the Texas Tort Claims Act (TTCA) requires that her claims against the Officers "shall be dismissed."

## II.

## <u>FACTUAL ALLEGATIONS</u>

Contreras claims that after she boarded a Greyhound bus, the bus driver ordered her to change seats. When she did not, the driver called the police, apparently because Plaintiff only purchased a standard Adult seat, rather than a "handicapped-accessible ticket," with no designation for accessible seating. Dkt No. 13, Plaintiff's First Amended Complaint, ¶¶ 31-36; Dkt No. 8, Rule 12(B)(6) Motion to Dismiss, at 6-7. Once the officers arrived, they inquired about her disability status, after which Defendant Sgt. Cavazos ordered her to

remove herself from the bus. Dkt No. 13, Plaintiff's First Amended Complaint, ¶¶ 39, 42, 43, 46. She claims that as she was leaving the bus, an officer pushed or struck her lower back with his knee, causing her to lose her balance, fall down the steps and either grab the handrail and twist her leg/ankle or land on the pavement. *Id.*, ¶¶ 3, 51, 52, 96, 135.

Contreras also claims Officer Zapata was in close proximity to the unidentified Officer who used force and that he failed to intervene to prevent the use of force, though she does not identify facts to establish Zapata should have anticipated any alleged use of force. *Id.*, ¶ 50. Likewise, she alleges the other Officers had sufficient time to position themselves, issue commands, escort her to the exit, and observe her descent, but failed to intervene, though she again does not identify facts to establish any other Officer should have anticipated any alleged use of force. *Id.*, ¶ 53. The Officers then left without offering her medical aid or assistance. *Id.*, ¶¶ 57, 58.

Contreras does not allege she filed a complaint with the City relating to actions of any of its Officers prior to filing her lawsuit, or that she requested an investigation arising out of her allegations in this action. She identifies no other facts to establish her claims but relies instead on conclusory allegations masquerading as facts, and she does not identify any specific actions taken by any specific Officer, rather than actions by "the Officers."

## III.

## ARGUMENT AND AUTHORITIES

### A. Standard of Review for Motion to Dismiss

Before an Answer has been filed, the proper mechanism for challenging the claims made is through Federal Rule of Civil Procedure 12(b)(6). At this stage, the Court must

limit its inquiry "to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Wilson v. Birnberg,* 667 F.3d 591, 600 (5th Cir. 2012). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 US 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

The Court need not accept at face value any factually unsupported legal conclusions, however. *Fernandez-Montez v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"). The Court is not required to accept ultimate conclusions that do not flow from the factual description of the case. *Vulcan Materials Co. v. City of Tehuacana,* 238 F.3d 382, 388 (5th Cir. 2001), *citing* 5A C. WRIGHT & A. MILLER, FED. PRAC. & PROC.: CIVIL 2d §1357, at 319-20 (1990).

"Factual allegations must be enough to raise a right to relief above the speculative level, … [and not simply] create[] a suspicion [of] a legally cognizable right of action, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S. Ct. at 1965. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. ... Where a complaint pleads facts

that are 'merely consistent with' a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*; *Twombly*, 127 S. Ct. at 1955.

Courts must undertake the "context-specific" task of evaluating whether the well pleaded allegations give rise to an entitlement to relief that is plausible, rather than merely possible or conceivable, with "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re So. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008), *quoting Twombly*, 550 U.S. at 556.

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."

*Iqbal*, 556 U.S. at 678-79, 129 S. Ct. at 1950, *quoting Twombly*, 550 U.S. at 555 & FED. R. CIV. P. 8(a)(2).

The plausibility standard concerns the factual allegations of a complaint. "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn under the relevant legal theory." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th

Cir. 1995), *quoting* 3 C. WRIGHT & A. MILLER, FED. PRAC. & PROC.: CIVIL 2d § 1216, at 156-59). Thus, dismissal is proper if the complaint "lacks an allegation regarding a required element necessary to obtain relief." *Id., quoting* 2A MOORE'S FEDERAL PRACTICE ¶ 1207, at 12-91.

**B. Federal claims against the City and Chief Rodriguez should be dismissed.**

Contreras alleges the City and Police Chief Victor Rodriguez in his official capacity are liable under the *Monell* doctrine for failing to adequately train and supervise City Officers in de-escalation, interacting with disabled individuals, ADA compliance, use of force, and investigative detentions, though she does not identify any facts to identify the training or supervision provided to the officers or to establish that such training or supervision was constitutionally inadequate and the result of the City Commission's adoption of a deliberately indifferent custom or policy. She relies only on a *post hoc, ergo propter hoc* analysis to make the conclusory allegation that her alleged treatment was the evidence of a policy, and the only evidence of a policy, rather than the result of a policy.

**1. Contreras has not identified facts to establish a *Monell* violation by the City or Chief Rodriguez (Claim 4).**

**a. The McAllen City Commission was the City's final policymaker.**

Contreras agrees that the McAllen City Commission is the City's final policymaker. Dkt No. 13, Amended Complaint, ⁋ 111. Though she alleges the City Manager has some policymaking authority, she identifies no facts to support that allegation. "Usually a council or commission will be the governing body to which responsibility must be attached." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978).

