**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **NORMALINDA CONTRERAS,**<br>**Plaintiff,** | § § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **7:25-cv-00541** |
| | § | |
| **CITY OF MCALLEN, et. al,**<br>**Defendants.** | § § § § | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO GREYHOUND ET. AL, DEFENDANTS' 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

**COMES NOW** Plaintiff, **NORMALINDA CONTRERAS**, and files this Response in Opposition to the *Rule 12(b)(6) Motion to Dismiss* (Dkt. 16) filed by Defendants Greyhound Lines, Inc., Flix North America, Inc., and FlixBus, Inc. (collectively "Greyhound"), and in support thereof respectfully shows the Court as follows.

Greyhound's Motion seeks dismissal at the pleading stage by treating factual disputes as legal deficiencies, by relying on materials outside the operative pleading to contradict well-pleaded facts, and by recasting proximate cause and foreseeability as issues resolvable as a matter of law. Accepting the well-pleaded allegations of the First Amended Complaint as true, as required under Fed. R. Civ. P. 12(b)(6), Plaintiff has plausibly alleged actionable misconduct by the Greyhound Defendants.

For the reasons set forth below, the Motion should be denied.

## I. SHORT SUMMARY OF THE ARGUMENT

Greyhound's Motion is anchored in the assertion that the independent actions of law enforcement constitute a superseding cause that severs any potential liability as a matter of law. That argument fails at the pleading stage. The *First Amended Complaint* (Dkt. 13) ("FAC") alleges that Greyhound personnel escalated a seating dispute, provided materially false, misleading, or incomplete information to responding officers, and initiated a removal that foreseeably resulted in physical injury. Under Texas law, proximate cause and foreseeability are ordinarily fact questions not resolved on a Rule 12(b)(6) motion.

Greyhound also attempts to rely on a purported boarding document to contradict Plaintiff's allegation that she was issued and confirmed for disability-accessible travel. That document is not attached to the operative pleading, is not attached to the present motion, and in any event does not conclusively negate the well-pleaded allegations of the FAC.

Greyhound further challenges Plaintiff's disability allegations and asserts various technical defenses. At the pleading stage, however, Plaintiff need only plausibly allege a qualifying impairment and actionable conduct. The FAC satisfies that standard.

For these reasons, dismissal is unwarranted.

## II. BRIEF STATEMENT OF FACTS

1. Plaintiff Normalinda Contreras is a permanently disabled individual whose medical conditions require ongoing accommodation. (FAC ¶¶ 28–29).
2. Because of her disability, Plaintiff routinely purchased handicapped-accessible tickets entitling her to reserved accessible seating. (FAC ¶ 30).

3. On November 24, 2023, Plaintiff boarded a FlixBus/Greyhound bus in McAllen after purchasing her usual handicapped-accessible ticket. (FAC ¶¶ 1, 31).

4. The designated disability seating area at the front of the bus was obstructed by luggage. (FAC ¶ 32).

5. When Plaintiff moved a bag in order to access the seat she medically required and had purchased, the driver reacted with hostility and escalated the situation rather than providing accommodation. (FAC ¶¶ 33–34).

6. Instead of resolving the issue through ordinary customer service or ADA-compliant modification, the driver summoned law enforcement. (FAC ¶¶ 36, 78).

7. The FAC alleges that the driver's decision to summon multiple armed officers to address a nonviolent seating dispute created a foreseeable and substantial risk of harm to a disabled passenger. (FAC ¶¶ 81–82).

8. Plaintiff further alleges that but for the driver's refusal to provide the accessible seat and decision to summon police to remove her, the injuries inflicted during the removal would not have occurred. (FAC ¶ 83). The FAC also alleges that the driver, acting within the course and scope of employment, procured and caused Plaintiff's removal by summoning law enforcement to forcibly eject her. (FAC ¶ 176).

