**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **NORMALINDA CONTRERAS,** <br> **Plaintiff,** <br><br> **v.** <br><br> **CITY OF MCALLEN, et. al,** <br> **Defendants.** | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | **CIVIL ACTION NO.** <br> **7:25-cv-00541** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO CITY DEFENDANTS' 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**COMES NOW** Plaintiff, **NORMALINDA CONTRERAS**, and files this *Response in Opposition to the City Defendants' Motion to Dismiss Plaintiff's First Amended Complaint* (Dkt. 14), and in support thereof respectfully shows the Court as follows. Defendants' *Motion* is lengthy; Plaintiff nevertheless responds in full in the interest of judicial efficiency.

## I. SHORT SUMMARY OF THE ARGUMENT

Defendants seek dismissal of *Plaintiff's First Amended Complaint* ("FAC") at the pleading stage by reframing well-pleaded factual allegations as legal deficiencies and by demanding evidentiary proof not required under Fed. R. Civ. P. 12(b)(6).

Accepting the allegations as true, as the Court must, Plaintiff has plausibly alleged that seven to eight McAllen police officers responded to a non-criminal seating dispute involving a disabled passenger, surrounded her, exercised command authority, and ordered her off the bus without probable cause. While Plaintiff was compliant and slowly

descending the bus steps due to her visible disability, an officer positioned directly behind her drove his knee into her lower back, causing her to fall and sustain documented injuries. Other officers present observed the force and failed to intervene.

These allegations state plausible claims for:

1. Unreasonable seizure in violation of the Fourth Amendment;
2. Excessive force;
3. Failure to intervene;
4. Disability-based discrimination;
5. Municipal liability under Monell based on training, supervision, and ratification failures.

Defendants' Motion seeks to resolve factual disputes, demands identification of the specific officer who applied force before discovery, and invokes qualified immunity despite clearly established law prohibiting the use of gratuitous force against compliant, non-threatening individuals during non-emergency encounters. The absence of any crime, threat, or resistance is central to the qualified immunity analysis.

Qualified immunity does not shield officers who apply objectively unreasonable force under settled law.

Accordingly, the Motion should be denied.

## II. <u>STATEMENT OF FACTS NECESSARY TO RESOLUTION OF THE MOTION</u>

1. On November 24, 2023, Plaintiff Normalinda Contreras, a permanently disabled grandmother, boarded a commercial bus in McAllen, Texas using a handicapped-accessible ticket entitling her to reserved disability seating. Plaintiff's disability is medically documented and requires accommodation. (FAC ¶¶ 60, 61).

2. After a dispute arose regarding access to the designated accessible seat, the bus driver summoned the McAllen Police Department. The dispute involved no criminal conduct.

3. Seven to eight armed McAllen Police Department officers responded to the scene, including Sgt. Javier Cavazos and the individually named officer Defendants. Upon arrival, the officers assumed control of the encounter.

4. Officers surrounded Plaintiff, positioned themselves around her, controlled her movement, and exercised police authority over her. She was ordered to exit the bus and was not free to refuse compliance, remain seated, or terminate the encounter. (FAC ¶¶ 44–46). The seizure occurred despite the absence of probable cause, reasonable suspicion, or any criminal violation.

5. Sgt. Cavazos, the ranking officer, directed that Plaintiff be removed from the bus. Plaintiff complied with officers' commands and began descending the bus stairs slowly due to her visible disability and limited mobility.

6. While Plaintiff was descending the steps, an officer positioned directly behind her, within arm's reach, used his knee to aggressively push or strike Plaintiff in her lower back. (FAC ¶ 51). The force propelled Plaintiff forward, causing her to lose balance and fall down the bus steps. (FAC ¶ 52).

7. At the time force was used, Plaintiff was compliant, non-threatening, and not resisting. The encounter involved no emergency, no flight, and no safety threat requiring immediate force.

8. Multiple officers were present in close proximity during Plaintiff's removal. The

encounter unfolded over sufficient time for officers to observe the events and intervene before and after force was used. Nevertheless, no officer intervened to prevent or mitigate the use of force. (FAC ¶¶ 53–54).