The objectionable "course of conduct, whether formally declared or informally accepted, must be the policy of the city government if it is to be the basis of city liability." *Id.*

"Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Board of County Commissioners of Bryant County v. Brown*, 520 U.S. 397, 403-04, 117 S. Ct. 1382, 1388 (1997). Identifying the City's final policymaker in the area of municipal government presents a question of state law. *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 2724 (1989); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340 n.8 (5th Cir. 1989). State law, including city charters and ordinances, will "always direct a court to some official or body that has the responsibility for making law or setting policies in any given area of a local government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988).

Furthermore, "[o]nly those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability." *Praprotnik*, 485 U.S. at 123 (plurality opinion). Actions of a non-policymaking decisionmaker who applies a facially constitutional policy in an unconstitutional manner cannot create liability for a city. *See, e.g., Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) ("*Jett II*"). A court "would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Praprotnik*, 485 U.S. at 126. What matters is the identity and involvement of the *final* policymaker, not intermediate level policymakers. *See Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994).

The governing body of the City of McAllen consists of a Board of Commissioners, which include the Mayor and six commissioners. McAllen City Charter, Art. 3, § 1.

> The board of commissioners of said city shall be vested with the power and charged with the duty of making all laws or ordinances not inconsistent with the Constitution of the State of Texas, touching every subject and matter within the local government…. They shall have the power and authority in the government, management and control of McAllen, which are not especially delegated to some other authority….

*Id.*, Art. 3, § 16. "The mayor [is] the chief executive officer of McAllen and shall see that all laws thereof are enforced." *Id.*, Art. 3, § 13. The Charter created the City's Police Department, which is "composed of a chief of police and as many assistants, subordinates and employees as the board of commissioners may deem necessary." *Id.*, Art 4, § 1.

**b. Contreras was required, but failed, to identify a deliberately indifferent custom or policy adopted by the City Commission that caused a violation of her constitutional rights.**

To state a claim against the City, Contreras was required to demonstrate that an 'official policy or custom' of the final policymaker was causally the 'moving force' of the constitutional deprivation in question. *See Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996); *Spiller v. City of Texas City,* 130 F.3d 162 (5th Cir.1997).

The United States Supreme Court has held that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor. *Brown*, 520 U.S. at 403-11, 117 S. Ct. at 1388; *Monell*, 436 U.S. at 689, 98 S. Ct. at 2035.

> Municipalities can be sued directly under §1983 for monetary, declaratory or injunctive relief where...the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

*Monell*, 436 U.S. at 690-91, 98 S. Ct. at 2036. Official policy is:

> 1. A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of City officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) *(On Petition for Rehearing) (en banc) (per curiam), cert. denied*, 472 U.S. 1016, 105 S. Ct. 3467 (1985). The City therefore may not be held liable "unless action pursuant to official municipal policy of some nature *caused* the constitutional tort." *Monell*, 436 U.S. at 691, 98 S. Ct. 2036 (emphasis added).

To hold the City of McAllen liable, Plaintiff must also establish the state-of-mind of the municipality's legislative body or an authorized decision-maker to prove the underlying violation. *Brown*, 520 U.S. at 405, 117 S. Ct. at 1389. That state-of-mind requirement is deliberate indifference. *Id.*, 520 U.S. at 407, 117 S. Ct. at 1390. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence to his action." *Id.*, 520 U.S. at 410, 117 S. Ct. at 1391. The Fifth Circuit equated the deliberate indifference standard to a criminal law *mens rea* recklessness standard where a person disregards a risk of harm of which he is aware. *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996) (en banc). Neither negligence nor gross negligence is sufficient to prove that an official acted or failed to act with deliberate indifference. *Brown*, 520 U.S. at 407, 117 S. Ct. at 1390; *Hare,* 74 F.3d at 648-49. The standard is higher. *Hare*, 74 F.3d at 648.

Contreras only "offers labels and conclusions" without identifying any elements of her § 1983 cause of action or the basis to establish liability of the City. *Tempur-Pedic Int'l, Inc.*, 902 F. Supp. 2d at 963, *citing Twombly,* 550 U.S. at 555. Nor did she identify any deliberately indifferent custom or policy of the City that was the moving force that allegedly caused her injury. *Monell*, 436 U.S. at 694, 98 S. Ct. at 2027.

**c. Contreras failed to identify facts to establish the City of McAllen had a custom or policy of inadequately training or supervising its Police Officers, or that such policy was adopted with deliberate indifference to her constitutional rights.**

In order to pursue a § 1983 cause of action for supervisory liability, Contreras must allege "'either a supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation.'" *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006), *quoting Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003). Supervisory liability is not, and cannot be, a mask for vicarious liability, *respondeat superior* or common law negligence. *See Bush v. Viterna*, 795 F.2d 1203, 1206 (5th Cir. 1986).

The Fifth Circuit further refined the supervisor liability test where there is no direct evidence that a supervisor directly participated in a constitutional violation. *See, e.g., Roberts v. City of Shreveport*, 397 F.3d 287 (5th Cir. 2005). To establish § 1983 liability against supervisors, a plaintiff must show that:

> (a) the [supervisor] failed to supervise or train the officer;
>
> (b) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and

> (c) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights.