## III. INDEPENDENT POLICE ACTION DOES NOT CONSTITUTE A SUPERSEDING CAUSE AS A MATTER OF LAW

### *A. Proximate Cause and Foreseeability Are Ordinarily Questions of Fact Under Texas Law*

9. Under Texas law, proximate cause consists of cause in fact and foreseeability. A defendant's conduct is a cause in fact of an injury if the injury would not have

occurred but for the defendant's conduct and if the conduct was a substantial factor in bringing about the injury. Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by the negligent act. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004).

10. Whether an intervening act constitutes a superseding cause that relieves an original actor of liability is ordinarily a question of fact. An intervening act will not break the causal chain if the intervening conduct was foreseeable or if the defendant's conduct created a situation that made the intervening act likely. See *id*. at 799–800.

11. Dismissal at the pleading stage is appropriate only when superseding cause is established as a matter of law on the face of the pleadings. Where reasonable minds could differ regarding foreseeability or causal connection, the issue is reserved for the trier of fact. See id.; see also *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995).

12. Here, the FAC alleges that Greyhound personnel escalated a nonviolent seating dispute involving a disabled passenger, refused to provide the medically required accessible seat, and summoned approximately eight armed officers to effectuate Plaintiff's removal. (FAC ¶¶ 33–36, 78, 81–83, 176). The FAC further alleges that the driver's actions procured and caused Plaintiff's removal and that the injuries inflicted during that removal would not have occurred but for Greyhound's conduct. (FAC ¶¶ 83, 176).

13. Accepting these allegations as true, the FAC plausibly alleges both cause in fact and

foreseeability.

14. Greyhound also argues that Plaintiff's reference to a 2025 Department of Justice inquiry cannot establish notice or foreseeability in November 2023 and cites *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9 (Tex. 2014). Plaintiff does not dispute that foreseeability is evaluated at the time of the incident.

15. The First Amended Complaint does not rely on any post-incident finding to retroactively impose knowledge. Rather, it alleges the existence of a federal inquiry as contextual evidence of systemic accessibility concerns. (FAC ¶¶ 74–75). In any event, the FAC independently alleges foreseeability based on the driver's escalation of a routine seating dispute involving a visibly disabled passenger and the decision to summon multiple armed officers to effectuate removal. (FAC ¶¶ 33–36, 78, 81–83, 176).

16. *Brookshire* addresses evidentiary sufficiency, not pleading standards under Rule 12(b)(6). Even if the Court were to disregard the DOJ allegations entirely, the FAC still plausibly alleges cause in fact and foreseeability. Whether Greyhound possessed actual or constructive knowledge of systemic accessibility failures presents a fact question not resolved on a motion to dismiss.

***B. The Independent Actions of Law Enforcement Do Not Automatically Sever Liability***

17. Greyhound argues that the actions of responding officers constitute a superseding cause as a matter of law. Texas law does not apply such a per se rule. The involvement of law enforcement does not automatically sever causation where a

defendant's conduct set the chain of events in motion and made the injury foreseeable.

18. An intervening act becomes superseding only when it is so extraordinary and unforeseeable that it breaks the causal connection. At the pleading stage, the Court must accept as true the allegation that Greyhound summoned law enforcement to remove a disabled passenger during a routine seating dispute and that this escalation created a foreseeable risk of physical injury.

19. It is not extraordinary or unforeseeable that summoning multiple armed officers to physically remove a passenger may result in the use of force. Whether the officers' conduct was negligent, excessive, or independent does not eliminate the possibility that Greyhound's actions were a substantial factor in bringing about the harm.

### *C. Greyhound's Authorities Are Distinguishable at the Pleading Stage*

20. Greyhound relies on cases in which courts found superseding cause as a matter of law based on highly attenuated or extraordinary intervening conduct. Those cases involved circumstances materially different from those alleged here and were decided on summary judgment or after factual development, not on a Rule 12(b)(6) motion.