9. Officers did not render medical assistance or summon emergency services following Plaintiff's fall, (FAC ¶¶ 57–58) and Plaintiff sustained documented physical injuries as a result.

10. Plaintiff has alleged that the identity of the officer who applied the knee strike is uniquely within Defendants' knowledge and control. Plaintiff sought body-worn camera footage and related reports through public-records requests, but the City did not produce those materials prior to this litigation.

## III. ARGUMENT AND AUTHORITIES

### *A. Standard of Review.*

11. Under Fed. R. Civ. P. 12(b)(6), the Court must accept well-pleaded factual allegations as true and determine whether they plausibly state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12. When qualified immunity is raised at the pleading stage, dismissal is improper if the complaint alleges facts that, taken as true, establish a constitutional violation and that the right was clearly established at the time of the conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

13. At this stage, the Court does not resolve factual disputes or weigh competing versions of events. The question is whether Plaintiff's factual allegations, accepted as true, plausibly allege objectively unreasonable conduct under clearly established law.

***B. Plaintiff Plausibly Alleges a Fourth Amendment Seizure.***

14. A seizure occurs when an officer, through physical force or a show of authority, restrains a person's liberty such that a reasonable person would not feel free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); United States v. Mask, 330 F.3d 330, 336 (5th Cir. 2003).

15. Plaintiff alleges that seven to eight armed McAllen Police Department officers responded to a non-criminal seating dispute, surrounded her, positioned themselves around her, and exercised police authority over her. She was ordered to exit the bus and was not free to refuse compliance, remain seated, or terminate the encounter. Plaintiff further alleges the absence of probable cause, reasonable suspicion, or any criminal violation.

16. The scale of the police response further supports the plausibility of a seizure. The presence of seven to eight armed officers exercising coordinated authority in the confined environment of a commercial bus would communicate to a reasonable person that compliance was required. The numerosity and show of force are relevant to whether a reasonable person would feel free to disregard police commands.

17. These allegations plausibly establish a Fourth Amendment seizure. Defendants characterize the encounter as consensual, but the pleaded facts allege a show of authority and restraint of movement. Whether officers subjectively believed the encounter was voluntary is not the question at this stage. The *First Amended Complaint* alleges a show of authority and restraint of movement sufficient to constitute a seizure.

18. Dismissal of the unlawful seizure claim is therefore improper.

### *C. Plaintiff Plausibly Alleges Excessive Force Under Clearly Established Law.*

19. Claims of excessive force during a seizure are evaluated under the objective reasonableness standard articulated in *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts consider the severity of the crime at issue, whether the individual posed an immediate threat to officer safety, and whether the individual was actively resisting or attempting to flee.

20. Each *Graham* factor weighs in Plaintiff's favor based on the allegations in the *First Amended Complaint.* (FAC ¶¶ 46, 55–56).

21. Plaintiff alleges there was no crime, no probable cause, and no reasonable suspicion justifying police intervention. Officers responded to a seating dispute involving a disabled passenger. Plaintiff further alleges she was compliant, non-threatening, not resisting, and descending bus steps slowly due to her visible disability. The encounter involved no emergency and no safety threat requiring immediate force. (FAC ¶¶ 55–56).

22. Despite these circumstances, Plaintiff alleges that an officer positioned directly behind her used his knee to aggressively push or strike her lower back while she was descending the bus stairs, causing her to lose balance and fall. (FAC ¶ 51). The force was applied in a confined stairwell environment where the risk of serious injury from forward propulsion was obvious.

23. The Fifth Circuit has long held that force against a compliant, non-threatening individual during a routine encounter is objectively unreasonable. In *Bush v. Strain*,

513 F.3d 492, 501–02 (5th Cir. 2008), the court explained that although some injuries are too minor to satisfy the injury element as a matter of law, an injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible, that is, objectively unreasonable under the circumstances. The need for force determines how much force is constitutionally permissible.

24. Here, Plaintiff alleges no need for force at all. There was no crime, no immediate threat to officer safety, and no active resistance. (FAC ¶¶ 55–56). She was compliant, not suspected of a crime, and posed no threat. Under *Bush* and *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009), significant force used during a non-emergency encounter where the individual is not actively resisting violates clearly established law. Those decisions predate the events at issue by more than a decade. Applying force sufficient to propel a disabled individual forward on a staircase under these circumstances falls within that clearly established prohibition.