*Id*. at 292. "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001). "The plaintiff must generally demonstrate at least a pattern of similar violations." *Id*. Additionally, based on the Supreme Court's decision in *Canton*, "the inadequacy of training must be obvious and obviously likely to result in a constitutional violation." *Id.*, *citing City of Canton v. Harris*, 489 U.S. at 390 n.10, 109 S. Ct. at 1205 (1989).

Contreras argues that no officer "did the right thing[, which] is evidence of a cultural or training failure…." Dkt No. 13, Amended Complaint, ⁋ 114. She also contends that the lack of any investigative or corrective measures following the incident reflects a policy of failing to train officers or ratification of those officers' actions. *Id.*, ⁋⁋ 115-118. She does not allege that she filed a complaint or requested an investigation with the Police Department following the incident, however, and she does not identify any other notification she may have provided prior to filing suit to indicate she was not satisfied with her treatment by any Officer or the City. She relies only on her conclusion that *because the incident occurred as she now alleges it did*, the City must have had a policy *that caused* that incident. Even if one or more Officers had violated her rights, however, she has not identified a custom or policy that caused that violation, and the City may not be held liable solely because it may have employed a tortfeasor. *Brown*, 520 U.S. at 403-11, 117 S. Ct. at 1388.

Contreras also identified no facts to establish the City failed to train one or more Officers, that such failure to supervise or train somehow violated her rights, or that the City was deliberately indifferent to her constitutional rights by failing to provide any particular training. *See Eugene v. Alief Independent School Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995). "[M]unicipal liability under §1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84, 106 S. Ct. 1292 (1986). An "alleged … policy not to appropriately train police officers … is not equivalent to "deliberately elect[ing] not to … carry out training." *Freedman v. City of Allentown*, 853 F.2d 1111, 1116 (3d Cir. 1988).

Having failed to provide facts to identify a custom or policy of the City, adopted by the City Commission with deliberate indifference to Contreras' constitutional rights and which caused a constitutional deprivation, her *Monell* claim must be dismissed.

**d. Contreras has not identified any declaratory, equitable, or prospective relief she requests from Chief Rodriguez.**

Contreras only sues Chief Rodriguez in his official capacity for "prospective relief and for actions taken pursuant to [City] policies, and for actions taken pursuant to policies, customs, practices, and delegated authority of the City of McAllen," alleging he "is responsible for implementing and enforcing those policies and practices." She identifies no actions allegedly taken, or not taken, by Chief Rodriguez or any prospective, equitable, or injunctive relief she is requesting from him. Dkt No. 13, ⁋⁋ 11, 111. A plaintiff "may sue

a city employee in his official capacity [only] to compel declaratory or prospective injunctive relief in that official's office, however, and may not pursue claims for damages against an individual in his official capacity rather than directly against the City." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989) (cleaned up). *See also Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) ("official capacity [claims] are ... limited to prospective injunctive and declaratory relief.").

"Under Texas law, a suit against a government employee in his official capacity is a suit against his government employer…." *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011). When a claim is for money damages, that "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71, 109 S. Ct. at 2312. *But see, Meza v. Livingston*, 607 F.3d 392, 412 (5th Cir. 2010). "A suit against state employees in their official capacities is equivalent to a suit against the State, therefore, employees acting in their official capacities share the State's sovereign immunity." *Williams v. Casal*, No. 08-03-00396-CV, 2004 Tex. App. LEXIS 8004, at *8-9, 2004 WL 1932649 (Tex. App.—El Paso Aug. 31, 2004, no pet.), *citing Will*, 491 U.S. at 71, 109 S. Ct. at 2312; *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105-06 (1985).

Because Contreras identified no actions allegedly taken or not taken by Chief Rodriguez, or any equitable, declaratory, or injunctive relief that she is requesting from him in his official capacity, her claims against Chief Rodriguez should be dismissed.

**2. Contreras has not identified a violation of Title II of the ADA for failing to train, supervise, or implement the ADA or of § 504 of the Rehabilitation Act (Claims 5, 6).**

Title II of the Americans with Disabilities Act prohibits exclusion "from participation in or [denial of] the benefits of the services, programs, or activities of a public entity, or [subjection] to discrimination by any such entity" to a "qualified individual with a disability." 42 U.S.C.S. § 12132. Section 504 of the Rehabilitation Act provides similar requirements for structural alterations and employment matters. 42 U.S.C. § 794(c), (d). *See A.J.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 358, 145 S. Ct. 1647, 1663 (2025).

Under appropriate circumstances, the ADA and the Rehabilitation Act therefore require reasonable accommodations. *Tennessee v. Lane*, 541 U.S. 509, 531-32, 124 S. Ct. 1978, 1993 (2004). Contreras alleges the City discriminated against her by interrogating her regarding her disability status, disregarding her physical limitations, escalating a passenger-service issue, employing physical force instead of accommodating her limitations, and failing to modify police procedures. Dkt No. 13, Amended Complaint, ¶ 125. Although Contreras alleges she is a qualified individual with a disability, she does not identify her disability, how she was qualified, what accommodation she requested, the manner of that request, or how she was denied participation or benefits of any particular services.