21. The FAC does not allege a remote or speculative chain of causation. It alleges that Greyhound personnel initiated and procured Plaintiff's removal by summoning law enforcement and that the injuries occurred during that removal. (FAC ¶¶ 81–83, 176). These allegations plausibly support a finding that Greyhound's conduct was a substantial factor in the resulting harm.

22. At a minimum, the issues of foreseeability and superseding cause present fact-intensive questions requiring factual development.

23. Accordingly, Greyhound's superseding-cause argument does not warrant dismissal.

## IV. PLAINTIFF HAS PLAUSIBLY ALLEGED A QUALIFYING DISABILITY

24. Greyhound argues that Plaintiff has not adequately alleged a qualifying disability. That argument misapplies the pleading standard.

25. To state a claim under the ADA or Rehabilitation Act, a plaintiff must plausibly allege that she has a physical or mental impairment that substantially limits one or more major life activities. See 42 U.S.C. § 12102(1). At the pleading stage, detailed medical documentation is not required. The complaint need only contain sufficient factual matter to render the claim plausible.

26. The FAC alleges that Plaintiff is permanently disabled and suffers from medical conditions requiring ongoing accommodation. (FAC ¶¶ 28–29). It further alleges that she routinely purchases handicapped-accessible tickets, requires accessible seating, and descended the bus steps slowly due to observable mobility limitations. (FAC ¶¶ 30–31, 49). The FAC also alleges that her disability was apparent during the encounter and required accommodation. (FAC ¶¶ 28–30, 33).

27. These allegations go beyond a bare legal conclusion. They identify the existence of a medical condition, describe its functional impact, and explain why accommodation was necessary in the circumstances at issue.

28. Greyhound's reliance on cases dismissing complaints that merely recited statutory language is misplaced. The FAC does not simply allege that Plaintiff is "disabled"

in a conclusory fashion. It alleges permanent impairment, mobility limitations, the need for accessible seating, and the circumstances in which accommodation was required.

29. Whether Plaintiff's impairment ultimately satisfies the statutory definition is a merits question not resolved under Rule 12(b)(6). Accepting the allegations as true, the FAC plausibly alleges a qualifying disability.

30. Accordingly, dismissal on this basis is unwarranted.

## V. PLAINTIFF HAS PLAUSIBLY ALLEGED NEGLIGENCE AND DIRECT LIABILITY

31. Greyhound argues that Plaintiff's negligence claims fail because the actions of law enforcement constitute a superseding cause and because Greyhound allegedly owed no actionable duty beyond summoning police. Neither argument warrants dismissal.

### *A. Duty and Breach Are Plausibly Alleged*

32. Under Texas law, a common carrier owes its passengers a high degree of care consistent with the practical operation of its business. The FAC alleges that Greyhound, through its driver, refused to provide the accessible seating Plaintiff medically required, escalated a routine seating dispute, and summoned multiple armed officers to effectuate removal rather than resolving the issue through ordinary customer service or ADA-compliant accommodation. (FAC ¶¶ 33–36, 78, 81–83).

33. These allegations plausibly describe conduct that a factfinder could determine fell below the standard of reasonable care owed to a passenger.

34. Greyhound's characterization of the driver's conduct as merely "calling police"

oversimplifies the pleaded facts. The FAC alleges escalation, procurement of removal, and foreseeable risk, not a neutral request for assistance.

### *B. Proximate Cause Is Adequately Pleaded*

35. As discussed above, the FAC alleges that but for the driver's refusal to provide the accessible seat and decision to summon law enforcement to remove Plaintiff, the injuries inflicted during that removal would not have occurred. (FAC ¶ 83). The FAC further alleges that the driver's conduct was a substantial factor in bringing about the injury. (FAC ¶ 176).

36. At the pleading stage, these allegations are sufficient to establish cause in fact and foreseeability. Whether Greyhound's conduct was a substantial factor in the resulting harm is a question for the trier of fact.