25. Defendants argue that Plaintiff failed to identify the specific officer who delivered the knee strike. The *First Amended Complaint*, however, alleges that the officer positioned directly behind Plaintiff applied the force and that the identities of the officers present are known to Defendants. At the pleading stage, Plaintiff is required to allege plausible facts, not to possess body-worn camera footage or internal reports exclusively within Defendants' control. The alleged lack of officer identification does not defeat plausibility where the complaint identifies the group of officers present and the role of the officer positioned behind Plaintiff during the removal.

26. Accepting the allegations as true, Plaintiff has plausibly alleged objectively

unreasonable force in violation of clearly established Fourth Amendment law. Qualified immunity therefore does not warrant dismissal at this stage.

***D. Plaintiff Plausibly Alleges Failure to Intervene.***

27. An officer who is present at the scene and fails to take reasonable measures to protect a person from another officer's use of excessive force may be held liable under 42 U.S.C. § 1983. An officer is liable where he observes or has reason to know that excessive force is being used and has a reasonable opportunity to intervene but fails to act. See *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995); *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

28. Plaintiff alleges that seven to eight armed officers responded to the bus, surrounded her, and exercised coordinated authority during her removal. Multiple officers were present in close proximity while Plaintiff was ordered off the bus and while she descended the stairwell. (FAC ¶¶ 50, 53–54).

29. The *First Amended Complaint* alleges that an officer positioned directly behind Plaintiff applied force by striking her lower back with his knee, causing her to fall. Plaintiff further alleges that the encounter unfolded over sufficient time for officers present to observe the events before and after force was used.

30. Given the confined stairwell setting, the proximity of multiple officers, and the absence of any emergency or active resistance, it is plausible that officers present had a reasonable opportunity to intervene to prevent or mitigate the use of force but failed to do so.

31. At the pleading stage, Plaintiff is not required to identify which specific officer failed

to intervene where the complaint alleges that multiple officers were present, participating in the coordinated removal, and positioned in close proximity to the use of force. Whether a particular officer had a realistic opportunity to intervene is a fact-bound inquiry not appropriate for resolution on a Rule 12(b)(6) motion.

32. Accepting the allegations as true, Plaintiff has plausibly alleged a failure-to-intervene claim. Dismissal of this claim is therefore improper.

***E. The Right at Issue Was Clearly Established.***

33. To defeat qualified immunity, Plaintiff must show that the constitutional right at issue was clearly established at the time of the conduct. A right is clearly established when existing precedent places the constitutional question beyond debate in light of the specific context of the case.

34. Well before November 24, 2023, the Fifth Circuit had clearly established that force used against a compliant, non-threatening individual during a routine, non-emergency encounter violates the Fourth Amendment. In *Bush v. Strain*, 513 F.3d 492, 501–02 (5th Cir. 2008), the court held that force applied to a restrained and non-resisting individual was objectively unreasonable and unconstitutional. In *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009), the court held that significant force used during a routine encounter where the individual was not actively resisting violated clearly established law.

35. These decisions provided fair warning that an officer may not apply unnecessary force to a compliant individual who poses no threat and is not resisting. The law did not require a case involving identical facts or a bus stairwell. It required notice that

gratuitous force under similar non-threatening circumstances is unlawful.

36. Even without a case involving identical facts, the unlawfulness of gratuitous force against a compliant, non-threatening individual in a controlled setting was sufficiently clear that every reasonable officer would understand the conduct to be unlawful.

37. Accepting the allegations as true, Plaintiff was compliant, not suspected of a crime, not resisting, and posed no safety threat when force was applied. Under existing Fifth Circuit precedent, an objectively reasonable officer would have understood that using force sufficient to propel a disabled individual forward while descending stairs during a non-emergency removal was unconstitutional.

### *F. Qualified Immunity Does Not Warrant Dismissal at the Pleading Stage.*

37. Qualified immunity shields officers from liability only when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. When the complaint plausibly alleges both a constitutional violation and clearly established law prohibiting the conduct, dismissal under Rule 12(b)(6) is improper.