"[T]he ADA requires [public entities] to reasonably accommodate limitations, not disabilities." *Garza v. City of Donna*, No. 7:16-CV-00558, 2017 U.S. Dist. LEXIS 103118, 2017 WL 2861456, at *13 (S.D. Tex. July 5, 2017), *quoting Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). She has not identified any accommodation she

requested from the City or any request that was denied. Nor has she identified any authority that required the City to accommodate any particular limitations she may have had. "Because an entity cannot generally be expected to divine a person's limitation, the claimant bears the burden to request the relevant accommodation, unless their disability, resulting limitations, and appropriate accommodations are open, obvious, and apparent." *Garza*, No. 7:16-CV-00558, at *13.

"To state a viable claim under the ADA … a plaintiff must allege facts showing exclusion from a service, program, or activity, and [s]he must show [her] exclusion from such was based upon [her] disability." *Payne v. Sutterfield*, No. 2:18-CV-084-Z-BR, 2021 U.S. Dist. LEXIS 139888, 2021 WL 3173902, at *5 (N.D. Tex. July 27, 2021), *citing Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx 963, 965-66 (5th Cir. 2004). "The ADA exists to protect individuals from being discriminated against because they have disabilities; it does not exist to challenge a person's treatment for a disability." *MacIas v. Dewitt Cty.*, No. 2:23-CV-00043, 2023 U.S. Dist. LEXIS 236320, at *47 (S.D. Tex. Dec. 15, 2023), *quoting Whetstone v. Hall*, No. 4:17-cv-158-JMV, 2018 U.S. Dist. LEXIS 28298, 2018 WL 1022586, at *2 (N.D. Miss. Feb. 22, 2018) (cleaned up).

Furthermore, Contreras has not identified facts to establish she suffered any discrimination by the City *because of* her disability, rather than because of the complaint made by the Greyhound bus driver after "the bus driver summoned police." Dkt No. 13, Amended Complaint, ¶ 36. The ADA only prohibits discrimination because of a disability and requires accommodations for disabilities where practical. She "must still show that she was discriminated against based on [her] disability. … [Her] claim, however, does not

establish discrimination based on disability…." *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012). Because "there is no indication that [Contreras] was *treated differently because of her disability*, she thus has not established a claim under the ADA." *Id.*, at 377 (cleaned up) (emphasis added). Contreras' ADA and Rehabilitation Act claims should therefore be dismissed as well.

**C. Federal claims against the Officers should be dismissed.**

**1. Qualified Immunity**

"Qualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S. Ct. 808, 818 (2009). Qualified immunity is an affirmative defense that the defendant official has the burden of pleading. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 1924 (1980); *Crawford-El v. Britton*, 523 U.S. 574, 586-87, 118 S. Ct. 1584, 1591 (1998). Once that defense is raised, the burden is then on the plaintiff to prove that the government official is not entitled to qualified immunity. *Wyatt v. Fletcher*, 718 F.3d 496, 510 (5th Cir. 2013). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Crostley v. Lamar County*, 717 F.3d 410, 422 (5th Cir. 2013). A public official may assert qualified immunity at the initial pleading stage, as well as in a later motion for summary judgment. *Behrens v. Pelletier*, 516 U.S. 299, 307, 116 S. Ct. 834, 839 (1996); *Pearson*., 555 U.S. at 232, 129 S. Ct. at 815.

There is a presumption that an individual defendant is entitled to federal qualified immunity. *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"

*Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 2156 (2001), *quoting Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985). To establish that an individual defendant is *not* entitled to qualified immunity, a plaintiff must satisfy a three-pronged test. First, he must allege facts that assert a violation of a constitutional right. Second, he must show that this right was clearly established at the time of each defendant's actions, and third he must show that the defendant's actions were objectively unreasonable. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995), *cert denied*, 517 U.S. 1191, 116 S. Ct. 1680 (1996), *citing Harlow v. Fitzgerald*, 457 U.S. 800, 815-19, 102 S. Ct. 2727, 2736-38 (1982); *Sorenson v. Ferrie*, 134 F.2d 325, 327 (5th Cir. 1998).

In order to survive a motion to dismiss based on a claim of qualified immunity, the actions of each individual "must be pleaded with 'factual detail and particularity,' not mere conclusionary allegations." *Jackson v. Widnall*, 99 F.3d 710, 715-16 (5th Cir. 1996), *quoting Schultea v. Wood,* 47 F.3d at 1430 (5th Cir. 1995) (*en banc*). Contreras must therefore first identify an official's constitutional violation of her rights. Secondly, even if a violation can be established, "to show a violation of clearly established law, [she] must identify a case that put [the official] on notice that his specific conduct was unlawful." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6, 142 S. Ct. 4, 8 (2021).

> The hurdle is even higher when the plaintiff alleges a Fourth Amendment violation. As we have said elsewhere, in excessive-force cases requiring split-second judgments, it is "especially difficult" to overcome qualified immunity. That is because in the Fourth Amendment excessive-force context, "it is sometimes difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts." Thus, [Contreras] must demonstrate that the law is "*so* clearly established that—in the blink of an eye, in the middle of a high-speed chase—every reasonable officer would know it immediately."