### *C. The Negligence Claims Are Not Derivative of Police Conduct*

37. Greyhound suggests that because officers ultimately applied force, any negligence claim is derivative of police conduct. That framing misconstrues the theory of liability. Plaintiff does not allege that Greyhound is vicariously liable for police conduct. Rather, she alleges that Greyhound's own actions – refusing accommodation, escalating the dispute, and procuring removal – set in motion a foreseeable chain of events that resulted in injury.

38. Texas law recognizes that multiple actors may concurrently contribute to an injury, and each may remain liable if his or her conduct was a substantial factor in producing the harm. See *Mason*, 143 S.W.3d at 799–800. The existence of independent negligence by another actor does not automatically absolve the initial

wrongdoer.

39. Accepting the well-pleaded allegations as true, Plaintiff has plausibly alleged negligence and direct liability against Greyhound.

40. Accordingly, dismissal of the negligence claims is unwarranted.

## VI. WRONGFUL EJECTION

41. Under Texas law, a common carrier owes its passengers a high degree of care and may not wrongfully expel a passenger who is entitled to transportation. A carrier breaches that duty when it causes or procures the removal of a passenger without lawful justification.

42. Greyhound attempts to avoid liability by arguing that law enforcement, not the bus operator, physically removed Plaintiff. That framing does not defeat the claim at the pleading stage. A carrier cannot insulate itself from liability for wrongful ejection merely because removal is carried out by police officers rather than by the carrier's own employee.

43. Under Texas law, a defendant remains liable where its conduct is a substantial factor in bringing about the injury and the harm is a foreseeable consequence of that conduct, even if another actor participates in the chain of events. See *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799–800 (Tex. 2004).

44. If the carrier initiates, directs, or procures the removal without proper basis, liability may attach even if officers execute the physical removal.

45. The *First Amended Complaint* alleges that Plaintiff was a ticketed passenger entitled

to disability-accessible seating that she had purchased and medically required. (FAC ¶ 155). It further alleges that the driver, acting within the course and scope of employment, refused to clear the accessible seating area, escalated a non-criminal dispute, and summoned multiple armed officers to forcibly remove Plaintiff from the bus. (FAC ¶¶ 156, 176). The FAC expressly alleges that the driver's conduct was a substantial factor in causing Plaintiff's injuries and that the involvement of law enforcement was a foreseeable consequence of escalating a routine accommodation dispute. (FAC ¶ 158).

46. Greyhound emphasizes that Sergeant Cavazos exercised command authority and ordered Plaintiff's removal. Even accepting that allegation as true, it does not defeat the wrongful ejection claim at the pleading stage. The FAC alleges that the removal occurred only after the driver summoned law enforcement to address a seating dispute that could have been resolved through ordinary customer service measures.

47. Whether Greyhound's conduct was a substantial factor in causing Plaintiff's removal, and whether the removal was legally justified under the circumstances, are fact questions not suitable for resolution on a Rule 12(b)(6) motion.

48. Accepting the well-pleaded allegations as true, Plaintiff has plausibly alleged that Greyhound, through its employee, procured and caused her removal from the bus without lawful justification. Dismissal of the wrongful ejection claim is therefore unwarranted.

## VII. <u>TEXAS DECEPTIVE TRADE PRACTICES ACT</u>

49. Greyhound argues that Plaintiff's DTPA claim fails because she did not provide the

60-day pre-suit notice required under Tex. Bus. & Com. Code § 17.505(a). (Dkt. 16 at 17). Plaintiff acknowledges that pre-suit notice was not provided prior to filing suit.

50. Under Texas law, however, the failure to provide DTPA notice does not mandate dismissal. The Texas Supreme Court has made clear that the proper remedy for lack of notice is abatement to allow the claimant to comply with the statutory requirement. See *Hines v. Hash*, 843 S.W.2d 464, 468–69 (Tex. 1992) (holding that the appropriate remedy for failure to provide § 17.505 notice is abatement to permit compliance, not dismissal of the claim).