38. As alleged, Plaintiff was compliant, not suspected of a crime, not resisting, and posed no safety threat. Despite these circumstances, an officer positioned directly behind her applied force by striking her lower back with his knee while she was descending bus steps, causing her to fall. Other officers present failed to intervene.

39. Under Bush and Deville, it was clearly established that gratuitous force against a compliant, non-threatening individual during a routine encounter violates the Fourth

Amendment. Accepting the allegations as true, no objectively reasonable officer could conclude that such force was lawful.

40. Defendants' argument that Plaintiff failed to identify the specific officer who delivered the knee strike does not alter this analysis. The *First Amended Complaint* identifies the officers present, alleges that the officer positioned directly behind Plaintiff applied the force, and alleges that the identities of the officers involved are within Defendants' control. The plausibility of the constitutional violation does not depend on Plaintiff's access to body-worn camera footage prior to discovery. Defendants cannot invoke qualified immunity based on a lack of officer identification where the alleged facts describe the conduct of an officer positioned directly behind Plaintiff during a coordinated removal involving identified officers.

41. At this stage, the Court must accept Plaintiff's factual allegations as true and draw reasonable inferences in her favor. Viewed in that light, the *First Amended Complaint* states a violation of clearly established law. Qualified immunity therefore does not warrant dismissal.

**G. Plaintiff Adequately Pleads Municipal Liability Under Monell.**

42. A municipality may be held liable under 42 U.S.C. § 1983 when execution of its policy or custom inflicts the constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipal liability may arise from an official policy, a widespread practice, or a failure to train or supervise that amounts to deliberate indifference to constitutional rights.

43. Plaintiff alleges that the City failed to adequately train and supervise its officers regarding the use of force during non-emergency encounters, de-escalation techniques, and interaction with disabled individuals. (FAC ¶¶ 70–71). The *First Amended Complaint* further alleges that these training deficiencies were a moving force behind the violation of Plaintiff's Fourth Amendment rights.

44. Officers responded in significant numbers to a non-criminal seating dispute involving a disabled passenger, assumed control of the encounter, and applied force during a controlled removal without any immediate threat or resistance. The predictable consequence of failing to train officers in de-escalation and disability-sensitive removal procedures is the unnecessary use of force during routine encounters such as this one.

45. Deliberate indifference may be shown where the need for training is obvious and the likely consequences of failing to train are highly predictable. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). At the pleading stage, a plaintiff is not required to identify prior adjudicated incidents where the need for training is obvious and the risk of constitutional violation is highly predictable. *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018). Plaintiff alleges that the City failed to ensure its officers were properly trained to handle non-emergency removals involving vulnerable individuals, and that this failure directly resulted in the unconstitutional use of force. The *First Amended Complaint* alleges that these deficiencies were a moving force behind Plaintiff's injury. (FAC ¶ 71).

46. Plaintiff further alleges that supervisory officials, including command-level personnel present at the scene, directed and participated in the removal.

47. The *First Amended Complaint* alleges that the City failed to correct or meaningfully address the conduct following the incident. At the pleading stage, these allegations plausibly support a ratification theory sufficient to survive dismissal. (FAC ¶¶ 62–63).

48. Defendants argue that Plaintiff failed to plead a pattern of similar violations. However, detailed evidence of prior incidents is not required at the pleading stage. Plaintiff must allege facts that plausibly suggest municipal liability, not prove it. The *First Amended Complaint* alleges training deficiencies, policymaker involvement, and causation sufficient to meet FRCP 8.

49. Accepting the allegations as true, Plaintiff has plausibly alleged that municipal policies, training deficiencies, and ratification were moving forces behind the constitutional violations. Dismissal of the Monell claim is therefore improper.

***H. Plaintiff Plausibly Alleges a Violation of Title II of the ADA.***

49. Title II of the Americans with Disabilities Act provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132. Law enforcement services fall within the scope of Title II and law enforcement response and resolution of disputes constitute services within the meaning of Title II.