*Henderson v. Harris County*, 51 F.4th 125, 132-33 (5th Cir. 2022), *quoting Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 308 (2015) & *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019). "[P]olice officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104, 138 S. Ct. 1148, 1152 (2018), *quoting Mullenix*, 577 U.S. at 14, 136 S. Ct. at 309.

Even if a defendant's conduct infringed upon a constitutional right, qualified immunity shields government officials from liability unless the official violated a statutory or constitutional right that was *clearly established* at the time of the challenged conduct and of which a reasonable person would have known. *Taylor v. Barkes*, 575 U.S. 822, 824, 135 S. Ct. 2042, 2044 (2015); *Reichle v. Howards,* 566 U.S. 658, 664, 132 S. Ct. 2088, 2093 (2012). To be "clearly established" a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011); *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987).

The only inquiry is whether "a reasonable officer could have believed [the arrest at issue] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Davis v. Strain*, 676 F. App'x 285, 287 (5th Cir. 2017), *quoting Mendenhall v. Riser*, 213 F.3d 226, 232 (5th Cir. 2000). When properly applied, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743, 131 S. Ct. at 2085.

Although Supreme Court "caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela*, 584 U.S. at 104, 138 S. Ct. at 1152, *quoting White v. Pauly*, 580 U.S. 73, 79, 137 S. Ct. 548, 551 (2017). "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 310 (5th Cir. 2018), *quoting Cass v. City of Abilene*, 814 F.3d 721, 732-33 (5th Cir. 2016). Failure to cite "a pre-existing or precedential case" that places an officer on notice that the conduct in question violates the Constitution "dooms" a plaintiff's case. *Id.*

"[I]n the light of pre-existing law the unlawfulness must be apparent," *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff* v. *Rickard*, 572 U. S. 765, 778-79, 134 S. Ct. 2012, 2023 (2014).

The qualified immunity analysis therefore requires a twofold inquiry:

1. Even if one accepts the plaintiff's version of events, did the plaintiff identify sufficient facts to establish a constitutional violation.
2. Even if the plaintiff's facts established a constitutional violation, did she identify a similar case that put the officers on notice that their specific conduct violated the Constitution at the time the event occurred.

District courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818.

### 2. Contreras was not unreasonably seized in violation of the Fourth Amendment (Claim 1).

Contreras contends she was unreasonably seized when one or more Officers restrained her liberty by detaining, questioning, or removing her from the bus, though she does not identify actions of any specific Officer. Dkt No. 13, Amended Complaint, ⁋⁋ 89-91. "Individuals are 'seized' within the meaning of the Fourth Amendment 'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave.'" *Naill v. Benavides*, 268 F. App'x 355, 357 (5th Cir. 2008), *quoting Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S. Ct. 1975, 1979 (1988).

Contreras does not contend that she was *not free to leave*, however. To the contrary, she argues she should have been allowed to remain on the bus, albeit in a seat other than the seat she had purchased. Under similar circumstances, the Supreme Court concluded that temporarily detaining a suspect at an airport and requesting identification and her airline ticket is not an unlawful seizure. *United States v. Mendenhall*, 446 U.S. 544, 552, 100 S. Ct. 1870, 1876 (1980), *citing Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 (1968). Likewise, when a police officer approaches a suspect inside a restaurant and tells him to come outside, which he does, with no indication that the officer curtailed his liberty, there is no unconstitutional seizure. *Sibron v. New York*, 392 U.S. 40, 63, 88 S. Ct. 1889, 1903 (1968). "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Mendenhall*, 446 U.S. at 552, 100 S. Ct. at 1876.

Furthermore, suspects may also be temporarily detained because of concerns for safety, which does not constitute an arrest. As Contreras alleges, the bus driver told her to return to the seat she had purchased, or to "Move to the back of the bus or I'm calling the cops," then "summoned police." Dkt No. 13, Amended Complaint, ⁋⁋ 34, 36. On arrival following that call for assistance, the Officers were allowed to detain her for safety concerns of the officer, which is a "legitimate exercise of valid routine police procedure." *United States v. Bradshaw*, 102 F.3d 204, 212 (6th Cir. 1996). An officer is "entitled to temporarily detain [a suspect] to preserve the status quo for safety reasons until the intentions of the [suspect] could be sorted out." *Naill v. Benavides*, 268 Fed. Appx. 355, 357 (5th Cir. 2008). A "police officer's questioning, even on a subject unrelated to the purpose of the stop" is neither a search nor a seizure and does not establish a Fourth Amendment violation. *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993).

"As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty …." *Mendenhall*, 446 U.S. at 554, 100 S. Ct. at 1877.

> [C]haracterizing every street encounter between a citizen and the police as a "seizure," while not enhancing any interest secured by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices. The Court has on other occasions referred to the acknowledged need for police questioning as a tool in the effective enforcement of the criminal laws. "Without such investigation, those who were innocent might be falsely accused, those who were guilty might wholly escape prosecution, and many crimes would go unsolved. In short, the security of all would be diminished."