51. The *First Amended Complaint* alleges that Greyhound misrepresented the nature of the disability-accessible ticket purchased by Plaintiff and denied her the benefit of the accommodation she required and paid for. (FAC ¶¶ 155, 188). Whether those allegations ultimately support DTPA liability is a merits question separate from the procedural notice requirement.

52. At the pleading stage, the absence of pre-suit notice does not defeat the plausibility of the underlying claim. At most, it supports temporary abatement to permit compliance with § 17.505(a).

53. Accordingly, should the Court determine that statutory notice was required and not excused, Plaintiff respectfully requests abatement of the DTPA claim, if necessary, rather than dismissal.

## VIII. NEGLIGENCE PER SE

54. Greyhound argues that Plaintiff's negligence per se claim fails because the ADA,

its implementing regulations, and related accessibility statutes are anti-discrimination provisions rather than safety standards. (Dkt. 16 at 8–9). That argument oversimplifies both the statutes and the negligence per se doctrine.

55. Under Texas law, negligence per se applies when a statute sets a standard of conduct designed to protect a class of persons from the type of harm that occurred. The inquiry is whether the plaintiff belongs to the class the statute seeks to protect and whether the injury is of the type the statute was intended to prevent. See *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278–79 (Tex. 1979).

56. Under Texas law, whether a statutory provision supplies the standard of care for purposes of negligence per se depends on legislative intent and the relationship between the statute and the type of injury alleged. See *Perry v. S.N.*, 973 S.W.2d 301, 305–06 (Tex. 1998).

57. The ADA and *Texas Human Resources Code Chapter 121* were enacted to ensure that individuals with disabilities are not denied meaningful access to public accommodations and transportation services. The implementing regulations governing common carriers impose specific accessibility obligations, including requirements concerning accessible seating and reasonable modification of policies. These provisions impose concrete operational requirements governing accessible seating and reasonable modification in transportation settings and how carriers must treat disabled passengers.

58. The *First Amended Complaint* alleges that Greyhound denied Plaintiff access to the disability-accessible seating she required, refused to modify policies to

accommodate her limitations, and escalated the dispute rather than comply with accessibility obligations. (FAC ¶¶ 155–158, 160–166). The alleged physical injuries occurred in the course of enforcing that denial. At minimum, whether the statutory violations alleged were intended to prevent the type of harm suffered presents a fact-intensive inquiry not suitable for resolution under Rule 12(b)(6).

59. Accordingly, dismissal of the negligence per se claim at the pleading stage is unwarranted.

## IX. DISABILITY-BASED STATUTORY CLAIMS

60. Greyhound renews its argument that the FAC fails to plausibly allege a qualifying disability and fails to state a claim under the ADA or related statutes. (Dkt. 16 at 2, 19–20). At the pleading stage, that argument is unpersuasive.

61. The FAC alleges that Plaintiff is permanently disabled, that her medical condition limits her mobility, and that she requires disability-accessible seating when traveling. (FAC ¶¶ 28–31, 155). These factual allegations go beyond a bare legal label and describe a physical impairment affecting major life activities, including mobility. At the Rule 12(b)(6) stage, such allegations are sufficient to plausibly plead a qualifying disability.

62. The FAC further alleges that Plaintiff purchased a disability-accessible ticket, that the designated accessible seating area was obstructed, and that Greyhound's employee refused to clear the area or provide the accommodation medically required. (FAC ¶¶ 31–34, 155–156). The denial of accessible seating and refusal to modify policies for a disabled passenger plausibly state a claim for discriminatory

denial of access to transportation services under Title III and related statutes.

63. Greyhound's reliance on the boarding pass to negate entitlement to accessible seating does not defeat the statutory claim at the pleading stage. The FAC alleges that Plaintiff requested and required accessible accommodation, and whether Greyhound's documentation systems reflected that accommodation is a factual dispute not suitable for resolution on a Rule 12(b)(6) motion.