50. Plaintiff alleges that she is a permanently disabled individual with documented mobility limitations requiring accessible seating and accommodation. (FAC ¶¶ 60–61). She further alleges that her limited mobility was visible and that she descended the bus steps slowly due to her disability.

51. Plaintiff alleges that officers were aware, or should have been aware, of her disability and her need for accommodation during the encounter. (FAC ¶¶ 49, 55). Rather than providing reasonable accommodation, officers assumed control of the situation and removed her from the bus without modification of procedures to account for her mobility limitations.

52. Title II requires public entities to make reasonable modifications when necessary to avoid discrimination on the basis of disability, unless doing so would fundamentally alter the nature of the service. Plaintiff alleges that no emergency, threat, or active resistance justified the failure to accommodate her mobility limitations during the removal process.

53. The ***First Amended Complaint*** further alleges that the City failed to train its officers regarding ADA compliance and disability-sensitive interaction during non-emergency encounters. Accepting these allegations as true, it is plausible that officers failed to modify standard procedures because of Plaintiff's known mobility limitations, resulting in discrimination by reason of disability.

54. To the extent compensatory damages are sought, Plaintiff alleges conduct rising above mere negligence. Proceeding with removal without modification despite visible mobility limitations plausibly reflects conscious disregard of a known risk. The *First*

*Amended Complaint* alleges that officers proceeded with removal despite Plaintiff's visible limitations and lack of resistance, and without modifying procedures to reduce the risk of injury. At the pleading stage, these allegations plausibly support deliberate indifference. (FAC ¶¶ 70–71, 131–132).

55. Accepting the allegations as true, Plaintiff has plausibly alleged that she was denied the benefits of public law enforcement services and subjected to discrimination by reason of her disability. Dismissal of the ADA claim is therefore improper.

### ***I. Plaintiff's State-Law Claims Are Not Barred by the Texas Tort Claims Act.***

56. Defendants argue that the Texas Tort Claims Act election-of-remedies provision bars Plaintiff's state-law claims against the individual officers. That argument misstates the pleading.

57. Plaintiff expressly elected to proceed only against the individual officers on her state-law claims and expressly did not pursue those claims against the City under the TTCA. (FAC ¶ 139). The *First Amended Complaint* pleads the state-law causes of action in the alternative and clarifies that Plaintiff is not proceeding against the City under the Act.

58. Because Plaintiff has not sued the City under the TTCA for those state-law claims, the election-of-remedies provision does not operate to mandate dismissal of the individual officers.

59. To the extent Defendants contend that the officers were acting within the scope of employment and are therefore entitled to dismissal under § 101.106, that argument

raises factual and legal determinations not appropriate for resolution at the pleading stage where the claims are pleaded in the alternative. Whether the officers acted within the scope of employment for purposes of § 101.106 presents a fact-intensive inquiry inappropriate for resolution on a Rule 12(b)(6) motion where Plaintiff pleads alternative theories.

60. Dismissal of the state-law claims against the individual officers is therefore unwarranted.

## IV. CONCLUSION

60. Accepting the well-pleaded allegations as true and drawing all reasonable inferences in Plaintiff's favor, the *First Amended Complaint* plausibly alleges violations of clearly established constitutional and statutory rights.

61. Defendants' Motion seeks resolution of factual disputes and evidentiary issues not appropriate at the pleading stage. For the reasons stated above, the Motion to Dismiss should be denied in its entirety.

Date: 02/02/2026

Respectfully Submitted,

*/s/Courtney A. Vincent*

**Courtney A. Vincent**
Minnesota Bar No. 0403083
SDTX Bar No. 3746531
**info@vincentlawpllc.com**
VINCENT LAW, PLLC
1035 Dairy Ashford, Suite 145
Houston, Texas 77079
**Mailing Address:**
P.O. Box 940129
Houston, Texas 77094
Tel: (713) 223-9300
Fax: (832)603-4444
**COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of March 2026, a true and correct copy of the foregoing *Plaintiff's Response in Opposition to City Defendants' 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint* was filed electronically with the Clerk of Court using the CM/ECF system, which will send notice of such filing to all counsel of record who have appeared in this action.

Respectfully submitted,

*/s/ Courtney A. Vincent*
**Courtney A. Vincent**