*Id.*, *quoting Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S. Ct. 2041, 2046 (1973) and *citing Haynes v. Washington*, 373 U.S. 503, 515, 83 S. Ct. 1336, 1344 (1963). "[A]

person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.*

Contreras does not contend that she was arrested or otherwise not free to leave the bus. To the contrary, she claims only that she was detained, questioned, and removed from the bus after the bus driver summoned police to investigate. Dkt No. 13, Amended Complaint, ⁋ 89. She complains that she was not allowed to remain on the bus, which was a matter determined by the bus driver, not the Officers, and she did not identify actions of any specific Officer to allegedly detain her. Because she has not identified facts to establish she was unlawfully detained, or detained by any specific Officer, her Fourth Amendment unreasonable seizure claim should be dismissed.

**3. Contreras has not identified facts to establish a Fourth Amendment claim of excessive force or failure to intervene against any particular officer (Claim 2).**

**a. Contreras has not identified an excessive force claim against any specific officer for his use of force.**

Contreras only alleges that "an officer" struck her lower back, though she does not identify which Officer. Dkt No. 13, Amended Complaint, ⁋ 96. Defendants deny that *any Officer* struck Contreras, or even that she ever fell to the ground. Because Contreras has not identified facts to establish any specific Defendant Officer struck her, however, she cannot establish an excessive force claim against any of the Defendants individually. *See Cloud v. Salazar*, No. SA-25-CV-00444-OLG, 2025 U.S. Dist. LEXIS 147646, at *9 (W.D. Tex. July 30, 2025) (dismissal granted for failure to identify officer Plaintiff claims arrested

him); *Taylor v. Salazar*, No. SA-25-CV-00543-JKP, 2025 U.S. Dist. LEXIS 196396, at *16-17 (W.D. Tex. Oct. 2, 2025) (where plaintiff did not identify individual who allegedly conducted unconstitutional strip search or factual allegations concerning searches, he failed to state a claim upon which relief may be granted); *Flores v. El Paso Cty. Sheriff's Dep't*, No. EP-06-CV-0419-KC, 2007 U.S. Dist. LEXIS 102755 (W.D. Tex. June 29, 2007) (dismissal for failure to identify particular individual who violated his rights). Contreras' excessive force claim should therefore be dismissed.

**b. Contreras has not identified facts to establish a failure to intervene claim against any officer.**

Contreras claims that "[o]ther officers" had a realistic and reasonable opportunity to prevent or mitigate the use of force," but failed to intervene. Dkt No. 13, Amended Complaint, ⁋ 98. "An officer is liable for failure to intervene [only] when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020). Liability requires that an officer be sufficiently close to the alleged constitutional violation to have a "reasonable opportunity" to prevent the harm and nonetheless choose not to act. *See Kitchen v. Dallas Cnty., Tex.,* 759 F.3d 468, 480 (5th Cir. 2014).

Cases in which bystander claims were supported generally involved an extended timeline of actions by officers, actions by officers acknowledging the excessive use of force by another officer, or a failure to take action to prevent subsequent injury to an arrestee after an initial injury. *See, e.g., Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (officer's

standing by, laughing, and yelling encouragement as fellow officer repeatedly assaulted suspect suggested acquiescence in alleged use of excessive force). An officer's "mere presence at the scene is insufficient to render an officer legally responsible for constitutional violation under §1983," however. *Sanchez v. Griffis*, No. MO:20-CV-00269-DC, 2021 U.S. Dist. LEXIS 235949, at *35, 2021 WL 5818497 (W.D. Tex. Nov. 2, 2021). *See also Calvi v. Knox Cty.*, 470 F.3d 422, 428 (1st Cir. 2006) ("mere presence at the scene, without more, does not by some mysterious alchemy render [an officer] legally responsible under section 1983 for the actions of a fellow officer").

Contreras did not identify any facts to establish that any Officer knew a fellow Officer was violating her constitutional rights, that they had a reasonable opportunity to intervene and stop particular conduct, that they acquiesced in any other Officer's allegedly unconstitutional actions, or any subsequent injury that any Officer failed to prevent. Contreras' failure to intervene claim should therefore be dismissed as well.

**4. Contreras failed to identify facts to establish a Fourteenth Amendment disability-based equal protection claim (Claim 3).**

Although Contreras alleges she is a disabled individual, she has not identified any physical or mental impairment that substantially limits one or more of her major life activities, such as seeing, hearing, or walking, and she identified no accommodation she requested for her specific disability. Dkt No. 13, Amended Complaint, ¶¶ 28, 29, 35, 40, 41, 104. *See* 42 U.S.C. § 12102. In addition, she complains that the officers interrogated her about her disability and treated her as unworthy of equal respect, though her entire basis for attempting to take a handicap eligible seat is because she was claiming to be disabled,

and she does not indicate how any Officer differentiated between her and any other similarly situated individual on the basis of her alleged disability. *Id.*, ⁋ 104.