64. To the extent Greyhound challenges standing for prospective injunctive relief under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), that argument does not warrant dismissal of the statutory claims at this stage. The FAC alleges denial of accessible transportation services to a disabled passenger. Whether Plaintiff can demonstrate a real and immediate threat of future harm sufficient to support prospective relief is a question that may be addressed on a fuller record.

65. In any event, Plaintiff's claims for compensatory and economic damages arise independently under the Rehabilitation Act and Texas law. Accepting the well-pleaded allegations as true, Plaintiff has plausibly alleged discriminatory denial of accommodation and exclusion from the benefits of transportation services because of her disability.

66. Dismissal at this stage is unwarranted.

## X. BREACH OF CONTRACT

67. Greyhound argues that the boarding pass conclusively establishes that Plaintiff purchased a standard "Adult" seat and therefore had no contractual entitlement to disability-accessible seating. (Dkt. 16 at 6–8, 10–11). That argument construes the

contract too narrowly and resolves factual disputes in Greyhound's favor at the pleading stage.

68. A transportation contract between a common carrier and a passenger encompasses more than the printed seat designation. It includes the agreement to transport the passenger subject to applicable policies, representations made during the ticketing process, and legal obligations governing accessibility. The *First Amended Complaint* alleges that Plaintiff purchased a disability-accessible ticket and that Greyhound accepted payment for that accommodation. (FAC ¶¶ 30–31, 155, 188). Those allegations must be accepted as true at this stage.

69. Greyhound's reliance on the boarding pass does not defeat plausibility. The boarding pass is not attached to the *First Amended Complaint* and is not attached to Defendants' present *Motion to Dismiss*. At the pleading stage, the Court must accept the well-pleaded allegations of the FAC as true and may not resolve factual disputes in Defendants' favor based on a document that purportedly contradicts those allegations.

70. Even where a document is referenced in a complaint, dismissal is appropriate only where the document conclusively negates the pleaded claim. At this stage, the boarding pass does not conclusively establish that no accessible accommodation was requested, confirmed, or promised during the ticketing process.

71. Whether Plaintiff requested accessible seating, whether such accommodation was confirmed during booking or at the station, and whether Greyhound's systems accurately reflected that accommodation are factual matters not appropriate for

resolution on a motion to dismiss.

72. The FAC further alleges that Greyhound denied Plaintiff the benefit of the transportation service she purchased by refusing to provide accessible seating and by escalating the dispute rather than honoring the accommodation. (FAC ¶¶ 155–158). Whether the ticketing transaction included an agreement to provide disability-accessible accommodation presents a factual dispute not suitable for resolution under Rule 12(b)(6).

73. Accepting the well-pleaded allegations as true, Plaintiff has plausibly alleged the existence of a contract, performance, breach, and resulting damages.

74. Dismissal of the breach of contract claim is therefore unwarranted.

## XI. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

75. Greyhound argues that Plaintiff's claim for intentional infliction of emotional distress ("IIED") is barred by Texas's "gap-filler" doctrine because other statutory and common-law remedies are alleged. (Dkt. 16 at 17–18). That argument cannot be resolved at the pleading stage.

76. Under Texas law, IIED functions as a gap-filler where no other theory of recovery provides a remedy for extreme and outrageous conduct. See *Hoffmann-La Roche Inc. v. Zeltwanger,* 144 S.W.3d 438, 447–48 (Tex. 2004). However, dismissal on that basis is appropriate only where the gravamen of the complaint is fully subsumed by another viable cause of action.

77. The *First Amended Complaint* alleges conduct that, if proven, includes the escalation of a disability-accommodation dispute into a public removal in the

presence of other passengers and the procurement of law enforcement intervention against a visibly disabled passenger. (FAC ¶¶ 156–158). To the extent other theories do not afford complete relief for the extreme emotional harm alleged, IIED may operate as an alternative theory.