"States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such individuals are rational" because disability is not a suspect classification under the Supreme Court's Equal Protection Clause jurisprudence. *Coleman v. Court of Appeals*, 566 U.S. 30, 64, 132 S. Ct. 1327, 1349 (2012) (Ginsburg, J., dissenting), *citing Bd. of Trs. v. Garrett*, 531 U.S. 356, 367, 121 S. Ct. 955, 964 (2001). "'[D]iscrimination on the basis of disability is subject only to the slightest scrutiny under the Equal Protection Clause[, and] States may discriminate on the basis of disability without offending the Fourteenth Amendment as long as the classification in question is rationally related to a legitimate state interest.'" *Price v. Tex. Tech. Univ. Health & Scis. Ctr. El Paso*, 784 F. Supp. 3d 944, 955 (W.D. Tex. 2025), *quoting Kazmier v Widmann*, 225 F.3d 519, 528 (5th Cir. 2000), *abrogated in part on other grounds by Nev. Dep't of Human Res. v Hibbs*, 538 U.S. 721, 123 S. Ct. 1972 (2003).

Furthermore, while Contreras pursues her equal protection claim on the basis of an alleged disability, she failed to "identify *what* process she believes is required to comport with her idea of 'due process,' nor what specific policies [the Officers] failed to follow." *Price v. Tex. Tech. Univ. Health & Scis. Ctr. El Paso*, 784 F. Supp. 3d 944, 953 (W.D. Tex. 2025). Because she "has neither identified which 'protected class' she is a part of, nor has she identified Defendant's specific 'acts and omissions' which give rise to the Equal Protection violation in question," she has not identified a violation. *Price v. Tex. Tech. Univ. Health & Scis. Ctr. El Paso*, 784 F. Supp. 3d 944, 955 (W.D. Tex. 2025).

Any basis the Officers may have had to interrogate Contreras in the manner in which they did must be supported so long as there may be a rational basis for the interrogation. Any classification the Officers may have "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. … Parties attacking the presumption of validity extended to classifications 'have the burden "to negative every conceivable basis which might support it."'" *Luke v. Lee Cty.*, No. 1:20-CV-00388-DII, 2023 U.S. Dist. LEXIS 134835, at *14 (W.D. Tex. Aug. 3, 2023) (purpose to save money by relying on mother to interpret for son was rational basis), *quoting FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 & 315, 113 S. Ct. 2096, 2101-02 (1993).

Because officers are tasked with investigating complaints submitted by all segments of the public, equal protection claims on the basis of disability do not generally extend to officers' criminal investigations. *See Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000). As a result, simply questioning a suspect or other person as part of a complaint by a reporting party, necessary to investigate that complaint, does not establish a violation of the equal protection clause. Contreras' Fourteenth Amendment disability-based equal protection claim should therefore be dismissed.

## D. The Tort Claims Act's election of remedies provisions require the dismissal of Contreras' state-law tort claims of assault, battery, negligence, gross negligence, and failure to provide medical care or to assist (Claims 7, 8, 9).

Contreras alleges state law tort claims of assault and battery, negligence, gross negligence, and failure to provide medical care or to assist. Dkt No. 13, Amended Complaint, ⁋⁋ 347-39, 141-45, 147-52. State law limits the claims a Plaintiff may raise

against a governmental employee when suit is also filed against the governmental unit. The legislature specifically provided that

> *[the] filing of a suit* under this chapter *against a governmental unit* constitutes *an irrevocable election* by the plaintiff and *immediately and forever bars any suit* or recovery by the plaintiff *against any individual employee of the governmental unit regarding the same subject matter*.

TEX. CIV. PRAC. & REMEDIES CODE §101.106(a) (emphasis added). Contreras was therefore required to decide "at the outset" whether the Officers acted independently or within the scope of their employment *because filing suit effects an irrevocable election*. *Univ. of Tex. Health Sci. Ctr. v. Rios*, 542 S.W.3d 530, 536-37 (Tex. 2017).

As the Texas Supreme Court explained, "[u]nder the Tort Claims Act's election scheme, recovery against an individual employee is barred and may be sought against the governmental unit only … when suit is filed against both the governmental unit and its employee…." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008), *citing* TEX. CIV. PRAC. & REMEDIES CODE § 101.106(e). Thus, "the plaintiff can be compelled to switch targets from the governmental employee to the governmental employer if 'suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit….'" *Hintz v. Lally*, 305 S.W.3d 761, 769 (Tex. App.—Houston [14th Dist.] 2009, pet. denied), *quoting* § 101.106(f).

Contreras' claims against the Officers are only for actions allegedly undertaken while acting in the course and scope of their official duties for the City of McAllen. "Scope of employment" is defined as "the performance for a governmental unit of the duties of an

employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." *Id.*, § 101.001(5). "A suit based on such conduct is not a suit against the employee; it is, 'in all but name only, a suit against the governmental unit.'" *Molina v. Alvarado*, 463 S.W.3d 867, 870-71 (Tex. 2015); *Goodman v. Doss*, No. 13-15-00079-CV, 2016 Tex. App. LEXIS 1106, at *12 (Tex. App.—Corpus Christi Feb. 4, 2016, no pet.).

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the Plaintiff files amended pleadings dismissing the employee and naming the governmental entity as Defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REMEDIES CODE §101.106(f)(emphasis added). "The statute encourages, and in effect mandates, plaintiffs to pursue lawsuits against governmental units rather than their employees when the suit is based on the employee's conduct within the scope of employment." *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 352 (Tex. 2013). Section 101.106(f) is unambiguous in providing that the Defendant Officers are entitled to dismissal and "*shall be dismissed*." The Texas Supreme Court confirmed the entitlement of the individual Defendants to dismissal in these circumstances. *Garcia*, 253 S.W.3d 653. *See also, Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462-64 (5th Cir. 2010).