78. Federal pleading rules expressly permit claims to be pleaded in the alternative. Fed. R. Civ. P. 8(d). At this stage, it cannot be determined whether other claims will provide complete relief or whether the alleged conduct falls exclusively within another remedial framework.

79. Accordingly, dismissal of the IIED claim at the pleading stage is unwarranted.

## XII. LIABILITY FOR KNOWINGLY PROVIDING FALSE INFORMATION AND PROCURING POLICE ACTION

80. Greyhound argues that it cannot be liable because law enforcement independently ordered and executed Plaintiff's removal. (Dkt. 16 at 8–9). That argument assumes the police acted on neutral and accurate information. The *First Amended Complaint* alleges otherwise.

81. The FAC alleges that the bus driver knowingly made false and misleading statements to responding officers portraying Plaintiff as disruptive or noncompliant when she had committed no misconduct and posed no safety threat. (FAC ¶ 198). The FAC further alleges that these statements were made for the purpose of inducing police intervention and removal. (FAC ¶ 200).

82. Under Texas law, a defendant may be liable where it knowingly provides false information that foreseeably results in detention, use of force, or physical injury. The issue is not merely that Greyhound summoned police. The issue is whether

Greyhound, through its employee, materially misrepresented the situation in a manner that influenced the officers' decision to remove Plaintiff. See *Mason*, 143 S.W.3d at 799–800.

83. The FAC alleges that, as a direct and proximate result of the driver's false statements and initiation of police action, Plaintiff was forcibly removed and physically injured. (FAC ¶¶ 201, 205). If officers relied upon materially false information in exercising their discretion, their actions do not automatically constitute a superseding cause as a matter of law. Proximate cause and foreseeability under these circumstances present classic fact questions not suitable for resolution under Rule 12(b)(6).

84. Plaintiff does not premise this claim on reputational harm. Rather, the gravamen of the claim is the procurement of police action through knowingly false statements that foreseeably resulted in physical removal and injury.

85. Accepting the well-pleaded allegations as true, dismissal is unwarranted.

## XIII. CONCLUSION

For the foregoing reasons, Plaintiff has plausibly alleged actionable claims against the Greyhound Defendants. The ***First Amended Complaint*** sets forth sufficient factual matter, accepted as true, to state claims for negligence, wrongful ejection, breach of contract, disability-based statutory violations, and related causes of action under applicable law. The issues raised in Defendants' Motion largely concern foreseeability, causation, intent, and justification, all fact-intensive matters not suitable for resolution under Rule 12(b)(6).

Accordingly, Defendants' *Motion to Dismiss* (Dkt. 16) should be denied in its

entirety. In the alternative, should the Court determine that pre-suit notice under Tex. Bus. & Com. Code § 17.505(a) was required, Plaintiff respectfully requests abatement of the DTPA claim for the statutory notice period rather than dismissal.

Plaintiff further requests such other and further relief to which she may be justly entitled.

Date: 03/02/2026

Respectfully Submitted,

*/s/Courtney A. Vincent*
**Courtney A. Vincent**
Minnesota Bar No. 0403083
SDTX Bar No. 3746531
**info@vincentlawpllc.com**
VINCENT LAW, PLLC
1035 Dairy Ashford, Suite 145
Houston, Texas 77079
**Mailing Address:**
P.O. Box 940129
Houston, Texas 77094
Tel: (713) 223-9300
Fax: (832)603-4444
**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March 2026, a true and correct copy of the foregoing Plaintiff's Response in Opposition to City Defendants' 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint was filed electronically with the Clerk of Court using the CM/ECF system, which will send notice of such filing to all counsel of record who have appeared in this action.

Respectfully submitted,

*/s/ Courtney A. Vincent*
**Courtney A. Vincent**