Having filed her state law tort claims of assault and battery, negligence, gross negligence, and failure to provide medical care or to assist against the Officers *regarding the same subject matter* as her claims against the City, Contreras made the *irrevocable*

*election* to pursue those claims *only against the City*, and she is now *immediately and forever barred* from suit or recovery on these claims against the Officers. TEX. CIV. PRAC. & REM. CODE §101.106(a). The Court should now dismiss those claims.

## IV.

## CONCLUSION AND PRAYER

Contreras' claim against the City under the *Monell* doctrine for failing to adequately train and supervise City officers does not provide facts to identify the training or supervision provided to the officers or to establish that such training or supervision was constitutionally inadequate. Nor does she identify any custom or policy of inadequate training or supervision that the City adopted with deliberate indifference to her constitutional rights. She alleges only that the incident was the evidence of a policy, rather than the result of a policy. Similarly, she fails to identify any specific actions of any specific officer or the City that would establish a violation of the ADA or the Rehabilitation Act, including any facts to establish that she is a qualified individual with a disability, or to meet the other elements of either Act. Her claims against Chief Rodriguez in his official capacity likewise do not identify any specific acts or prospective, equitable, or injunctive relief she is requesting from him to support his participation in this action.

Contreras' claims against the Officers individually also do not identify facts to support any of her claims. Contreras was not seized in violation of the Fourth Amendment because she was free to leave during her encounter with the Officers, and she never identified any action by any Officer to restrict her liberty. Though she alleges she was subjected to excessive force, she does not identify which Officer used that force, and she

fails to identify facts to establish any other Officer had an opportunity to intervene to prevent any injury to her. She also failed to identify facts to support her Fourteenth Amendment disability-based equal protection claim, including any differential treatment she received based on an alleged disability, what process she believes was due, or why any specific Officer did not have a rational basis for his interrogation. Regardless, she failed to identify facts to establish *each Officer* violated a clearly established constitutional right, with reference to existing precedent or caselaw that squarely governed the specific facts at issue and that placed the statutory or constitutional question beyond debate, necessary to overcome the Officers' presumed entitlement to qualified immunity.

Finally, the election of remedies provisions of the TTCA provide that Contreras' state law tort claims "shall be dismissed" because she made the irrevocable election to pursue those claims only against the City, and she is now immediately and forever barred from suit or recovery on these claims against the Officers.

WHEREFORE, PREMISES CONSIDERED, Defendants **CITY OF McALLEN, TEXAS, VICTOR RODRIGUEZ IN HIS OFFICIAL CAPACITY, ARTURO PEREZ, ENRIQUE CASTRO, ROGELIO DELGADO, ALDO RODRIGUEZ, OSBALDO PUENTE, JAVIER CAVAZOS** and **FRANCISCO ZAPATA** would respectfully request that Plaintiff's claims against them be dismissed and that Defendants be granted such other and further relief to which they may show themselves to be justly entitled, whether general or special, at law and in equity.

Respectfully submitted,

/ s / *J. Arnold Aguilar*

J. Arnold Aguilar
Attorney-in-Charge
State Bar No. 00936270
S.D. Tex. ID No. 6822
arnold@aguilarzabartellc.com
AGUILAR ZABARTE, LLC
Of Counsel
990 Marine Drive
Brownsville, Texas 78520
(956) 504-1100
(956) 504-1408 (fax)

Austin Stevenson
Of Counsel
astevenson@mcallen.net
State Bar No. 24085961
S.D. Tex. ID No. 3157070
Chad W. Tolar
Of Counsel
State Bar No. 24033394
S.D. Tex. ID No. 37424
CTolar@mcallen.net
**CITY OF MCALLEN**
1300 W. Houston Ave.
McAllen, Texas 78501

Attorneys for Defendants
**CITY OF McALLEN, TEXAS VICTOR RODRIGUEZ IN HIS OFFICIAL CAPACITY, ARTURO PEREZ, ENRIQUE CASTRO, ROGELIO DELGADO, ALDO RODRIGUEZ, OSBALDO PUENTE, JAVIER CAVAZOS** and **FRANCISCO ZAPATA**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED** will on this the 9th day of February, 2026, be automatically accomplished through the Notice of Electronic Filing upon the following:

Courtney A. Vincent
info@vincentlawpllc.com
VINCENT LAW, PLLC
1035 Dairy Ashford, Suite 145
Houston, TX 77079

Benjamin S. Campagna
ben@txattorneygroup.com
David A. Bleakney, Jr.
david@txattorenygroup.com
TX Attorney Group, PLLC

DORIS T. BOBADILLA
DBobadilla@gallowaylawfirm.com
ANDREW S. KRONE
AKrone@gallowaylawfirm.com
GALLOWAY, JOHNSON, TOMPKINS
BURR & SMITH
1301 McKinney Street, Suite 1400
Houston, Texas 77010

/ s / *J. Arnold Aguilar*
J. Arnold Aguilar